## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | | |
|---|---|---|
| BROOKE CHAMPAGNE & MARICO THOMAS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 4:20-cv-00275 |
| LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, | ) ) ) ) ) | |
| Defendant. | ) | |

### DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT

Defendant, LINEBARGER GOGGAN BLAIR & SAMPSON, LLP ("Defendant"), by and through its undersigned attorneys, in answer to Plaintiffs' Complaint, states as follows:

### I.   PRELIMINARY STATEMENT

1.   Under Iowa law, people who are charged with misdemeanors are often required to reimburse the state for certain costs and fees associated with a case. *See, e.g.*, Iowa Code § 815.9[1]. The plaintiffs in this lawsuit are two low-income Iowans who allegedly owe court debt to the State of Iowa arising from misdemeanor cases. This lawsuit concerns the collection of that court debt by Linebarger Goggan Blair & Sampson, LLP ("Linebarger"), a private debt collection

---

[1] Unless otherwise noted, Iowa Code citations herein are to the version in effect as of the date this complaint was filed.

company.

**ANSWER:**

*Defendant admits it is a law firm that has represented the Iowa Judicial Branch pursuant to a contract for services, but denies that it is a "debt" collection company. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert. Defendant admits the remaining allegations of para. 1 except that Defendant lacks information sufficient to admit or deny allegations regarding Plaintiffs' financial situation.*

2.      Linebarger, a law firm, is the sole private company collecting court debt in Iowa and one of the nation's largest collectors of debt owed to public entities. With at least 2,300 governmental clients nationwide, the firm collects over $1 billion in government debt annually. In 2015, Linebarger was the subject of an award-winning investigative series by CNN Money, which revealed the firm's practice of threatening debtors with arrest and jail, among other things. The        CNN        Money        articles        are        available        at https://money.cnn.com/interactive/pf/debt-collector/above-the-law-summary/.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 2 except that it denies allegations regarding any practice of threatening debtors. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines*

2

*and legally imposed fees are not "debt" as Plaintiffs assert.*

3.     In 2010, Linebarger contracted with the Iowa Judicial Branch to collect outstanding court debt for the state. That contract, which was continually renewed on a month-to-month basis and will likely remain in effect through December 2020, is attached as Exhibit 1; *see also* Iowa Code § 602.8107(5).[2]

**ANSWER:**

*Defendant denies the allegations of para. 3 except that Defendant admits that it entered into the contract attached to Plaintiffs' Complaint as Exhibit 1. The terms of the contract did not provide for renewal on a month-to-month basis until 2015. Further, Defendant lacks sufficient information to admit or deny how long the agreement may remain in effect. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

4.     Under Iowa law, a private debt collector can be paid a collection fee of "up to twenty-five percent of the amount of the court debt."  Iowa Code § 602.8107(5)(b).  Linebarger's contract with the Iowa Judicial Branch provides that "[e]ach month, Judicial will pay Linebarger collection fee of 25% on the

---

[2] In June 2020, the Iowa Legislature passed Senate File 457 ("SF 457"), which amended a number of Iowa Code provisions governing the imposition and collection of court debt. *See* 2020 Ia. Legis. Serv. S.F. 457; Lee Rood, *Critics Say Law Touted as Reforming Court Fines and Fees Will be a Civil Rights Setback*, DES MOINES REG., June 25, 2020, at https://www.desmoinesregister.com/story/news/2020/06/25/iowa-criminal-financial-sentencing- reform-court-fees-fines-black-lives-matter-defendant-civil-rights/3251825001/. Pursuant to SF 457, effective January 1, 2021, all court debt that would have been assigned to Linebarger for collection will instead be assigned to the Department of Revenue. *See* 2020 Ia. Legis. Serv. S.F. 457 at Sec. 87. It is not clear whether Linebarger will continue to collect the debt already assigned to it.

amount of Assigned Court Debt that Judicial actually received during the prior month." Exhibit 1 at 15.

**ANSWER:**

*Para. 4 contains legal argument that does not require a reply.  Defendant admits that Plaintiffs accurately quotes a selected portion of the Court Debt Collection Contract. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.  Defendant admits that the language in quotes can be found in the letter but denies the quotes provide the full context and meaning of the letter.*

5.     Linebarger's collection fees are paid by the debtors themselves. When the company sends collection notices to Iowans who allegedly owe court debt, Linebarger adds the maximum collection fee allowed by statute—twenty-five percent—to each debt and instructs debtors to pay the total amount to the state without differentiating the underlying debt from the collection fees.

**ANSWER:**

*Defendant denies the allegations of para. 5 in that, pursuant to the terms of its Court Debt Collection Contract, its fees are paid monthly by the Iowa Judicial Branch. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

6.     Between 2012 and 2018, Linebarger collected more than $58.6

million in court debt from Iowans pursuant to the company's contract with the Judicial Branch. During the same time period, Lineberger—which employs just two attorneys licensed in Iowa—received nearly $12 million in collection fees.[3]

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 6. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

7.  As is true in many other states, people in Iowa who are provided with appointed counsel because they are too poor to afford a lawyer are often billed later for their own indigent defense fees. *See* Iowa Code §§ 815.9(3)-(9). This is true not only when a person is found guilty of committing a crime but also in criminal cases that do not result in a conviction, as well as in certain non-criminal matters such as child welfare proceedings or civil contempt. As of June 30, 2017, appointed counsel fees accounted for almost one quarter of all outstanding court debt owed to the state through Iowa's Judicial Branch—nearly $170 million. *See* Legis. Serv. Agency, *Issue Review: Court Debt Collection* at 4

---

[3] Compiled from: Iowa Judicial Branch, 2012 Accounts Receivable Report, https://www.legis.iowa.gov/docs/publications/DF/662172.pdf; Iowa Judicial Branch, 2013 Accounts Receivable Report: https://www.legis.iowa.gov/docs/publications/DF/662390.pdf; Iowa Judicial Branch, 2014 Accounts Receivable Report, https://www.legis.iowa.gov/docs/publications/DF/662172.pdf; Iowa Judicial Branch, 2015 Accounts Receivable Report, https://www.legis.iowa.gov/docs/publications/DF/711087.pdf; Iowa Judicial Branch, 2016 Accounts Receivable Report, https://www.legis.iowa.gov/docs/publications/DF/799090.pdf; Iowa Judicial Branch, 2017 Accounts Receivable Report, https://www.legis.iowa.gov/docs/publications/DF/860848.pdf; Iowa Judicial Branch, 2018 Accounts Receivable Report, https://www.legis.iowa.gov/docs/publications/DF/969685.pdf.

(Jan.                3,                2018),                at
https://www.legis.iowa.gov/docs/publications/IR/916685.pdf.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 7.*

8.      Before June 25, 2020, a defendant who was convicted of or pled guilty to a criminal charge could also be required to reimburse the state for certain "court costs" specified by statute, provided the court found that she had the reasonable ability to pay them.  *See* Iowa Code § 602.8106(1)(d); *id.* § 910.2.[4] Generally speaking, court costs other than attorney fees cannot be assessed in a criminal case absent a conviction.  *State v. Dudley*, 766 N.W.2d 606 (Iowa 2009).

**ANSWER:**

*Para. 8 is legal argument and does not require a reply.*

9.      In the proceedings on their misdemeanor charges, Plaintiffs Brooke Champagne and Marico Thomas accepted the services of a state-appointed lawyer in exchange for an obligation to reimburse the state for the cost of those services.  When their underlying cases were resolved, the courts ordered each of them to pay appointed counsel fees.  The Iowa Judicial Branch assigned Plaintiffs' alleged court debt to Linebarger for collection, and Plaintiffs received collection letters from Linebarger.

---

[4] SF 457 modified some provisions of Iowa Code Chapter 910 relative to ability to pay proceedings.  For example, defendants must now affirmatively raise ability to pay or risk waiving their right to challenge the amount of court debt imposed.  *See* Iowa Code § 910.2A (eff. date June 25, 2020).  But the modified provisions were not in effect at the time Plaintiffs' cases were resolved and thus are not relevant here.

**ANSWER:**

*Defendant lacks information to admit the allegations of para. 9. To the extent a further response is needed, Defendant denies the allegations of this paragraph.  Defendant denies anything was assigned to Defendant. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

10.    Because each Plaintiff incurred an "obligation or alleged obligation . . . to pay money arising out of a transaction in which the . . . services which [we]re the subject of the transaction are primarily for personal . . . purposes," rather than business purposes, the debts each Plaintiff allegedly owes for appointed counsel fees are "debts" under the Fair Debt Collection Practices Act (FDCPA). 15 U.S.C. § 1692a(5).  For similar reasons, these obligations are also "debts" under the Iowa Debt Collection Practices Act (IDCPA).  *See* Iowa Code § 537.7101 *et seq.*

**ANSWER:**

*Para. 10 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies all the allegations of this paragraph.*

11.    The tactics Linebarger has used to collect the debt Plaintiffs allegedly owe from appointed counsel fees violate both the FDCPA and the IDCPA.  Linebarger's letters fail to itemize the debts or provide verification

rights notices. They also mischaracterize the amounts owed and contain false and misleading statements, including threats that failure to pay may result in driver's license revocation or contempt of court, which in Iowa can mean arrest and jail. The letters fail to make clear that a debtor cannot lawfully be jailed for failing to pay court debt unless a court determines the nonpayment was willful. Plaintiffs seek to recover compensatory and statutory damages, attorneys' fees and costs, and interest.

**ANSWER:**

*Para. 11 contains legal argument that does not require a reply. Defendant denies the allegations of para. 11 regarding its letters. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

12.   In addition, Linebarger, acting under color of state law and in its official capacity, deprived Ms. Champagne of property without due process in violation of 42 U.S.C. § 1983. Under Iowa law, court debt is not enforceable unless a court has entered a judgment ordering the defendant to pay it. Linebarger's collection letters sought to collect fees—including several hundred dollars for the cost of transporting Ms. Champagne to jail—that were assessed months after the final disposition of the case, despite the fact that no court had ever entered a judgment ordering her to pay the fees. Linebarger's letters falsely stated that a court had entered an order against Ms. Champagne for this debt, and they threatened her that she could be jailed if she failed to pay it.

8

Linebarger's letters were false, deceptive, and misleading.  As a result of the letters, she was coerced into making payments.  She also suffered mental and emotional stress as a result of the threats made in the letter.  Ms. Champagne is entitled to compensatory damages, costs, and attorneys' fees, and she also seeks an order enjoining Linebarger from engaging in extrajudicial collection of court debt.

**ANSWER:**

*Para. 12 contains legal argument that does not require a reply.  Defendant denies the allegations of para. 12 regarding its letters.  Defendant lacks information sufficient to admit or deny allegations regarding Ms. Champagne's mental and emotional state. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

## II.   JURISDICTION AND VENUE

13.   This Court has jurisdiction over this action under the FDCPA, 15 U.S.C. § 1692k, and 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over claims arising under state law under 28 U.S.C. § 1367.

**ANSWER:**

*Defendant admits this Court generally has jurisdiction over questions of federal law.  Defendant admits this Court may assert supplemental jurisdiction over claims allegedly arising under state law. Defendant denies any remaining allegations of para. 13.*

14.     In addition, the Court has jurisdiction over the civil rights claim arising under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution pursuant to 28 U.S.C. § 1331 and § 1343.

**ANSWER:**

*Defendant admits this Court generally has jurisdiction over questions of federal law and the Constitution.  Defendant denies any remaining allegations of para. 14.*

15.     The Court has personal jurisdiction over Linebarger because Linebarger is registered to do business in Iowa and entered into a contract with the Iowa Judicial Branch to collect debt throughout the state, including in this district.

**ANSWER:**

*Defendant admits the allegations of para. 15.*

16.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Linebarger resides in this district and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

**ANSWER:**

*Defendant denies the allegations of para. 16; however, Defendant does not contest venue.*

### III.    PARTIES

17.     Plaintiff Brooke Champagne resides in Des Moines, Iowa.  She is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "debtor" as

defined in Iowa Code § 537.7102(6).

**ANSWER:**

*Defendant lacks information sufficient to admit or deny where Plaintiff resides in para. 17.  The remainder of para. 17 is legal argument and does not require a reply. To the extent a response is needed, Defendant denies the remaining allegations of this paragraph.*

18.    Plaintiff Marico Thomas resides in Cedar Rapids, Iowa.  He is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a "debtor" as defined in Iowa Code § 537.7102(6).

**ANSWER:**

*Defendant lacks information sufficient to admit or deny where Plaintiff resides in para. 18.  The remainder of para. 18 is legal argument and does not require a reply. To the extent a response is needed, Defendant denies the remaining allegations of this paragraph.*

19.    Defendant Linebarger Goggan Blair & Sampson, LLP is a law firm organized as a limited liability partnership under Texas law with its headquarters in Texas.  Linebarger is registered to do business in Iowa and collects court debt across Iowa under its contract with the Iowa Judicial Branch, including debt arising from misdemeanor proceedings in Delaware, Des Moines, Humboldt, and Jasper Counties.

**ANSWER:**

*Defendant admits it is a Texas based LLP corporate entity registered to do*

*business in Iowa and that it performs work for the Iowa Judicia Branch pursuant to a contract. Defendant denies any remaining allegations of para. 19. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

20.    Linebarger is a debt collection company that operates in Iowa and across the United States collecting debt allegedly owed to public sector creditors. The principal purpose of Linebarger's business is the collection of government debt using the mails and phone calls.  Linebarger regularly collects and attempts to collect, directly and indirectly, debt alleged to be due another. It is therefore a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

**ANSWER:**

*Defendant admits it is a law firm that has represented the Iowa Judicial Branch pursuant to a contract for services.  The remainder of this paragraph is legal argument and does not require a reply.  To the extent a response is needed, Defendant denies the remaining allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

21.    Linebarger is also engaged in state action under color of law for purposes of 42 U.S.C. § 1983.  Since 2010, Iowa law has required any county

where the county attorney has not affirmatively elected to collect court debt to assign that debt to a "private collection designee" for collection.   Iowa Code § 602.8107(3).   Under that statutory authority, Linebarger has had an exclusive contract with the Iowa Judicial Branch since 2010 to act as the sole private collection designee collecting court debt allegedly owed to the State.   The collection of court debt is traditionally and historically a function of the State that the Judicial Branch delegated to Linebarger.   The State benefits from the actions of its delegee in that Linebarger's business practices allow the State to save costs it would otherwise incur in collecting its own court debt.

**ANSWER:**

*Para. 21 is legal argument and does not require a reply. To the extent a response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

## IV.   STATEMENT OF FACTS

### A.   Imposition and Collection of Court Debt in Iowa

#### 1) Iowa law limits the court debt that may be imposed on criminal defendants

22.   Under Iowa law, only court debt expressly authorized by statute may be imposed on a defendant. *Woodbury County v. Anderson*, 164 N.W.2d 129, 135 (Iowa 1969); *State v. Watson*, 795 N.W.2d 94, 96 (Iowa Ct. App. 2011).

**ANSWER:**

13

*Para. 22 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

23.    In addition to requiring statutory authority, court debt in Iowa is enforceable only if a court has entered an order or judgment requiring the defendant to pay the debt. *See State v. Davis*, 944 N.W.2d 641, 642 (Iowa 2020). Unless it has been reduced to a judgment, court debt may not lawfully be collected.

**ANSWER:**

*Para. 23 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

24.    Iowa law defines "court debt" as "all restitution, fees, and forfeited bail." Iowa Code § 602.8107(1)(a).[5]

**ANSWER:**

*Para. 24 is legal argument and does not require a reply. Defendant denies*

---

[5] Before it was amended in June 2020, Iowa Code § 602.8107(1)(a) defined "court debt" as "all fines, penalties, court costs, fees, forfeited bail, surcharges under chapter 911, victim restitution, court-appointed attorney fees or expenses of a public defender ordered pursuant to section 815.9, or fees charged pursuant to section 356.7 or 904.108." Section 356.7 addresses sheriff's fees for room and board at jail and other administrative costs related to jail; section 904.108 addresses correctional fees related to prison.

*each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

25.     Iowa law uses the term "restitution" to refer to any court debt entered in connection with a criminal conviction, not just victim restitution.  There are two categories of "restitution" under Iowa law.  The first category includes victim restitution and restitution to the clerk of court for fines, penalties and surcharges. Courts may order convicted defendants to pay this kind of restitution without regard to ability to pay.  *See* Iowa Code § 910.2(1); *State v. Davis*, 944 N.W.2d at 644-45.

**ANSWER:**

*Para. 25 is legal argument and does not require a reply.*

26.     The second category of restitution includes court costs and appointed counsel fees, as well as other types of charges.   Iowa Code § 910.2(1)(c)(3).  Only this second category of restitution is relevant in this case. In cases resolved before June 25, 2020, a court could order a defendant to pay this type of restitution only when "all such items are before the court and the court has then made a reasonable- ability-to-pay determination." *State v. Gross*, 935 N.W.2d 695, 702 (Iowa 2019); Iowa Code § 910.2(1)(a)(2).[6]

**ANSWER:**

*Para. 26 is legal argument and does not require a reply.*

---

[6] Ability to pay is handled differently in cases resolved after June 25, 2020. *See* n. 4 above.

27.    Court costs may include filing or docketing fees and other expenses incurred by the state or county.  For example, "[w]hen judgment is rendered against the defendant," the clerk of court may collect court costs from the defendant to reimburse the county that prosecuted the criminal case. Iowa Code § 602.8106(1)(a).  The court costs for a simple misdemeanor are set at sixty dollars.  *Id.* at § 602.8106(1)(d).

**ANSWER:**

*Para. 27 is legal argument and does not require a reply.*

28.    In addition to court costs, until June 25, 2020, a convicted defendant could be required to reimburse the sheriff for "room and board" for time spent in jail and/or "administrative costs relating to the arrest and booking" of the defendant as part of her court-ordered restitution.  *See* Iowa Code § 356.7(1) (2019).[7]

**ANSWER:**

*Para. 28 is legal argument and does not require a reply.*

**2) Imposition and collection of appointed counsel fees**

29.    In Iowa, an accused in a misdemeanor criminal prosecution who faces the possibility of imprisonment under the applicable criminal statute is automatically entitled to appointed counsel if her income level is "at or below one hundred twenty-five percent of the United States poverty level as defined by the

---

[7] After June 25, 2020, the new version of Iowa Code § 356.7 requires that sheriff's fees be assessed and collected through separate civil actions, rather than as restitution or court debt.

most recently revised poverty income guidelines published by the United States department of health and human services." Iowa Code § 815.9(1)(a); *see also State v. Young*, 863 N.W.2d 249, 281 (Iowa 2015). But a person who elects to receive the assistance of counsel is then "required to reimburse the state for the total cost of legal assistance," including "not only the expense of the public defender or an appointed attorney, but also transcripts, witness fees, expenses, and any other goods or services required by law to be provided to an indigent person entitled to an appointed attorney." Iowa Code § 815.9(3).

**ANSWER:**

*Para. 29 is legal argument and does not require a reply.*

30.   A person who accepts the services of appointed counsel must typically complete a financial affidavit. Iowa's Rules of Criminal Procedure provide a standard form for this purpose: the Financial Affidavit and Application for Appointment of Counsel. *See* Iowa R. Civ. P. 2.32-Form 1. The form, which defendants are required to sign, states: "I understand I may be required to repay the state for all or part of my attorney fees and costs, I may be required to sign a wage assignment, and I must report any changes in the information submitted on this financial affidavit. I promise under penalty of perjury that the statements I make in this application are true, and that I am unable to pay for an attorney to represent me." *Id.*

**ANSWER:**

*Para. 30 is legal argument and does not require a reply.*

31.    There are significant differences between how urban and rural defendants in Iowa experience appointed counsel fee debt.  In urban counties, people needing appointed counsel are often represented by public defenders, who tend to charge a minimal amount for their services, and their court debt is typically collected by county attorneys, who do not charge fees for collection.  But low- income people living in rural counties outside the jurisdiction of Iowa's public defender's offices are represented by contract attorneys, who almost always submit significantly higher fee petitions than their public defender counterparts.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 31. To the extent a response is needed, Defendant denies the allegations of this paragraph.  Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

32.    Because the higher costs of the contract attorneys' services are then passed onto their clients, criminal defendants in rural counties are more likely to owe significant debt in appointed counsel fees than defendants in urban counties. Court debt in rural counties is also more likely to be assigned to Linebarger for collection rather than to county attorneys.  These debtors must then pay additional collection fees to Linebarger.  As a result, people in rural counties tend to be saddled with significantly higher debt—in both appointed

counsel fees and collection fees—than similarly-situated people in urban counties.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 32. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

33.    Defendants are commonly billed for appointed counsel fees regardless of the outcome of the case.  If a criminal defendant is convicted of or pleads guilty to the underlying charge, the court "shall order the payment of such amounts as restitution, to the extent to which the person is reasonably able to pay, or order the performance of community service in lieu of such payments." Iowa Code § 815.9(5); *see also id.* § 910.2(1)(a)(2).

**ANSWER:**

*Para. 33 is legal argument and does not require a reply.*

34.    If the defendant is acquitted, or if the charge is dismissed, she may still be required to reimburse the state for the cost of her appointed counsel "to the extent the person is reasonably able to pay, after an inquiry which includes notice and reasonable opportunity to be heard."  Iowa Code § 815.9(6).  If the defendant fails to pay the debt, the court may enter a judgment, which the state

can then enforce against the defendant "in the same manner as a civil judgment." *Id.* § 815.9(7).  Under Iowa law, civil judgments "requiring the payment of money . . . are to be enforced by execution."  *Id.* § 626.1.

**ANSWER:**

*Para. 34 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

35.    If a defendant was not convicted of the underlying charge, the state may not lawfully bring contempt proceedings against her for nonpayment of appointed counsel fees.  *State v. Sluyter*, 763 N.W.2d 575, 582 (Iowa 2009); *LaRue v. Burns*, 268 N.W.2d 639, 641 (Iowa 1978).

**ANSWER:**

*Para. 35 is legal argument and does not require a reply.*

36.    Generally speaking, the amount of counsel fees is rarely known at the time of sentencing or other disposition of a case.  This is because there are several steps before the possible amount of appointed counsel fees becomes a sum certain.  *See generally* Iowa Admin. Code ("IAC") r. 493-12.  First, the appointed counsel must file a claim. IAC r. 493-12.2.  This is almost never done before sentencing or disposition, because counsel is still working and accruing fees.  Next, the State Public Defender (SPD) may approve or deny the claim in whole or in part.  *Id.*  Disputes between appointed counsel and SPD may in rare

circumstances be subject to administrative appeal and court review. IAC r. 493-12.9.  Once the claim is actually paid, it is the longstanding practice of the SPD to send a list itemized by case to each county once per month, showing what was actually paid out in claims to appointed counsel.  Clerks then input these amounts, provided there is a valid court order assessing the debt to the defendant and the amounts paid by the SPD are not limited by any ability-to-pay restrictions set out by court order.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 36.  To the extent a response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

### 3) Collection of court debt is historically and traditionally a government function

37.   Court debt in Iowa is "owed and payable to the clerk of the district court."  Iowa Code § 602.8107(2).  By statute, the clerk of each court has the duty to collect fines, court costs, and fees and remit the money to the appropriate governmental entity.  *See id.* § 602.8106.

**ANSWER:**

*Para. 37 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees*

*are not "debt" as Plaintiffs assert.*

38.    Historically, the collection of delinquent court debt in Iowa was exclusively and traditionally the province of the government, although the specific entities and agencies engaged in collection have varied over time. In 1991, with the passage of the Collection of Delinquent Criminal Fines and Court Costs Act, county attorneys were authorized to collect delinquent court debt. County attorneys retained 35% of what they collected, with the remainder going to the state general fund. H.F. 697, 74th Gen. Assemb. (Iowa 1991).

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 38. To the extent a response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

39.    In 1993, the legislature passed the OWI Fine Increase, Mandatory Minimum Fines, and Community Service Act, which "shifted some of the responsibilities for the collection of delinquent fines, fees, and penalties to the Clerks of District Court" and "allowed the Department of Revenue" (IDR) to collect delinquent court debt that was not being collected by county attorneys. S.F. 370, 75th Gen. Assemb. (Iowa 1993). While the law "added private attorneys to the list of persons county attorneys could contract with for collection services," governmental agencies retained primary control over collection of court debt. *See*

*id.* at 3–4.  In 1995, authority was given to the Centralized Collection Unit (CCU) of IDR to issue levies against the accounts of people in debt to the state.  H.F. 549, 76th Gen. Assemb. (Iowa 1995).

**ANSWER:**

*Para. 39 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

40.    In 2010, in response to a judicial funding crisis during the last recession, the Iowa Legislature instituted an aggressive debt collection program in the form of new legislation.  S.F. 2383, Iowa 83rd Gen. Assemb. (Iowa 2010). Under the new law, referral of debt to CCU after 30 days of delinquency became mandatory rather than discretionary.  Iowa Code § 364.22B.  Although not provided by statute or rule, CCU by fiat charged a 10% collection fee on top of the underlying debt.  In counties where the county attorney had elected to serve as a court debt collector, CCU was then mandated to assign the debt to the county attorney after 60 days if the debtor's account had not been placed into a payment plan. Also, for the first time, the new law mandated that the CCU assign delinquent debt in counties not served by county attorney collection to a private collection agency after 365 days delinquency.   In December 2010, the Iowa Judicial Branch entered into a contract with Linebarger permitting the firm to collect 25% of the balance owed as a fee.

**ANSWER:**

*Para. 40 contains legal argument that does not require a reply. Defendant admits that it entered into a contract with the Iowa Judicial Branch; however, pursuant to its terms, its fees are paid monthly by the Iowa Judicial Branch. To the extent a further response is needed, Defendant denies the remaining allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

41.    After a few more legislative changes changing the order of priority for assigning debt to the CCU, Linebarger, and the county attorneys, the law changed in 2015 by removing CCU from the collection process entirely.  S.F. 510, 86th Gen. Assemb. (Iowa 2015).  This bill also provided that Linebarger would be assigned debt from all 99 counties in Iowa.  In counties where the county attorney had elected to collect court debt, Linebarger would then have to refer cases if the debtor had not entered a payment plan within 60 days of assignment to Linebarger.

**ANSWER:**

*Para. 41 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and*

*legally imposed fees are not "debt" as Plaintiffs assert.*

42.    In 2016, the delinquency collection system was simplified further to allow for two possible options for collection once court debt becomes delinquent. S.F. 2316, 86th Gen. Assemb. (Iowa 2016).   In counties where the county attorney has elected to collect court debt, debt is assigned directly to the county attorney after delinquency.   In other counties, delinquent court debt is sent directly to the private collection designee, Linebarger.   Iowa Code § 602.8107. That system essentially remained the same over the next four years.

**ANSWER:**

*Para. 42 is legal argument and does not require a reply.   To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

43.    Under the 2016 law, which remains in effect today, court debt in roughly one third of Iowa counties—including Delaware, Des Moines, Humboldt, and Jasper Counties—that has not been paid within 30 days of disposition and is not subject to a court-ordered installment plan is deemed delinquent and assigned by the clerk to Linebarger to collect.   *See* Iowa Code § 602.8107(3); Exhibit 1 at 13.   In other counties, the debt is assigned to the county attorney for collection. *See* Iowa Code § 602.8107(2)(d).

**ANSWER:**

*Para. 43 is legal argument and does not require a reply.  To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

44.    On June 25, 2020, Governor Kim Reynolds signed into law Senate File 457, which makes sweeping changes to the imposition and collection of court debt in Iowa.  Under the new law, starting January 1, 2021, court debt that would have been assigned to Linebarger for collection will now once again be collected by IDR. *See* 2020 Ia. Legis. Serv. S.F. 457 at Sec. 87.

**ANSWER:**

*Para. 44 is legal argument and does not require a reply.  To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

### 4) Linebarger's contract with the Iowa Judicial Branch

45.    Since 2010, Iowa law has required counties to assign delinquent court debt for collection to a "private collection designee."   Iowa Code § 602.8107(3).  Pursuant to that statutory authority, in 2010 Linebarger entered into an exclusive Court Debt Collection Contract with the Iowa Judicial Branch to act as the sole private collection designee collecting court debt allegedly owed

to the State of Iowa.   *See* Exhibit 1.   This contract has been continually renewed on a month-to- month basis and will likely remain in effect through December 2020.

**ANSWER:**

*Para. 45 contains legal argument that does not require a reply.   Defendant admits that it entered into a Court Debt Collection Contract, but denies that its terms provided for renewal on a month-to-month basis before 2015.   Further, Defendant lacks sufficient information to admit or deny how long the agreement may remain in effect. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

46.    The contract incorporates two bidding documents:  the State's Court Debt Collection Services Provided by Law Firms Request for Proposal, RFP No. 2010-10, and Linebarger's proposal in response to that RFP.   Exhibit 1 at 1.

**ANSWER:**

*Defendant admits the allegations of para. 46.*

47.    The contract expressly requires that Linebarger "comply with all applicable federal, state, and local laws, rules, ordinances, regulations, and orders when performing services under this contract."  Exhibit 1 at 9.

**ANSWER:**

*Defendant admits the allegations of para. 47.*

48.     The contract provides for the assignment of court debt to Linebarger for collection. *See* Exhibit 1 at 13-14.  The contract expressly states:  "If during the collection of an assigned debt, Linebarger is not satisfied that the debtor owes the debt or if the debtor disputes the amount owed, Judicial will attempt to verify promptly the liability and provide that information to Linebarger.  During this verification period, Linebarger may suspend any active collection activity on that account." *Id.* at 14.

**ANSWER:**

*Defendant admits the contract provides for the placement of certain debts owed to the Iowa Judicial Branch and that paragraph 5.2 of the contract is quoted in the allegations of para. 48.  To the extent a further response is needed, Defendant denies the remaining allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

49.     The contract provides that the Judicial Branch will pay Linebarger a "collection fee of 25% on the amount of Assigned Court Debt that Judicial actually received during the prior month." Exhibit 1 at 2, 15.  This fee "will be added to the Assigned Court Debt," meaning Linebarger adds its collection fee to the underlying debt it collects from debtors such as Plaintiffs. *Id.* at 15.

**ANSWER:**

*Defendant admits that this paragraph quotes a portion of Exhibit 1.*

*Defendant denies the allegations of para. 49 in that, pursuant to the terms of its contract, its fees are paid monthly by the Iowa Judicial Branch. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert. Defendant admits that the language in quotes can be found in the document but denies the quotes provide the full context and meaning of the document.*

50.  The contract provides that "because Linebarger is trying to collect on debts owed to the State of Iowa, Judicial will waive any filing fees for collection activities filed in Iowa courts." Exhibit 1 at 15.

**ANSWER:**

*Defendant admits paragraph quotes a portion of the document. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert. Defendant admits that the language in quotes can be found in the document but denies the quotes provide the full context and meaning of the document.*

**B.    Brooke Champagne's Experience**

51.  Brooke Champagne is 45 years old. She grew up in Iowa and currently lives in Des Moines, where she works full time in a Hy-Vee grocery store deli earning about $14 an hour. In addition to working at the deli, where she is in charge of ordering and cutting specialty cheeses, Ms. Champagne is currently

enrolled in the Cheese Specialist Program at Hy-Vee University and has completed the first of three training levels.  After finishing all three levels, she will be eligible to take a final exam to earn her Certified Cheese Professional credential.  Before working at Hy-Vee, in 2015 Ms. Champagne earned her diploma for microcomputer applications and information technology from Indian Hills Community College.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 51. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

52.    Ms. Champagne, who suffered from alcohol and substance abuse in the past, has worked hard to get her life back on track.  She is in recovery and has been sober for more than 620 days.  Since being discharged from an in-patient treatment program in November 2019, she has lived at a recovery house with six other women, where she continues to strive towards a healthy lifestyle.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 52. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

53.    Ms. Champagne accrued court debt in relation to several minor offenses she committed in the past while under the influence of drugs and alcohol.    Due  to  chronic  substance  abuse,  time  in  jail,  poverty,  and

homelessness, she was unable to make payments for a long period of time. During the past several months, however, Ms. Champagne has faithfully made regular payments to the state of Iowa towards the debts Linebarger is collecting, as well as other court debt.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 53. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

### 1) Collection of debt related to 2013 Jasper County Case

54.    On October 4, 2013, in Jasper County, Iowa, Ms. Champagne was walking down the street by herself when a police officer stopped her, asked for her information, and detained her.  Although she passed a breathalyzer, she was arrested and charged with "simulated public intoxication," a simple misdemeanor and a violation of Iowa Code § 123.46 (Case No. SMAC011891). Because she could not afford an attorney, she accepted the services of court-appointed contract counsel Jane Odland.  Exhibit 2.  The Application for Appointment of Counsel form that Ms. Champagne signed states:  "I understand I may be required to repay the State for my attorney fees and costs[]."  Exhibit 3.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 54 except that Defendant admits that Plaintiffs are correctly quoting the Application for Appointment of Counsel form.*

55.    On December 18, 2013, Ms. Champagne entered a guilty plea. Exhibit 4.  She was sentenced to pay a $100 fine plus an additional $155 in court costs, fees, and surcharges, for a total of $255. Exhibit 5.[8]

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations except that Defendant admits that a negotiated/voluntary guilty plea was adjudicated in Ms. Champagne's case on or around December 18, 2013.*

56.    On January 23, 2014, Ms. Champagne's court debt was designated as "past due" and sent to CCU / IDR. Exhibit 2. CCU added a collection fee of $3.17.  Exhibit 6.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 56. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

57.    On January 28, 2014, an indigent defense claim form was filed in Ms. Champagne's case, and a charge of $138 for appointed counsel fees was added to her court debt, bringing her total debt for this case to $396.17.  Exhibit

---

[8] The Iowa Courts Online docket shows that the additional charges include $60 in court costs, a $40 court reporter fee, $20 sheriff's fee, and $35 state surcharge. Exhibit 6.

6.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 57. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

58.     Ms. Champagne began making payments towards this court debt in November 2014. By February 8, 2015, she had paid $85, with $311.17 remaining.  Exhibit 6.  On February 15, 2015, the state assigned her outstanding debt to Linebarger for collection.   Exhibit 2.   Linebarger then added a 25% collection fee of $77.79, bringing Ms. Champagne's debt back up to $388.96. She made a $25 payment in March 2015, leaving $363.96.  Exhibit 6.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 58.  To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

59.     Ms.  Champagne  has  received  several  collection  letters  from Linebarger related to the 2013 Jasper County debt.  Most recently, on September 16, 2019, Ms. Champagne received a letter from Linebarger with the number

39442337.  This letter states: "***WARNING – OUTSTANDING COURT FEES AND***

***FINES*** . . . . Court records indicate that the Court has entered an order against

you, and you have unpaid court fees and fines . . . as listed below."  Exhibit 7

(emphasis in original).

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations*

*of para. 59 except that Defendant admits this paragraph quotes a portion of*

*the letter dated September 16, 2019.  To the extent a further response is needed,*

*Defendant denies the remaining allegations of this paragraph. Defendant denies*

*each use of the terms "debt," "debt collection," or "debt collector" to the extent they*

*are used as legal terms of art because government fines and legally imposed fees*

*are not "debt" as Plaintiffs assert.  Defendant admits that the language in quotes*

*can be found in the letter but denies the quotes provide the full context and*

*meaning of the letter.*

60.    The letter does not itemize the debt or Linebarger's collection fee,

stating only that the "amount due" related to the 2013 Jasper County case is

$363.96. *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 60.  It is Defendant's practice*

*to provide a line item for each offense included in its letters.  (See e.g., Exhibit*

*20 to the Complaint.)  No further itemization is required because the court fees*

*and fines are not "debt." Defendant denies each use of the terms "debt," "debt*

collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.

61.    The letter further states, "**You have failed to respond to our previous correspondence**," and instructs Ms. Champagne to "return your payment in the amount of $363.96 . . . **immediately**."  *Id.* (emphasis in original). The letter warns that "[u]ntil the Court receives full payment," the "State and its Courts" can bring "enforcement actions" including "contempt of court proceedings" and "driver [sic] license revocation."  *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 61 in that it does not provide the full context of the letter, which also states that the case will remain active until the Court receives full payment "or appropriate contact." Defendant admits that the language in quotes can be found in the letter but denies the quotes provide the full context and meaning of the letter.*

62.    The letter does not include any language stating that Linebarger is attempting to collect a "debt" or that any information obtained will be used for that purpose.

**ANSWER:**

*Defendant denies the allegations of para. 62 in that the letter discloses that Defendant contracted with the Judicial Branch to assist in resolving the listed cases, and that the recipient of the letter has unpaid court fees and fines.*

*The court fees and fines are not "debt." Defendant denies each use of the terms*
*"debt," "debt collection," or "debt collector" to the extent they are used as legal*
*terms of art because government fines and legally imposed fees are not "debt" as*
*Plaintiffs assert.*

63.    Ms. Champagne has paid $210 towards the 2013 Jasper County debt, including $100 since receiving the September 16, 2019 letter. Exhibit 6.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny that allegations*
*of para. 63. Defendant denies each use of the terms "debt," "debt collection," or*
*"debt collector" to the extent they are used as legal terms of art because*
*government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

### 2) **Collection of debt related to 2015 Humboldt County case**

64.    On September 4, 2015, in Humboldt County, Ms. Champagne was charged with disorderly conduct, a simple misdemeanor in violation of Iowa Code § 664A.7(5), and violating a no-contact or protective order, a simple misdemeanor in violation of Iowa Code § 723.4(2) (Case No. SMCR009978).   These charges arose from a phone call she made to her mother from jail.   Because she could not afford an attorney, she accepted the services of court-appointed contract counsel Daniel Feistner. Exhibit 8.  The Application for Appointment of Counsel that Ms. Champagne signed states:  "I understand I may be required to repay the State for all or part of any attorney fees and costs[]."  Exhibit 9.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 64 except that Defendant admits that Plaintiffs are correctly quoting the Application for Appointment of Counsel form.*

65.    On October 6, 2015, Ms. Champagne entered a guilty plea to the protective order charge, and the State agreed to recommend that the court dismiss the disorderly conduct charge.  Exhibit 10.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 65 except that Defendant admits that a written guilty plea was filed in Ms. Champagne's case on or around October 6, 2015.*

66.    On October 12, 2015, the Iowa District Court for Humboldt County entered judgment in her case.  The court sentenced Ms. Champagne to serve 48 hours in jail within 60 days of sentencing, with credit for time served, and to one year of probation.  The court's sentencing order provided that Ms. Champagne would "NOT be fined in this case" but that she "shall pay court appointed attorney fees" and court costs.  Exhibit 11.  The order stated that she had "waived any hearing on her ability to pay attorney fees in this matter."  *Id.*   Ms. Champagne did not waive her right to an ability-to-pay assessment with respect to any other costs or fees.  The Iowa Courts Online docket shows that $60 in court costs was added to her debt.[9]  Exhibit 12.

---

[9] In 2019, the Iowa Supreme Court reiterated the long-standing rule that district courts may not order a criminal defendant to pay restitution for court costs or appointed counsel fees without first determining that the defendant has the means to pay those costs. *State v. Albright*, 925 N.W.2d

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 66. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

67.    On November 13, 2015, the outstanding debt Ms. Champagne owed to the state was assigned to Linebarger for collection.  Exhibit 8.  On December 15, 2015, the SPD submitted an indigent defense claim form in the amount of $226, indicating this amount had been approved and paid to Ms. Champagne's appointed counsel.  *Id.*    The appointed counsel fees were added to Ms. Champagne's court debt, bringing the total amount she owed to $286.00.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 67. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

68.    January   25,   2016,   the   Humboldt   County   Attorney   filed   an

---

144, 159, 161-62 (Iowa 2019).  Before *Albright*, however, as in Ms. Champagne's case, courts regularly sentenced defendants to pay costs and fees in amounts to be determined after sentencing and without evaluating ability to pay, in spite of statutory language to the contrary and decades of prior precedent. *See e.g. State v. Haines*, 360 N.W.2d 791 (Iowa 1985); Iowa Code § 910.2 (ability to pay language first codified in 1982).

application for mittimus to require Ms. Champagne to serve the remaining time left in her 48-hour sentence.  Exhibit 8.  That same day, the Humboldt County District Court issued an Order for Mittimus directing the clerk to issue a warrant for her arrest.  The order stated: "Once the Defendant is apprehended, the Defendant shall serve any time remaining on the Defendant's mittimus, and shall pay the Humboldt County Jail's room and board cost of $50.00 per day."  The order made no mention of any other costs.  Exhibit 13.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 68 except that Defendant admits that Plaintiffs properly quoted from the Order reflected in Exhibit 13 to the Complaint.*

69.    On February 23, 2016, Ms. Champagne was arrested in Burlington and taken to the Des Moines County Jail.  The Humboldt County Sheriff then transported her to Humboldt County Jail, where she was held overnight and released the following day.  The sheriff filed an Application for Room and Board Fees requesting reimbursement of a $50 "room and board" charge for Ms. Champagne's one night in jail.  Exhibit 8.  On February 24, 2016, the court issued an order approving the sheriff's claim for reimbursement of the $50 room and board charge and ordering the clerk to enter judgment against Ms. Champagne for that amount.  Exhibit 14; *see* Iowa Code § 356.7(1) (2019).[10]

**ANSWER:**

––––––––––––––––––––
[10] *See* ¶ 28, above.

*Defendant lacks information sufficient to admit or deny the allegations of para. 69 except that Defendant admits that the court issued the order approving reimbursement of $50.00 as reflected in Exhibit 14 to the Complaint.*

70.     The sheriff also submitted a return of service requesting payment of $474.70 for the cost of transporting Ms. Champagne to Humboldt County Jail. Exhibit 15.  There is no record of the court approving this claim, and the court never entered a judgment against Ms. Champagne requiring her to pay the transportation costs.  Exhibit 8.  Nonetheless, the Iowa Courts Online docket shows that on February 23, 2016, a fee of $474.70 was added to Ms. Champagne's court debt. *Id.;* Exhibit 12.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 70. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

71.     The docket also shows that on February 24, 2016, the Humboldt County Sheriff filed a Return of Mittimus, and an additional $15 fee appeared on the docket.  Exhibit 8; Exhibit 12.  As with the transportation costs, the court did not enter a judgment requiring Ms. Champagne to pay the fee.  *Id.*  The addition of the transportation and mittimus fees brought Ms. Champagne's total alleged court debt for this case to $825.70, to which Linebarger added a 25%

collection fee of $206.43.[11]

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 71. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

72.   Ms. Champagne has received numerous letters from Linebarger related to the 2015 Humboldt County debt.   On September 16, 2019, Ms. Champagne received a letter from Linebarger with the number 40860109.   This letter states: "***WARNING – OUTSTANDING COURT FEES AND FINES*** . . . . Court records indicate that the Court has entered an order against you, and you have unpaid court fees and fines . . . as listed below."   Exhibit 16.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 72 except that Defendant admits this paragraph quotes a portion of the letter dated September 16, 2019. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.  Defendant admits that the language in quotes can be found in the letter but denies the quotes provide the full context and meaning of the*

---

[11] Linebarger's 25% fee consists of four separate charges: $18.75 (25% of the $60 court costs and $15 mittimus fee), $56.50 (25% of the $226 counsel fees); $118.68 (approx. 25% of the $474.70 sheriff's transport fees); and $12.50 (25% of the $50 room and board fee). Exhibit 12.

*letter.*

73.    The letter does not itemize the debt or Linebarger's collection fee, stating only that the "amount due" related to the 2015 Humboldt County case is $1,032.13. That amount includes the $474.70 transportation fee and the $15 mittimus fee even though Ms. Champagne does not legally owe those debts because the court never entered a judgment imposing those fees.

**ANSWER:**

*Para. 73 contains legal argument that does not require a reply.  Defendant denies the allegations of para. 73 in that it is Defendant's practice to provide a line item for each offense included in its letters.  (See e.g., Exhibit 20 to the Complaint.)  No further itemization is required because the court fees and fines are not "debt." Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert. Defendant lacks information sufficient to admit or deny the remaining factual allegations of para. 73.*

74.    The letter further states, "**You have failed to respond to our previous correspondence**," and instructs Ms. Champagne to "return your payment in the amount of $1,032.13 . . . **immediately**."  *Id.* (emphasis in original).  The letter warns that "[u]ntil the Court receives full payment," the "State and its Courts" can bring "enforcement actions" including "contempt of court proceedings" and "driver [sic] license revocation."  *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 74 in that it does not provide the full context of the letter, which also states that the case will remain active until the Court receives full payment "or appropriate contact."*

75.    The letter does not include any language stating that Linebarger is attempting to collect a "debt" or that any information obtained will be used for that purpose.

**ANSWER:**

*Defendant denies the allegations of para. 75 in that the letter discloses that Defendant contracted with the Judicial Branch to assist in resolving the listed cases, and that the recipient of the letter has unpaid court fees and fines. The court fees and fines are not "debt." Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

76.    Ms. Champagne has paid $200 towards this 2015 Humboldt County debt, and some of her payments have been allocated towards the collection fee Linebarger added to the sheriff's transportation fees. Exhibit 12.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 76. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because*

*government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

### 3) Collection of debt related to 2016 Des Moines County Case

77.    On January 19, 2016, in Des Moines County, Ms. Champagne was charged with theft in the fifth degree for allegedly taking a coffee pot and some light bulbs valued at $30 from her hotel room, a simple misdemeanor in violation of Iowa Code § 714.2(5) (Case No. SMSM038780). Because she could not afford an attorney, she accepted the services of court-appointed contract attorney Shane Wiley.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 77.*

78.    On February 19, 2016, Ms. Champagne entered a guilty plea. Exhibit 17.   She was sentenced to 30 days in jail, with all but five days suspended, and to one year of unsupervised probation, and ordered to pay a $65 fine, $60 in court costs, a Law Enforcement Initiative Surcharge of $125, plus additional surcharges and indigent defense fees in an amount to be assessed later.  *Id.*  The sentencing order did not include any finding of ability to pay.  *Id.* The Iowa Courts Online docket shows that a surcharge of $22.75 was added, bringing her debt for this case to $272.75.  Exhibit 18.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 78 except that Ms. Champagne pled guilty. Defendant denies each use*

*of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

79.    On March 22, 2016, Ms. Champagne's debt was assigned to Linebarger for collection.  Exhibit 19.  On April 1, 2016, an indigent defense claim form was filed in her case, and counsel fees and costs of $108.49 were added to her debt, bringing the total court debt for this case to $381.24.  *Id.*  Exhibit 18.  Linebarger added a 25% collection fee of $95.31.  *Id.*

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 79. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

80.    On September 16, 2019, Ms. Champagne received a letter from Linebarger with the number 42514743.  This letter states: "***WARNING – OUTSTANDING COURT FEES AND FINES.......***Court records indicate that the Court has entered an order against you, and you have unpaid court fees and fines  as listed below."  Exhibit 20 (emphasis in original).

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations*

*of para. 80 except that Defendant admits that this paragraph quotes a portion*

*of the letter dated September 16, 2019.  Defendant admits that the language*

*in quotes can be found in the letter but denies the quotes provide the full context*

*and meaning of the letter.*

81.    The letter does not itemize the debt or Linebarger's collection fee,
stating only that the "amount due" related to the 2016 Des Moines County theft
case is $476.55. *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 81.   It is Defendant's practice*

*to provide a line item for each offense included in its letters as it did here.  No*

*further itemization is required because the court fees and fines are not "debt."*

*Defendant denies each use of the terms "debt," "debt collection," or "debt collector"*

*to the extent they are used as legal terms of art because government fines and*

*legally imposed fees are not "debt" as Plaintiffs assert.*

82.    The letter further states, "**You have failed to respond to our**
**previous correspondence**," and instructs Ms. Champagne to "return your
payment in the amount of $476.55 . . . **immediately**."  *Id.* (emphasis in original).
The letter warns that "[u]ntil the Court receives full payment," the "State and its
Courts" can bring "enforcement actions" including "contempt of court
proceedings" and "driver [sic] license revocation."  *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 82 in that it does not provide*

*the full context of the letter, which also states that the case will remain active*

*until the Court receives full payment "or appropriate contact."*

83.    The letter does not include language stating that Linebarger is attempting to collect a "debt" or that any information obtained will be used for that purpose. *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 83 in that the letter discloses that Defendant contracted with the Judicial Branch to assist in resolving the listed cases, and that the recipient of the letter has unpaid court fees and fines. The court fees and fines are not "debt." Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

84.    Ms. Champagne has paid $150 towards this debt since receiving the September 2019 letter, and she and continues to make regular payments. Exhibit 18.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 84. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**4) Ms. Champagne's finances and fear of Linebarger's threats**

85.    When Ms. Champagne received the debt collection letters from Linebarger, she was anxious and fearful.  Having a law firm coming after her for these debts was scary and overwhelming.  Because she could not afford to pay the debt, she feared that she would be held in contempt of court and jailed. In addition, if her driver's license were revoked, as Linebarger threatened could happen if she was unable to pay, Ms. Champagne would have to take the bus across town to work, which would require her to change her work schedule and threaten her livelihood.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 85. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

86.    Now that she is employed and has been sober for well over a year, Ms. Champagne has been making monthly payments to the state of Iowa towards her court debt over the past several months, including towards debts Linebarger is collecting.  Because she can't afford to make a payment toward every fine every month, Ms. Champagne pays $50 towards one or two each month on a rotating basis.  She also makes payments towards other court debt Linebarger is not collecting, for a total of about $200 each month.  Ms. Champagne considers acknowledging responsibility for her debt—and working hard to pay it off—an important part of her program of recovery.  In addition to these payments, Ms.

Champagne pays rent and bills for her student loans, car loan, and car insurance.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 86. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**C.    Marico Thomas's Experience**

87.    Marico Thomas is 36 years old. He has lived in Iowa since 2002 and currently lives in Cedar Rapids with his wife and four children.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 87.*

88.    Since approximately March 2020, Mr. Thomas has worked full-time as a CNC machine operator at the Paladin Attachments facility in Delhi, where attachment tools are manufactured.  Before getting that job, Mr. Thomas worked as a temporary laborer with Ace Concrete Cutting.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 88.*

**1) Mr. Thomas's 2016 Delaware County case**

89.    On August 4, 2016, in Delaware County, Iowa, Mr. Thomas got into a fist fight with a man at a nightclub after the man verbally harassed him and

shoved him.   Mr. Thomas was charged with "assault causing bodily injury or mental illness," a serious misdemeanor (Iowa Code § 708.2(2)) (Case No. SRCR011435).   He was also charged with three simple misdemeanors (Case No. SMCR011436):

- Count 1: disorderly conduct (Iowa Code § 723.4(1));

- Count 2: criminal mischief fifth degree (Iowa Code § 716.6(2));

- Count 3: assault with no aggravating factors such as bodily injury or the intent to cause injury (Iowa Code § 708.2(6)).

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 89.*

90.   Because Mr. Thomas could not afford an attorney, he accepted the services of court-appointed contract attorney Daniel Swift.   The Application for Appointment of Counsel that Mr. Thomas signed states:  "I understand I may be required to repay the State for all or part of any attorney fees and costs[]." Exhibit 21.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 90 except that Defendant admits that Plaintiffs are correctly quoting the Application for Appointment of Counsel form.*

91.   On February 1, 2017, Mr. Thomas pled guilty to the disorderly conduct charge, Count 1 of Case No. SMCR011436, and the District Court for

Delaware County dismissed the two remaining counts in Case No.
SMCR011436.  Exhibit 22; Exhibit 23; Exhibit 24.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of
para. 91.*

92.    The court also dismissed Case No. SRCR011435, the serious
misdemeanor assault charge, but ruled that Mr. Thomas must pay court costs
and appointed counsel fees.  Exhibit 25; Exhibit 26.  The court expressly ordered
that Mr. Thomas' appointed counsel fees for Case No. SRCR011435 were not to
exceed $600. Exhibit 27; Exhibit 26 (ordering Mr. Thomas to pay "court-
appointed attorney fees in the amount of $600 or the amount actually submitted
by the State Public Defender's office, whichever is less").[12]  The docket indicates
that the clerk assessed Mr. Thomas a $600 charge for counsel fees.  Exhibit 27.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of
para. 92.*

93.    Sometime after the disposition of the case, the SPD submitted a list
of paid attorney fee claims to the Delaware County clerk. Exhibit 28.  This list
shows that the SPD paid counsel in this case $708 for hourly fees, and $27.18
in expenses.

**ANSWER:**

---

[12] Mr. Thomas does not recall the court inquiring into his ability to pay $600 in appointed counsel
fees.

*Defendant lacks information sufficient to admit or deny the allegations of para. 93.*

94.    At some point—despite the court's order that Mr. Thomas's indigent defense fees for Case No. SRCR011435 were "not to exceed $600"—additional charges were assessed in the amounts of $27.18 and $84.00, bringing Mr. Thomas's total debt for appointed counsel fees to $711.18 and his total court debt for the case to $811.18.[13]  Exhibit 29.  This amount matched neither the SPD total of $735.18 nor the court's limit of $600.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 94. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

95.    On April 4, 2017, Mr. Thomas's debt was assigned to Linebarger for collection. Linebarger added a 25% fee of $202.80 to the underlying debt, bringing the total amount allegedly owed to $1,013.98. [14]

**ANSWER**

*Defendant lacks sufficient information to admit or deny the allegations of para. 95. To the extent a further response is needed, Defendant denies the*

---

[13] On May 28, 2020, after Mr. Thomas's counsel inquired about the additional $111.18 in appointed counsel fees and costs, a clerk for the Delaware District Court removed the charges from Mr. Thomas's court debt, leaving him with $902.80 in alleged court debt.
[14] This fee was added in two separate charges: $46 (25% of $184) and $156.80 (25% of $627.20). Exhibit 29.

*allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

### 2) Linebarger's collection of Mr. Thomas's debt

96.    Mr. Thomas first began receiving letters and phone calls from Linebarger related to the 2016 Delaware County debt in April 2017.  He was surprised.  He did not understand why Linebarger was insisting that he owed so much money—at that time, over $1,300 for three cases including this one.  He was unemployed at the time, and he already owed a significant amount of child support each month.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 96. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

97.    Mr. Thomas contacted the lawyer who had represented him in his 2016 criminal case to ask about the debt.  The lawyer explained that Mr. Thomas was required to reimburse the state for the lawyer's services.  That was the first time Mr. Thomas understood that he was responsible for paying for the lawyer who had been appointed for him because he could not afford one.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 97. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

98.     Mr. Thomas also called the Delaware County District Court clerk's office.  He explained that he was unemployed and could not afford to pay the debt.  The clerk responded that there was nothing the court could do because the debt had been sent to Linebarger and it was out of the court's hands.  The clerk gave him an email address for Linebarger.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 98. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

99.     Mr. Thomas sent an email to Linebarger.  In the email, which is attached as Exhibit 30, he explained that he had received "a letter stating that I owe collection from a case that I've beat because of court cost"; that the letter stated he owed "over 1300 dollars"; and that he was unemployed and that there was "no way I can just cough up that kind of money."  Mr. Thomas also wrote that he "was provided a public attorney because I couldn't afford one and still I was never warned that I'll be asking [sic] to pay over 1300 dollars."  Exhibit 30. Finally, he wrote that he wanted to contest the charges "because the letter states

that my driver license could be in jeopardy and again I'm unemployed with 4 kids
I need my drivers license to seek employment to provide for my family." *Id.*
Linebarger did not respond to the email.

**ANSWER:**

*Defendant denies the allegations of para. 99: Exhibit 30 appears to be a*
*"Note" written on an Apple device, not an email to any recipient.*

100.   Linebarger's letters became increasingly threatening over time.   For
example, on October 11, 2019, Mr. Thomas received a letter from Linebarger with
the number 44018405.   This letter states: "***WARNING – OUTSTANDING COURT***
***FEES AND FINES*** . . . .   Court records indicate that the Court has entered an
order against you, and you have unpaid court fees and fines . . . as listed below."
Exhibit 31 (emphasis in original).

**ANSWER:**

*Defendant denies the allegations of para. 100 regarding any letters being*
*threatening in nature.  Defendant lacks information sufficient to admit or deny the*
*remaining allegations as Exhibit 31 is not attached to the Complaint. To the extent*
*a further response is needed, Defendant denies the allegations of this paragraph.*

101. The letter further states, "**You have failed to respond to our**
**previous correspondence**," and instructs Mr. Thomas to "return your payment
in the amount of $1,013.98 . . . **immediately**." *Id.* (emphasis in original).   The
letter warns that "[u]ntil the Court receives full payment," the "State and its

Courts" can bring "enforcement actions" including "contempt of court proceedings" and "driver [sic] license revocation." *Id.*

**ANSWER:**

*Defendant denies the allegations of para. 101 in that it does not provide the full context of Defendant's letters, which typically also state that the case will remain active until the Court receives full payment or "appropriate contact." Exhibit 31, to which this paragraph refers, is not attached to the Complaint. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

102.   The letter does not itemize the debt or Linebarger's collection fees, stating only that the amount due related to the 2016 assault case (No. SRCR011435) is $1,013.98.[15]

**ANSWER:**

*Defendant denies the allegations of para. 102.    It is Defendant's practice to provide a line item for each offense included in its letters.  (See e.g., Exhibit 20.)  No further itemization is required because the court fees and fines are not "debt." Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.  Exhibit 31, to which this paragraph refers, is not attached to the Complaint. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

---

[15] The letter also seeks to collect $287.50 in court debt related to Case No. SMCR011436 and $562.50 related to a 2018 assault case (Case No. SMCR012480).

103. The letter does not include language stating that Linebarger is attempting to collect a "debt" or that any information obtained will be used for that purpose.

**ANSWER:**

*Defendant denies the allegations of para. 103 in that Defendant's letters disclose that Defendant contracted with the Judicial Branch to assist in resolving the listed cases, and that the recipient of the letter has unpaid court fees and fines.  The court fees and fines are not "debt." Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

104.   When Mr. Thomas began receiving Linebarger's collection letters, he was afraid of what might happen to him because he couldn't pay. He was particularly concerned his driver's license could be taken away, because he relied on his car to transport his children and to look for work. Linebarger's threats alarmed, confused, and distressed Mr. Thomas.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 104.*

105.   Although Mr. Thomas now has full-time employment, he needs all the money he makes at his job to cover rent, child support, and life necessities. He has not been able to afford to make any payments towards the debt

Linebarger is collecting, despite being fearful that the enforcement actions Linebarger threatened in its letters would be taken against him.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of para. 105. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

## V. CAUSES OF ACTION

### CLAIM FOR RELIEF FOR VIOLATION OF
### DUE PROCESS CLAUSE

### COUNT 1:
### Deprivation of Property without Due Process of Law in Violation of the Fourteenth Amendment to the U.S. Constitution (42 U.S.C. § 1983) (on behalf of Brooke Champagne)

106.   Court debt is enforceable in Iowa only if a court has entered an order or judgment requiring the defendant to pay the debt—and, until June 25, 2020, only after determining that the defendant has the ability to pay that debt. *See* Iowa Code § 910.2(1)(a)(2); *State v. Gross*, 935 N.W.2d 695, 702 (Iowa 2019). Unless it has been reduced to a judgment, court debt may not lawfully be collected. *State v. Davis*, 944 N.W.2d at 642.

**ANSWER:**

*Para. 106 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

107.   Linebarger, acting under color of law, in its official capacity, and pursuant to statutory authority and its exclusive contract with the Iowa Judicial Branch, deprived Brooke Champagne of her interest in constitutionally-protected property without due process of law when it collected money from her that had not been ordered by a court as required by Iowa law.

**ANSWER:**

*Para. 107 is legal argument and does not require a reply.  To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

108.   In Case No. SMCR009978, on October 6, 2015, the Humboldt County District Court sentenced Ms. Champagne to pay court costs and court-appointed attorney fees.  After that debt was assigned to Linebarger, in February 2016, a sheriff's transportation fee of $474.70 and a mittimus fee of $15 were added to her court debt.  But the court never entered any judgment assessing those fees against Ms. Champagne and ordering her to pay them.  *See* ¶¶ 64–70, above.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 108. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

109.   Had the court entered a judgment against Ms. Champagne for the fees, she could have availed herself of the normal legal process by which a criminal defendant may challenge or appeal a court judgment.   *See, e.g.*, *State v. Olsen*, 794 N.W.2d 285 (Iowa 2011).   But without a court order, there is no process for a defendant to challenge the imposition of costs or fees.[16]

**ANSWER:**

*Para. 109 is legal argument and does not require a reply.*

110.   Because no court ever entered a judgment ordering Ms. Champagne to pay the sheriff's transportation and mittimus fees, under Iowa law, Linebarger has no authority to collect the debt.

**ANSWER:**

*Para. 110 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

111.   Linebarger is a law firm.   Its debt collection work is performed by two attorneys who are members of the Iowa State Bar who have access to the

---

[16] Under Iowa law in effect at the time, the Humboldt County District Court was also required to determine that Ms. Champagne had the ability to pay the newly added fees before ordering her to pay them. *See* Iowa Code § 910.2 (2019).  Had the court held an ability-to-pay hearing, Ms. Champagne would have had notice of the transportation fees and the opportunity to be heard on them.  She then could have demonstrated that she lacked the means to pay the fees.  But no such proceeding took place. Furthermore, there does not even appear to be a statutory basis for ordering a defendant to reimburse the state for transportation fees as part of a criminal restitution order in Iowa.  *See* ¶ 22, above.  Had the court entered an order, as was required by law, Ms. Champagne could have challenged the imposition of the fees on both of these grounds.

complete court files and the Iowa Courts Online dockets of the individuals whose debt it collects.   By checking Ms. Champagne's file or docket, a Linebarger attorney could have determined with little effort that the sheriff's transportation and mittimus fees were added to Ms. Champagne's debt after her case was resolved, without any subsequent judgment by the court.

**ANSWER:**

*Defendant admits it is a law firm. Defendant lacks information sufficient to admit or deny the remaining allegations of para. 111. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

112. Linebarger's contract with the Iowa Judicial Branch expressly provides that if "Linebarger is not satisfied that [a] debtor owes the debt," the company can request that the Judicial Branch "verify promptly the liability" and "suspend any active collection activity" on the debtor's account until it can determine whether the relevant debt is legally owed and enforceable.  Exhibit 1 at 14.

**ANSWER:**

*Defendant admits that the language in quotes can be found in the document but denies the quotes provide the full context and meaning of the document. Defendant denies each use of the terms "debt," "debt collection," or*

*"debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

113. Linebarger did not check Ms. Champagne's case docket. It did not request that the Judicial Branch verify whether the debt was legally owed. And it did not suspend collection on the extrajudicial debt. Instead, Linebarger added collection fees based on the two extrajudicial charges. It then sent Ms. Champagne a letter demanding a total "amount due" that includes the extrajudicial fees. In the letter, Linebarger falsely claimed: "Court records indicate that the Court has entered an order against" Ms. Champagne for "unpaid court fees and fines" totaling $1,032.13—an amount that includes the $474.70 transportation fee and the $15 mittimus fee. *See* ¶¶ 70–73, above.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 113. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

114. Linebarger has a custom or policy of collecting court debt from Iowa defendants that no court has ordered them to pay. Due process requires that before collecting court debt, Linebarger first verify the debt was in fact ordered by a court as required by Iowa law.

**ANSWER:**

*Para. 114 contains legal argument that does not require a reply. Defendant*

*denies having a custom or policy of collecting court debt without court order. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

115.   Linebarger threatened Ms. Champagne that she could be jailed or lose her drivers' license if she did not pay debts that she did not legally owe, that were not enforceable, and that Linebarger had no authority to collect.  As a result of Linebarger's false and misleading threats, Ms. Champagne was coerced into making payments towards the debts.  Linebarger's letters thereby deprived Ms. Champagne of her property without due process.  Ms. Champagne also suffered mental and emotional distress as a result of Linebarger's threats.  She seeks an injunction barring Linebarger from collecting or seeking to collect court debt without a court judgment.  She is also entitled to compensatory damages and an award of attorneys' fees and costs.

**ANSWER:**

*Defendant denies the allegations of Para. 115.  Defendant lacks information sufficient to admit or deny allegations regarding Ms. Champagne's mental or emotional state. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**CLAIMS FOR RELIEF FOR VIOLATIONS
OF THE FAIR DEBT COLLECTION PRACTICES ACT**

116.   The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a *et seq.*, prohibits a debt collector that is collecting debt incurred primarily for household or personal use from engaging in certain unfair debt collection practices.

**ANSWER:**

*Para. 116 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

117.   Plaintiff Champagne is a "consumer" under the FDCPA because Linebarger alleges that she was obligated to pay debt from appointed counsel fees relating to cases in Des Moines, Humboldt, and Jasper County District Courts. 15 U.S.C. § 1692a(3).

**ANSWER:**

*Para. 117 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

118.   Plaintiff Thomas is a "consumer" under the FDCPA because Linebarger alleges that he was obligated to pay debt from appointed counsel fees relating to a case in Delaware County District Court. 15 U.S.C. § 1692a(3).

**ANSWER:**

*Para. 118 is legal argument and does not require a reply.*

119.   Linebarger is a "debt collector" under the FDCPA because it uses the mails in its business, the principal purpose of which is the collection of debt, and because it regularly collects or attempts to collect, directly or indirectly, debt owed or due another. 15 U.S.C. § 1692a(6).

**ANSWER:**

*Para. 119 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

120.   All debt collectors operating in Iowa that "collect" more than $55,800 in "consumer debts from Iowans" in a year must file a notification with the Attorney General of Iowa and pay a $50 annual fee.[17]   The fees paid by debt collectors are used to "contribute to the cost of enforcing the Iowa Consumer Credit Code."[18]   In 2020, Linebarger paid the notification fee.[19]

**ANSWER:**

*Para. 120 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they*

---

[17]   Iowa Dept. of Justice, Office of the Attorney General, *Debt Collector Notification*, at https://www.iowaattorneygeneral.gov/for-businesses/debt-collector-notification.

[18]   Iowa Attorney General, *FAQ for Debt Collectors*, at https://www.iowaattorneygeneral.gov/for-businesses/faq-for-debt-collectors-and-creditorsassignees.

[19]   *See* Iowa Attorney General, *2020 Paid Debt Collectors and Creditors/Assignees* 21, at https://www.iowaattorneygeneral.gov/media/cms/Formatted_Spreadsheet_3DE52390AE035.pdf (last updated June 4, 2020).

*are used as legal terms of art because government fines and legally imposed fees*
*are not "debt" as Plaintiffs assert.*

121.   The appointed counsel fees that Linebarger alleges each Plaintiff
owes is a "debt" under the FDCPA because it is an alleged obligation to pay money
arising out of a transaction that was primarily for personal, family, or household
purposes. 15 U.S.C. § 1692a(5).

**ANSWER:**

*Para. 121 is legal argument and does not require a reply. Defendant denies*
*each use of the terms "debt," "debt collection," or "debt collector" to the extent they*
*are used as legal terms of art because government fines and legally imposed fees*
*are not "debt" as Plaintiffs assert.*

122.   Linebarger's collection letters are "communication[s]" under the
FDCPA because Linebarger was conveying information regarding a debt directly
or indirectly to Champagne and Thomas. 15 U.S.C. § 1692a(2).

**ANSWER:**

*Para. 122 is legal argument and does not require a reply. Defendant denies*
*each use of the terms "debt," "debt collection," or "debt collector" to the extent they*
*are used as legal terms of art because government fines and legally imposed fees*
*are not "debt" as Plaintiffs assert.*

123.   Linebarger has violated several provisions of the FDCPA, as detailed
below. As a result of these violations, Plaintiffs are each entitled to statutory
damages in an amount up to $1,000.00. 15 U.S.C. § 1692k(a)(2)(A). Plaintiffs are

also entitled to actual damages under 15 U.S.C. § 1692k(a)(1) and to reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3).

**ANSWER:**

*Defendant denies the allegations of Para. 123.*

**COUNT 2:**
**False representation of character, amount, or legal status of debt**
**in violation of FDCPA § 1692e(2)(A)**
**(on behalf of Brooke Champagne and Marico Thomas)**

124. The FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, the Act bars debt collectors from falsely representing the character, amount, or legal status of any debt. *Id.* at § 1692e(2)(A).

**ANSWER:**

*Para. 124 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

125. Linebarger misrepresented the character and amount of Champagne's and Thomas's debts when it failed to itemize each of their debts, including the appointed counsel fees and collection fees, in the letters.

**ANSWER:**

*Defendant denies the allegations of Para. 125 Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used*

*as legal terms of art because government fines and legally imposed fees are not*
*"debt" as Plaintiffs assert.*

126.   Linebarger misrepresented the character of Ms. Champagne's debt related to her 2013 Jasper County Case (No. SMAC011891) by stating in letter no. 40860109 that she owed $363.96 in "unpaid court fines and fees," when actually twenty-five percent of the "amount due"  Linebarger claimed she owed consisted of Linebarger's collection fees.

**ANSWER:**

*Defendant denies the allegations of Para. 126. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

127.   Linebarger misrepresented the character of Ms. Champagne's debt related to her 2015 Humboldt County Case (No. SMCR009978) by stating that she owed $1,032.13 in "unpaid court fines and fees," when actually twenty-five percent of the "amount due" Linebarger claimed she owed consisted of Linebarger's collection fees.

**ANSWER:**

*Defendant denies the allegations of Para. 127. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

128.   Linebarger misrepresented the character of Ms. Champagne's debt related to her 2016 Des Moines County Case (No. SMSM03870) by stating in letter no. 40860109 that she owed $476.55 in "unpaid court fines and fees," when actually twenty-five percent of the "amount due" Linebarger claimed she owed consisted of Linebarger's collection fees.

**ANSWER:**

*Defendant denies the allegations of Para. 128. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

129.   Linebarger misrepresented the legal status of Mr. Thomas's debt related to his 2016 Delaware County Case (No. SRCR011435), and used false and misleading representations in connection with the collection of a debt, when it stated in its letters to Mr. Thomas that "the Court has entered an order against you, and you have unpaid court fees and fines . . . as listed below," when, in fact, the court had *not* entered an order against Mr. Thomas for some of the appointed counsel fees Linebarger was attempting to collect.

**ANSWER:**

*Defendant denies the allegations of Para. 129. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

130.   Linebarger also misrepresented the character of Mr. Thomas's debt by stating in the letters that he owed $1,013.96 in "unpaid court fines and fees," when actually twenty-five percent of the "amount due" Linebarger claimed he owed consisted of Linebarger's collection fees.

**ANSWER:**

*Defendant denies the allegations of Para. 130. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**COUNT 3:**
**Implying that nonpayment will result in arrest when such action is unlawful in violation of FDCPA § 1692e(4)**
**(on behalf of Brooke Champagne and Marico Thomas)**

131.   The FDCPA prohibits a debt collector from implying that nonpayment of a debt will result in the arrest or imprisonment of any person unless such action is lawful. 15 U.S.C. § 1692e(4).

**ANSWER:**

*Para. 131 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

132.   Under Iowa law, contempt proceedings can lead to arrest and imprisonment. *See* Iowa Code § 665.4.   Linebarger threatened both Mr. Thomas

and Ms. Champagne with contempt, which violated FDCPA § 1692e(4) in two
ways.

**ANSWER:**

*Defendant denies the allegations of Para. 132.*

133. First, Linebarger threatened Mr. Thomas with contempt for non-
payment of debt from appointed counsel fees, when contempt proceedings
cannot lawfully be brought against a person for nonpayment of such fees where,
as in Mr. Thomas's case, the debtor was not convicted of the underlying criminal
charge.

**ANSWER:**

*Defendant denies the allegations of Para. 133. Defendant denies each use
of the terms "debt," "debt collection," or "debt collector" to the extent they are used
as legal terms of art because government fines and legally imposed fees are not
"debt" as Plaintiffs assert.*

134. Most of the debt Linebarger is seeking to collect from Mr. Thomas
related to his 2016 dismissed assault charge (Case No. SRCR011435) consists of
appointed counsel fees ($711.84 of the $1,013.98 total). Linebarger's letters to
Mr. Thomas state that if he does not pay this debt in full, "Iowa law authorizes .
. . contempt of court proceedings." *See* ¶¶ 94, 100.

**ANSWER:**

*Defendant lacks sufficient information to admit or deny the allegations of
para. 134 except that it denies the allegations concerning its letters, which also*

*state that the case will remain active until the Court receives full payment "or appropriate contact."  Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

135.   In Iowa, contempt proceedings cannot lawfully be brought against a person for nonpayment of appointed counsel fees where the debtor was not convicted of the underlying criminal charge.  *See* Iowa Code § 815.9(7) (if counsel fees are not paid within the time ordered by the court, a judgment shall be entered which "may be enforced by the state in the same manner as a civil judgment"); *id.* § 626.1 (civil judgments "requiring the payment of money . . . are to be enforced by execution"—not contempt); *State v. Sluyter*, 763 N.W.2d 575, 582 (Iowa 2009) (contempt cannot be used to collect court costs from a criminal defendant who was not convicted, because the cost judgment entered against him was "part of the fine to be imposed as penalty for an offense" and thus "created a civil liability") (quoting *LaRue v. Burns*, 268 N.W.2d 639, 641 (Iowa 1978)).

**ANSWER:**

*Para. 135 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

136.  Furthermore, the Fourteenth Amendment's Equal Protection Clause prohibits the state—and private companies acting under color of state law—from treating criminal defendants who owe attorney fees to the state for appointed counsel more harshly than criminal defendants who owe attorney fees to private lawyers. *James v. Strange*, 47 U.S. 128, 138 (1972).  An ordinary civil judgment debtor cannot be subjected to contempt proceedings, arrested, or imprisoned for failure to pay a debt owed to a private attorney.

**ANSWER:**

*Para. 136 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

137.  Linebarger is seeking to collect $711.84 in appointed counsel from Mr. Thomas arising from his 2016 assault charge (Case No. SRCR011435), which was dismissed by the court.  Accordingly, Iowa law does not—and could not—authorize the use of contempt of court proceedings to collect that debt. Linebarger thus violated FDCPA § 1692e(4) when it stated in the letters sent to Mr. Thomas that nonpayment of attorney fees could result in contempt proceedings.

**ANSWER:**

*Para. 137 is legal argument and does not require a reply. To the extent a*

*further response is needed, Defendant denies the allegations of this paragraph.*
*Defendant denies each use of the terms "debt," "debt collection," or "debt collector"*
*to the extent they are used as legal terms of art because government fines and*
*legally imposed fees are not "debt" as Plaintiffs assert.*

138. Second, Linebarger threatened both Mr. Thomas and Ms. Champagne with contempt without informing them that under Iowa law and the Fourteenth Amendment to the Constitution, a court may not lawfully imprison a criminal defendant for nonpayment of debt unless the court first determines that the defendant had the means to pay but willfully refused. *See, e.g.*, Iowa Code § 909.5 (a person may be held in contempt for failing to pay court costs only if she "is able to pay . . . and . . . refuses to do so"); *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983) ("[D]epriv[ing] [a] probationer of his conditional freedom simply because, through no fault of his own, he cannot pay. . . would be contrary to the fundamental fairness required by the Fourteenth Amendment.").

**ANSWER:**

*Para. 138 is legal argument and does not require a reply. To the extent a*
*further response is needed, Defendant denies the allegations of this paragraph.*
*Defendant denies each use of the terms "debt," "debt collection," or "debt collector"*
*to the extent they are used as legal terms of art because government fines and*
*legally imposed fees are not "debt" as Plaintiffs assert.*

139. Linebarger's letters to both Plaintiffs state that nonpayment of their appointed counsel fees can result in contempt proceedings—and thus threaten

arrest and imprisonment—but fail to state that Plaintiffs cannot lawfully be imprisoned for nonpayment if they truly cannot afford to pay. Linebarger's threats of contempt thus violated 15 U.S.C. § 1692e(4).

**ANSWER:**

*Para. 139 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

**COUNT 4:**
**Threatening action that cannot lawfully be taken**
**in violation of FDCPA § 1692e(5)**
**(on behalf of Brooke Champagne and Marico Thomas)**

140. The FDCPA prohibits a debt collector from threatening any action that cannot legally be taken. 15 U.S.C. § 1692e(5).

**ANSWER:**

*Para. 140 is legal argument and does not require a reply.*

141. Linebarger's letters to Plaintiffs misrepresent the legal implications resulting from Plaintiffs' nonpayment of the appointed counsel fees in at least three ways.

**ANSWER:**

*Defendant denies the allegations of Para. 141.*

142. First, by threatening Mr. Thomas with contempt for nonpayment of appointed counsel fees accrued on a charge for which he was not convicted (Case No. SRCR011435), Linebarger threatened to take action that cannot be legally taken in violation of § 1692e(5). As explained above, under Iowa law contempt

proceedings may not lawfully be used to collect appointed counsel fees from defendants who were not convicted.  *See* Count 3, ¶¶ 135–138, above.

**ANSWER:**

*Defendant denies the allegations of Para. 142.*

143.  Second,  by  threatening  both  Plaintiffs  with  contempt  for nonpayment of appointed counsel fees without informing them that they could not be held in contempt unless a court found their nonpayment was willful—i.e., that  they  had  the  reasonable  ability  to  pay  the  debt  but  refused—Linebarger threatened to take action that cannot be legally taken, in violation of § 1692e(5). *See* Count 3, ¶¶ 138–138, above.

**ANSWER:**

*Defendant denies the allegations of Para. 143. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

144.  Third, Linebarger's letters to Plaintiffs state that nonpayment of the debt could result in the "revocation" of their driver's licenses. But under Iowa law, the state may not revoke a debtor's license for nonpayment of court debt. And  while  the  state  can  *suspend*  a  debtor's  license  for  nonpayment,  that authority is restricted to debt arising from specific driving-related offenses.  Iowa Code § 321.210A ("The department shall suspend the driver's license of a person who, upon conviction of violating a law *regulating the operation of a motor vehicle,*

has failed to pay the criminal fine or penalty, surcharge, or court costs . . . .")
(emphasis added).  The state may not suspend a person's motor vehicle license
under section 321.210A based on failure to repay court-appointed counsel fees
ordered as part of restitution.  1989 Iowa Op. Att'y Gen. 34 (1989).

**ANSWER:**

*Para. 144 is legal argument and does not require a reply. To the extent a
further response is needed, Defendant denies the allegations of this paragraph.
Defendant denies each use of the terms "debt," "debt collection," or "debt collector"
to the extent they are used as legal terms of art because government fines and
legally imposed fees are not "debt" as Plaintiffs assert.*

145.   None of the debts Linebarger is seeking to collect from Mr. Thomas
and Ms. Champagne are related to driving offenses, and some of those debts are
for appointed counsel fees.  Accordingly, Linebarger threatened to take action
that cannot be legally taken when it stated in the letters sent to Ms. Champagne
and Mr. Thomas that nonpayment of court debt could result in their licenses
being revoked, which is generally understood to be and is in fact a harsher
sanction than suspension.

**ANSWER:**

*Defendant denies the allegations of Para. 145. Defendant denies each use
of the terms "debt," "debt collection," or "debt collector" to the extent they are used
as legal terms of art because government fines and legally imposed fees are not
"debt" as Plaintiffs assert.*

**COUNT 5:**
**Using false representation or deceptive means to collect or attempt to collect any debt in violation of FDCPA § 1692e(10)**
**(on behalf of Brooke Champagne and Marico Thomas)**

146. The FDCPA prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10). Linebarger violated this provision in several ways.

**ANSWER:**

*Para. 146 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

147. First, Linebarger used false representations or deceptive means to collect or attempt to collect Plaintiffs' debts when it failed to itemize each of their debts, including the appointed counsel fees and collection fees, in the letters.

**ANSWER:**

*Defendant denies the allegations of Para. 147. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

148. Second, Linebarger used false representations or deceptive means to collect or attempt to collect Plaintiffs' debts when it stated in the letters that Plaintiffs owed the specified amounts in "unpaid court fines and fees," when actually twenty-five percent of the amounts due Linebarger claimed they each owed consisted of Linebarger's collection fees.

**ANSWER:**

*Defendant denies the allegations of Para. 148. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

149.   Third, Linebarger misrepresented the legal status of Mr. Thomas's debt related to his 2016 Delaware County Case, and used false and misleading representations in connection with the collection of a debt, when it stated in its letters to Mr. Thomas that "the Court has entered an order against you, and you have unpaid court fees and fines . . . as listed below," when, in fact, the court had *not* entered an order against Mr. Thomas for some of the appointed counsel fees Linebarger was attempting to collect—and, in fact, those fees were contrary to a court order.  *See* ¶¶ 92–94, above.

**ANSWER:**

*Defendant denies the allegations of Para. 149. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

150.   Fourth, Linebarger used false representations and deceptive means to collect or attempt to collect Mr. Thomas's debt when it stated in the letters that nonpayment of attorney fees could result in contempt of court proceedings. *See* Count 3, ¶¶ 132–137, above.

**ANSWER:**

*Defendant denies the allegations of Para. 150. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

151.  Fifth, Linebarger used false representations and deceptive means to collect or attempt to collect Plaintiffs' debts when it stated in the letters that nonpayment could result in contempt of court proceedings but failed to disclose that contempt cannot be used if Plaintiffs were unable to pay.  *See* Count 3, ¶¶ 138–138, above.

**ANSWER:**

*Defendant denies the allegations of Para. 151. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

152.  Sixth, Linebarger used false representations and deceptive means to collect or attempt to collect Plaintiffs' debts when it stated in the letters sent to Champagne and Thomas that nonpayment of the debts could result in their licenses being revoked. *See* Count 4, ¶ 142, above.

**ANSWER:**

*Defendant denies the allegations of Para. 152. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used*

*as legal terms of art because government fines and legally imposed fees are not*

*"debt" as Plaintiffs assert.*

**COUNT 6:**
**Failure to provide required disclosures**
**in violation of FDCPA § 1692e(11)**
**(on behalf of Brooke Champagne and Marico Thomas)**

153.   The FDCPA requires a debt collector to disclose in the initial written communication with the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.  15 U.S.C. § 1692e(11). If the initial communication with the consumer is oral, the FDCPA requires the debt collector to disclose in that initial oral communication that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.  *Id.*

**ANSWER:**

*Para. 153 is legal argument and does not require a reply.*

154.   On information and belief, when Linebarger first contacted Ms. Champagne and Mr. Thomas, the company failed to disclose that it was attempting to collect a debt and that any information obtained would be used for that purpose, in violation of 15 U.S.C. § 1692e(11).

**ANSWER:**

*Para. 154 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and*

*legally imposed fees are not "debt" as Plaintiffs assert.*

155.   The FDCPA also requires debt collectors to disclose in all subsequent communications with a debtor that the communication is from a debt collector. 15 U.S.C. § 1692e(11).  Linebarger's collection letters to Plaintiffs did not include that mandated notice, in violation of the FDCPA.

**ANSWER:**

*Para. 155 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**COUNT 7:**
**Attempting to collect amounts not expressly permitted by law**
**in violation of FDCPA § 1692f(1)**
**(on behalf of Marico Thomas)**

156.   The FDCPA prohibits a debt collector from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, including collecting "any amounts that are not expressly . . . permitted by law. *Id.* at § 1692f(1).  Linebarger violated this provision by seeking to collect appointed counsel fees from Mr. Thomas that were assessed in violation of a court order.

**ANSWER:**

*Para. 156 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

*Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

157. When the Delaware County District Court dismissed Case No. SRCR011435, the court ruled that Mr. Thomas would not be required to pay more than $600 in appointed counsel fees.  But despite that order—which is clearly visible on the docket—a clerk added appointed counsel charges of $711.18. *See* ¶¶ 92–94, above.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 157.  To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

158.  The clerk subsequently removed the additional charges in May 2020, after being contacted by counsel, but Linebarger had already sent letters seeking to collect amounts that included them.

**ANSWER:**

*Defendant lacks information sufficient to admit or deny the allegations of para. 158. To the extent a further response is needed, Defendant denies the allegations of this paragraph.*

159.  Court debt is enforceable in Iowa only if a court has entered an order or judgment requiring the defendant to pay the debt.  *See* Iowa Code §

910.2(1)(a)(2); *State v. Gross*, 935 N.W.2d 695, 702 (Iowa 2019).   Unless it has been reduced to a judgment, court debt may not lawfully be collected.   *State v. Davis*, 944 N.W.2d at 642. Furthermore, an obligation to reimburse the state for appointed counsel fees is only effective if it is ordered by a court.   *See* Iowa Code § 815.9(6) (if the person is acquitted, "the court shall order the payment of all or a portion of the total costs and fees incurred for legal assistance, to the extent the person is reasonably able to pay, after an inquiry which includes notice and reasonable opportunity to be heard").

**ANSWER:**

*Para. 159 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

160.   The additional counsel fee charges were imposed on Mr. Thomas in violation of the court's order, and therefore were not permitted by Iowa law, which provides that court debt is not valid or enforceable unless ordered by a court.   By seeking to collect those fees, Linebarger violated FDCPA § 1692f(1).

**ANSWER:**

*Para. 160 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and*

*legally imposed fees are not "debt" as Plaintiffs assert.*

161.   All of the above described methods of debt collection are unfair or unconscionable, in violation of 15 U.S.C. § 1692f.

**ANSWER:**

*Para. 161 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**COUNT 8:**
**Failure to provide required verification rights notice**
**in violation of FDCPA § 1692g(a)**
**(on behalf of Brooke Champagne and Marico Thomas)**

The FDCPA requires that debt collectors provide debtors with written notice of their rights to dispute the validity of the debt:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing:
>
> (1)   the amount of the debt;
>
> (2)   the name of the creditor to whom the debt is owed;
>
> (3)   a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4)   a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt

collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)     a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

**ANSWER:** *The above paragraph for Count 8 is not numbered and as it contains only a partial quotation of the FDCPA, it is legal argument and does not require a reply.*

162.   On information and belief, Linebarger failed to provide these required debt verification notices within five days of first contacting Ms. Champagne and Mr. Thomas about their rights to dispute the validity of the debts Linebarger was seeking to collect, in violation of 15 U.S.C. § 1692g(a).

**ANSWER:**

*Para. 162 is legal argument and does not require a reply.  To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

## CLAIMS FOR RELIEF FOR VIOLATIONS OF
## THE IOWA DEBT COLLECTION PRACTICES ACT

163.   The Iowa Debt Collection Practices Act (IDCPA), Iowa Code §
537.7101 *et seq.*, prohibits a debt collector from employing certain unfair debt
collection practices.

**ANSWER:**

*Para. 163 is legal argument and does not require a reply.*

164.   A "consumer credit transaction" includes a "consumer credit sale[.]"
Iowa Code § 537.1301(12).

**ANSWER:**

*Para. 164 is legal argument and does not require a reply.*

165.   A "consumer credit sale" is a sale of goods, services, or an interest
in land in which all of the following are applicable:

> (1)   Credit is granted either pursuant to a seller credit card or by
> a seller who regularly engages as a seller in credit
> transactions of the same kind;
>
> (2)   The buyer is a person other than an organization;
>
> (3)   The goods, services or interest in land are purchased
> primarily for a personal, family or household purpose;
>
> (4)   Either the debt is payable in installments or a finance charge
> is made; and

(5)     With respect to a sale of goods or services, the amount

financed does not exceed the threshold amount.

Iowa Code § 537.1301(13).

**ANSWER:**

*Para. 165 is legal argument and does not require a reply.*

166.   A "debt" is defined under Iowa Code § 537.7102(3) as a consumer credit transaction, or alternatively includes a transaction that would have been a consumer credit transaction but for a lack of a financing charge or being payable in installments—i.e., element (4) of a consumer credit sale, above.

**ANSWER:**

*Para. 166 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

167.   A "creditor" is "the person to whom a debtor is obligated, either directly or indirectly, on a debt." *Id.* at § 537.7102(2).

**ANSWER:**

*Para. 167 is legal argument and does not require a reply.*

168.   A "debtor" is defined by the IDCPA as "the person obligated." *Id.* at § 537.7102(6).

**ANSWER:**

*Para. 168 is legal argument and does not require a reply.*

169.  The State of Iowa is a "creditor," in that it is the entity to which Ms. Champagne and Mr. Thomas are obligated on a debt.

**ANSWER:**

*Para. 169 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

170.  Ms. Champagne and Mr. Thomas are both "debtors," as they are the persons obligated to the state for that debt.

**ANSWER:**

*Para. 170 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

171.  Each of the transactions at issue is a "debt" for the purposes of the IDCPA, because:

a.     Credit was granted by the State of Iowa, which regularly engages as in similar credit transactions;

b.     Both Ms. Champagne and Mr. Thomas are persons other than an organization;

c.     The services—the payment of appointed counsel fees—were primarily for a personal, family or household purpose;

d.     Each of the transactions were under the threshold amounts in effect during the period the consumer credit transaction ($50,000-$55,800).

**ANSWER:**

*Para. 171 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

172.   Each of the transactions at issue is or would have been a consumer credit transaction if the debt was payable in installments or a finance charge was made.

**ANSWER:**

*Para. 172 is legal argument and does not require a reply. To the extent a further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

173.   Linebarger is a "debt collector" under Iowa law because it engages, directly or indirectly, in debt collection for others.

**ANSWER:**

*Para. 173 is legal argument and does not require a reply. To the extent a*

*further response is needed, Defendant denies the allegations of this paragraph. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

174.  Linebarger's debt collection letters involve illegal threats, coercions or attempts to coerce, in violation of Iowa Code § 537.7103.  As a result of each of Linebarger's violations of the IDCPA, Plaintiffs are each entitled to actual damages and statutory damages of $1,000.00. Iowa Code § 537.5201(1)(a). Plaintiffs are also entitled to reasonable attorneys' fees under Iowa Code § 537.5201(8).

**ANSWER:**

*Defendant denies the allegations of Para. 174. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**COUNT 9:**
**Attempting to collect a debt by means of a false threat that nonpayment may result in arrest in violation of IDCPA § 537.7103(1)(e)**
**(on behalf of Brooke Champagne and Marico Thomas)**

175.  The IDCPA prohibits a debt collector from collecting or attempting to collect a debt by means of a "false threat that nonpayment of a debt may result in the arrest of a person[.]" Iowa Code § 537.7103(1)(e).

**ANSWER:**

*Para. 175 is legal argument and does not require a reply.*

176. Linebarger violated the IDCPA when it stated in the letters that Plaintiffs' nonpayment of attorney fees could result in contempt of court proceedings, which in Iowa can lead to arrest.    Specifically, Linebarger threatened Mr. Thomas with contempt for nonpayment of appointed counsel fees accrued on a charge for which he was not convicted (Case No. SRCR011435) even though, as explained above, Iowa law prohibits the use of contempt proceedings to collect appointed counsel fees from defendants who were not convicted.  *See* Count 3, ¶¶ 132–137, above.

**ANSWER:**

*Defendant denies the allegations of Para. 176.*

177. In addition, Linebarger's letters threatened both Plaintiffs with contempt if they did not pay appointed counsel fees.  As explained above, contempt can lead to jail, and a debtor cannot lawfully be jailed for nonpayment unless a court finds that her nonpayment was willful. *See* Count 3, ¶¶ 138–138, above.

**ANSWER:**

*Defendant denies the allegations of Para. 177. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

## COUNT 10:
**Attempting to collect a debt by threatening to take an action prohibited by law in violation of IDCPA § 537.7103(1)(f)
(on behalf of Brooke Champagne and Marico Thomas)**

178. The IDCPA prohibits a debt collector from collecting or attempting to collect a debt by taking an action or threatening to take an action prohibited by law. Iowa Code § 537.7103(1)(f).

**ANSWER:**

*Para. 178 is legal argument and does not require a reply.*

179. Linebarger threatened to take action prohibited by law when it stated in the letters that Plaintiffs' nonpayment of attorney fees could result in contempt of court proceedings, which in Iowa can lead to arrest and jail.

**ANSWER:**

*Defendant denies the allegations of Para. 179.*

180. Specifically, Linebarger threatened Mr. Thomas with contempt for nonpayment of appointed counsel fees accrued on a charge for which he was not convicted (Case No. SRCR011435) even though, as explained above, Iowa law prohibits the use of contempt proceedings to collect appointed counsel fees from defendants who were not convicted. *See* Count 3, ¶¶ 132–137, above.

**ANSWER:**

*Defendant denies the allegations of Para. 180.*

181. In addition, Linebarger threatened both Plaintiffs with contempt for nonpayment of appointed counsel fees even though, as explained above, Iowa law prohibits the jailing of Plaintiffs for nonpayment unless a court has found their nonpayment was willful. *See* Count 3, ¶¶ 138–138, above.

**ANSWER:**

*Defendant denies the allegations of Para. 181.*

182. Linebarger threatened to take action that cannot be legally taken when it stated in the letter that Plaintiffs' nonpayment of attorney fees could result in their licenses being revoked.  As explained above, under Iowa law, the state may only revoke a debtor's license for nonpayment of debt related to specific driving-related offenses. None of the debts Linebarger is seeking to collect from Mr. Thomas and Ms. Champagne are related to driving offenses.  *See* Count 3, ¶ 142, above.

**ANSWER:**

*Defendant denies the allegations of Para. 182. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

**COUNT 11:**
**Attempting to collect a debt through intentional misrepresentation or representation which tends to create a false impression of the character, extent, or amount of a debt in violation of IDCPA § 537.7103(4)(e)**
**(on behalf of Brooke Champagne and Marico Thomas)**

183. The IDCPA prohibits a debt collector from collecting or attempting to collect a debt by through an intentional misrepresentation, or a representation which tends to create a false impression of the character, extent or amount of a debt, or of its status in a legal proceeding. Iowa Code § 537.7103(4)(e). Linebarger violated this provision in several ways.

**ANSWER:**

*Para. 183 is legal argument and does not require a reply. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they*

*are used as legal terms of art because government fines and legally imposed fees*
*are not "debt" as Plaintiffs assert.*

184. First, Linebarger used intentional misrepresentation or a
representation which tends to create a false impression of the character, extent
or amount of a debt, or of its status in a legal proceeding, when Linebarger stated
in the letters that Mr. Thomas's nonpayment of attorney fees could result in
contempt of court proceedings, which in Iowa can lead to arrest and jail.

**ANSWER:**

*Defendant denies the allegations of Para. 184. Defendant denies each use*
*of the terms "debt," "debt collection," or "debt collector" to the extent they are used*
*as legal terms of art because government fines and legally imposed fees are not*
*"debt" as Plaintiffs assert.*

185. Specifically, Linebarger threatened Mr. Thomas with contempt for
nonpayment of appointed counsel fees accrued on a charge for which he was not
convicted (Case No. SRCR011435) even though, as explained above, Iowa law
prohibits the use of contempt proceedings to collect appointed counsel fees from
defendants who were not convicted. *See* Count 3, ¶¶ 132–137, above.

**ANSWER:**

*Defendant denies the allegations of Para. 185.*

186. Second, Linebarger used intentional misrepresentation or a
representation which tends to create a false impression of the character, extent
or amount of a debt, or of its status in a legal proceeding, when Linebarger
threatened both Plaintiffs with contempt for nonpayment of appointed counsel

fees even though, as explained above, Iowa law prohibits the jailing of Plaintiffs for nonpayment unless a court has found their nonpayment was willful. *See* Count 3, ¶¶ 138–138, above.

**ANSWER:**

*Defendant denies the allegations of Para. 186. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

187. Third, Linebarger used intentional misrepresentation or a representation which tends to create a false impression of the character, extent or amount of a debt, or of its status in a legal proceeding, when Linebarger stated in the letter that Plaintiffs' nonpayment of attorney fees could result in their licenses being revoked.  As explained above, under Iowa law, the state may only revoke a debtor's license for nonpayment of debt related to specific driving-related offenses.   None of the debts Linebarger is seeking to collect from Mr. Thomas and Ms. Champagne are related to driving offenses.  *See* Count 4, ¶ 142, above.

**ANSWER:**

*Defendant denies the allegations of Para. 187. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

188. Fourth, Linebarger used intentional misrepresentation or a representation which tends to create a false impression of the character, extent or amount of a debt when it attempted to collect debt from Mr. Thomas that was not ordered by the court . *See* Count 7, ¶¶ 157–159, above.

**ANSWER:**

*Defendant denies the allegations of Para. 188. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

189. Fifth, Linebarger used intentional misrepresentation or a representation which tends to create a false impression of the character, extent or amount of a debt when it failed to itemize Plaintiffs' debts in the letters.

**ANSWER:**

*Defendant denies the allegations of Para. 189. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

190. Sixth, Linebarger used intentional misrepresentation or a representation which tends to create a false impression of the character, extent or amount of a debt related to Mr. Thomas's 2016 Delaware County Case (No. SRCR011435), and used false and misleading representations in connection with the collection of a debt, when it stated in its letters to Mr. Thomas that "the Court has entered an order against you, and you have unpaid court fees and fines . . .

as listed below," when, in fact, the court had *not* entered an order against Mr. Thomas for some of the appointed counsel fees Linebarger was attempting to collect.

**ANSWER:**

*Defendant denies the allegations of Para. 190. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

191. Seventh, Linebarger also misrepresented the character of Plaintiffs' debts by stating in letters that they owed amount in "unpaid court fines and fees," when actually twenty-five percent of the "amount due" Linebarger claimed was owed consisted of Linebarger's collection fees. *See* Count 2, ¶¶ 125-127, 129.

**ANSWER:**

*Defendant denies the allegations of Para. 191. Defendant denies each use of the terms "debt," "debt collection," or "debt collector" to the extent they are used as legal terms of art because government fines and legally imposed fees are not "debt" as Plaintiffs assert.*

## VI. PRAYER FOR RELIEF

WHEREFORE Plaintiffs pray for relief as follows:

192. For an award of compensatory damages to Ms. Champagne in an amount to be determined at trial under 42 U.S.C. § 1983;

**ANSWER:**

*Defendant denies that Plaintiff is entitled to the relief requested.*

193.   For injunctive relief barring Linebarger from collecting or seeking to collect court debt from Ms. Champagne without a court judgment under 42 U.S.C. § 1983.

**ANSWER:**

*Defendant denies that Plaintiff is entitled to the relief requested.*

194.   For an award of actual damages to each Plaintiff in an amount to be determined at trial under 15 U.S.C. § 1692k(a)(1) and Iowa Code § 537.5201(1)(a);

**ANSWER:**

*Defendant denies that Plaintiffs are entitled to the relief requested.*

195.   For awards of statutory damages to each Plaintiff of $1,000.00 under 15 U.S.C. § 1692k(a)(2) and $1,000.00 under Iowa Code § 537.5201(1)(a);

**ANSWER:**

*Defendant denies that Plaintiffs are entitled to the relief requested.*

196.   For an award of costs of litigation and reasonable attorneys' fees under 28 U.S.C. § 1920, 42 U.S.C. § 1988, 5 U.S.C. § 1692k(a)(3), Iowa Code § 537.5201(8), and any other applicable authority; and

**ANSWER:**

*Defendant denies that Plaintiffs are entitled to the relief requested.*

197.   For such other and further relief as may be just and equitable.

**ANSWER:**

*Defendant denies that Plaintiffs are entitled to the relief requested.*

**VII. JURY DEMAND**

198. Plaintiff demands a trial by jury on all issues so triable.

**ANSWER:**

*Defendant denies that Plaintiffs are entitled to the relief requested.*

## DEFENDANT'S AFFIRMATIVE DEFENSES

Defendant, LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, by and through its counsel, Barron & Newburger, P.C., states as follows for its affirmative defenses to Plaintiffs' Complaint:

1. Defendant affirmatively states that, to the extent that any of the alleged complained-of conduct is governed by the FDCPA, any violation of the FDCPA was not intentional and would have resulted from a *bona fide error* notwithstanding the maintenance of procedures reasonably adapted to avoid such error. These procedures and protocols are reasonably adapted to avoid a violation of the FDCPA, such as the one alleged in this case.

2. One or more of the counts contained in Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

3. Defendant asserts the defense of setoff of any claim of damages.

4. Plaintiffs failed to mitigate their damages.

5. Defendant reserves all defenses available under the FCRA and FDCPA and any corresponding rules or regulations promulgated thereunder.

## RESERVATION OF RIGHTS

Defendant reserves all affirmative defenses under Rule 8(c) of the Federal

Rules of Civil Procedure and any other defenses at law or in equity that may now or in the future be available based on discovery or other factually investigation concerning this case.

Respectfully Submitted,

BARRON & NEWBUGER, PC

/s/ *Nabil G. Foster*

_____

Nabil G. Foster
BARRON & NEWBURGER, PC
701 Main St. # 6396
Evanston, Illinois 60204
Telephone: 312-767-5750
Facsimile: 312-229-9203
nfoster@bn-lawyers.com
Admitted *Pro Hac Vice*

WHITFIELD & EDDY, PLC

/s/ *Matthew D. Jacobson*

_____

Matthew D. Jacobson
WHITFIELD & EDDY, PLC
699 Walnut Street
Suite 2000
Des Moines, Iowa 50309
Telephone: 515-246-5531
Facsimile: 515-246-1474
jacobson@whitfieldlaw.com

## CERTIFICATE OF SERVICE

I, Matthew D. Jacobson, an attorney, certify that I shall cause to be served a copy of **DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT** upon the following individual(s), via the Case Management/Electronic Case Filing System ("ECF") on November 20, 2020.

| | |
|---|---|
| X   CM/ECF | *Attorneys for Plaintiff* |
| ___ Facsimile | |
| ___ Federal Express | Alexander Vincent Kornya |
| ___ E-Mail | IOWA LEGAL AID |
| ___ Messenger | 1111 9th St., Ste. 230 |
| | Des Moines, IA  50310 |
| | T:  (515) 243.1193 |
| | F:  (515) 244-4618 |
| | akornya@iowalaw.org |

Toby J. Marshall
Brittany J. Glass
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
T:  (206) 816-6603
F:  (206) 319-5450
tmarshall@terrellmarshall.com
bglass@terrellmarshall.com

Leslie A. Bailey
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, California 94612
T:  (510) 622-8203
lbailey@publicjustice.net

Matthew D. Jacobson
WHITFIELD & EDDY, PLC
699 Walnut Ave., Suite 2000 Des Moines, IA 50309
Phone: 515-246-5531
Fax: 515-246-1474
jacobson@whitfieldlaw.com

*/s/Matthew D. Jacobson*

One of the Attorneys for Defendant