IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BROOKE CHAMPAGNE & MARICO THOMAS,<br><br>                          Plaintiffs,<br><br>        v.<br><br>LINEBARGER GOGGAN BLAIR & SAMPSON, LLP,<br><br>                          Defendant. | CASE NO. 4:20-cv-00275-SMR-SBJ<br><br>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION............................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 1

III.    AUTHORITY AND ARGUMENT ..................................................................... 4

        A.      The consumer protection and civil rights statutes underlying
                Plaintiffs' claims support the requested award of fees ................... 5

        B.      The requested attorneys' fees are reasonable ................................ 8

                1.      The hourly rates billed by Plaintiffs' counsel are
                        reasonable ............................................................................ 9

                2.      Counsel spent a reasonable amount of time on pre-filing
                        Efforts given the novelty and complexity of the
                        claims and issues raised. ..................................................... 10

                3.      Linebarger's track record of vigorously defending its
                        purported legal immunity warranted the time spent
                        working up this case ............................................................ 14

                4.      Plaintiffs' success justifies the requested fees .................... 16

                5.      Proportionality is not appropriate in assessing the
                        reasonableness of fees ......................................................... 17

                6.      Plaintiffs' requested costs are reasonable .......................... 20

VI.     CONCLUSION ............................................................................................ 20

i

## TABLE OF AUTHORITIES

**Page**

*Armstrong v. Rose Law Firm, P.A.*,
2002 WL 31050583 (D. Minn. Sept. 5, 2002) ........................................ 6, 8

*Aronson v. Alt. Collections LLC*,
2014 WL 4449695 (D. Minn. Sept. 10, 2014) ........................................... 17

*Ass'n for Retarded Citizens of N. Dakota v. Olson*,
561 F. Supp. 495 (D.N.D. 1982) ................................................................ 13
*aff'd as modified*, 713 F.2d 1384 (8th Cir. 1983)..................................... 13

*Blum v. Stenson*,
465 U.S. 886 (1984).................................................................................... 9

*Cent. Pension Fund of the Int'l Union of Operating Engineers*
*& Participating Emps. v. Ray Haluch Gravel Co.*,
745 F.3d 1 (1st Cir. 2014) ......................................................................... 18

*City of Riverside v. Rivera*,
477 U.S. 561 (1986).................................................................................. 18

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
579 F.3d 894 (8th Cir. 2009) .................................................................... 20

*Cullens v. Ga. Dep't of Transp.*,
29 F.3d 1489 (11th Cir. 1994) .................................................................. 18

*Davis v. Fid. Info. Corp.*,
2018 WL 6171438 (E.D. Mo., Nov. 26, 2018) ........................................... 17

*Dunning v. Simmons Airlines, Inc.*,
62 F.3d 863 (7th Cir.1995) ....................................................................... 19

*Eagle Fuels, LLC v. Perrin*,
2014 WL 12606146 (W.D. Mo. Sept. 25, 2014)......................................... 14

*Erickson v. Credit Bureau Servs., Inc.*,
    2013 WL 672281 (D. Neb. Feb. 22, 2013) ................................................. 20

*Garcia v. Midland Credit Mgmt., Inc.*,
    2015 WL 4911544, at *3 n.6 (D. Colo. Aug. 18, 2015) ............................ 18

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ................................................... 18

*Fish v. St. Cloud State Univ.*,
    295 F.3d 849 (8th Cir. 2002) .............................................. 8, 16

*Fox v. Vice*,
    563 U.S. 826 (2011) .................................................................... 9

*Gonzales v. Arrow Fin. Services, L.L.C.*,
    660 F.3d 1055 (9th Cir. 2011) ..................................................... 6

*Graziano v. Harrison*,
    950 F.2d 107 (3d Cir. 1991) ......................................................... 6

*Guerra v. Linebarger Goggan Blair & Sampson, LLP*,
    No. 17-CV-20114-KMM (S.D. Fla.) ............................................. 15

*Harstad v. I.C. Sys.*,
    2013 WL 1136579 (D. Minn. Jan. 29, 2013) ............................... 7

*Henggeler v. Brumbaugh & Quandahl, P.C., LLO*,
    2014 WL 793544 (D. Neb. Feb. 26, 2014) ................................ 14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................*passim*

*Hull v. N.E. Leg. Group, LLC*,
    2013 WL 2403327 (D. Neb. May 31, 2013) ............................... 17

iii

*In re Genetically Modified Rice Litig.*,
  764 F.3d 864 (8th Cir. 2014) ..................................................................... 10

*In re Humes*,
  505 B.R. 851 (Bankr. E.D. Ark. 2013) .............................................. 6, 14, 15

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
  631 F.3d 913 (8th Cir. 2011) ..................................................................... 20

*Jackson v. TeleRecovery*,
  2021 WL 633212 (N.D. Ala. Feb. 18, 2021) ............................................. 17

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*,
  559 U.S. 573 (2010).................................................................................. 5, 6

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir.1974) ................................................................... 8, 10

*Jones v. Corbis Corp.*,
  489 F. App'x 155 (9th Cir. 2012) ............................................................... 10

*League of Women Voters of Mo. v. Ashcroft*,
  5 F.4th 937 (8th Cir. 2021) .......................................................................... 8

*Lightfoot v. Walker*,
  619 F. Supp. 1481 (S.D. Ill. 1985),
  *aff'd*, 826 F.2d 516 (7th Cir. 1987) .................................................... 13, 14

*Loggins v. Delo*,
  999 F.2d 364 (8th Cir. 1993) ..................................................................... 18

*Lynch v. Custom Welding & Repair, Inc.*,
  142 F. Supp. 3d 814 (N.D. Iowa 2015).................................................... 12

*Magi v. United Merchant Asset Recovery of WNY, LLC*,
  2021 WL 2269478 (W.D.N.Y. June, 2, 2021) ............................................ 17

*M.B. by Eggemeyer v. Tidball*,
    18 F.4th 565 (8th Cir. 2021) ........................................................................ 9

*McDonald v. Armontrout*,
    860 F.2d 1456 (8th Cir.1988) ................................................................. 9, 13

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
    436 U.S. 658 (1978)...................................................................................... 7

*Monroe v. Pape*,
    365 U.S. 167 (1961)....................................................................................... 7

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010)................................................................................... 7, 8

*Phenow v. Johnson, Rodenberg & Lauinger, PLLP*,
    766 F. Supp. 2d 955 (D. Minn. 2011) ................................................... 15, 18

*Pickett v. Milam*,
    579 F.2d 1118 (8th Cir. 1978) ..................................................................... 7

*Queen Anne's Conservation Ass'n v. U.S. Dep't of State*,
    800 F. Supp. 2d 195 (D.D.C. 2011) .............................................................. 5

*Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of
Operating Eng'rs & Participating Emp'rs*,
    571 U.S. 177 (2014)............................................................................... 12, 13

*Riter v. Moss & Bloomberg, Ltd.*,
    2000 WL 1433867 (N.D. Ill. Sept. 26, 2000) ............................................. 19

*Schultz v. Sw. Credit Sys., LP*,
    2018 WL 3398139 (N.D. Iowa July 12, 2018) ........................................... 19

*Sulkowska v. City of New York*,
    170 F. Supp. 2d 359 (S.D.N.Y. 2001)......................................................... 11

*The Ne. Ohio Coal. for the Homeless v. Husted*,
  831 F.3d 686 (6th Cir. 2016) .................................................................... 10

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................... 4

*Weitz Co. v. MH Washington*,
  631 F.3d 510 (8th Cir. 2011) ................................................................... 14

*Wells v. LF Noll, Inc.*,
  2019 WL 5596409 (N.D. Iowa Oct. 30, 2019).......................................... 12

*Williams v. McKeithen*,
  495 F. Supp. 707 (M.D. La. 1980) ............................................................ 10

**FEDERAL STATUTES**

15 U.S.C. § 1692 .......................................................................................... 12

15 U.S.C. § 1692a(6) .................................................................................... 15

15 U.S.C. § 1692(e)........................................................................................ 5

15 U.S.C. § 1692f(1) ....................................................................................... 5

15 U.S.C. § 1692k(a)(3)............................................................................ 5, 17

42 U.S.C. § 1983 .......................................................................................... 12

42 U.S.C. § 1988 ............................................................................................ 7

42 U.S.C. § 1988(b)........................................................................................ 5

**OTHER AUTHORITIES**

Iowa Code § 537.7103 ................................................................................. 12

Iowa Code § 537.1102(2)(d)........................................................................... 6

Iowa Code § 537.5201(8) ............................................................................*passim*

S. Rep. No. 95-382 (1977),
    *reprinted in* 1977 U.S.C.C.A.N. 1695 .......................................................... 5

Civil Rights Act of April 20, 1871,
    § 1, 17 Stat. 13 ............................................................................................ 7

Blake Ellis & Melanie Hicken,
    *The Secret World of Government Debt Collection*,
    CNN MONEY (Feb. 17, 2015)...................................................................... 11

## I.      INTRODUCTION

Plaintiffs Brooke Champagne and Marico Thomas filed this case against

Defendant Linebarger Goggan Blair & Sampson, LLP, a sophisticated law firm that

collects more than $1 billion in government debt on an annual basis. Plaintiffs

alleged Linebarger violated their rights under the Fair Debt Collection Practices

Act, and the Iowa Debt Collection Practices Act, and the Due Process Clause in the

Fourteenth Amendment to the United States Constitution. Though their claims

were novel and untested, ███████████████████████████████

███████ This ████████████████████████████████

███████████ in other cases alleging abusive debt collection practices.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ For the following reasons, Plaintiffs' respectfully request an award of

$232,112,45 in fees and $1,978.42 in costs.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are laid out in great detail in both the sixty-three-page

complaint and the thirty exhibits attached to it. *See* Dkt. Nos. 1 & 1-1 to 1-31.

Linebarger is a private law firm with a nationwide presence. Dkt. No. 1 at ¶¶ 2-6.

It specializes in collecting fines, fees, and other debt owed to governmental

entities. *Id*. Linebarger has more than 2,300 governmental clients across the country and collects over $1 billion in government debt each year. *Id*. ¶ 2.

Between 2010 and 2020, Linebarger contracted to collect court debt for several counties in the State of Iowa. *Id*. ¶¶ 3-6. Plaintiffs Brooke Champagne and Marico Thomas were among the many Iowans whose accounts were held by Linebarger. *Id*. ¶9. Plaintiffs alleged that in its collection efforts, Linebarger violated the federal Fair Debt Collection Practices Act (FDPCA) and the Iowa Debt Collection Practices Act (IDCPA) in at least five ways: (1) threatening to jail Plaintiffs for nonpayment when that was not an available remedy; (2) threatening to jail Plaintiffs for nonpayment without advising them that ability-to-pay is a defense to incarceration; (3) threatening to revoke Plaintiffs' drivers' licenses when that was not an available remedy; (4) failing to implement validation and dispute resolution processes required by the FDCPA; and (5) collecting amounts that were never validly owed. *See generally id*. Plaintiff Champagne also alleged Linebarger violated her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See id*. ¶ 12.

Given the nature of Linebarger's conduct, the firm's assumed relationship with Iowa, and the fact that its actions threatened—without legal authority—to undo the hard-won progress made by both Plaintiffs in rebuilding their lives after

2

becoming involved with the criminal justice system, Plaintiffs' counsel believed

this case justified substantial actual damages in the form of emotional harm and

mental anguish. Kornya Decl. ¶ 18.

Plaintiffs filed their complaint on September 1, 2020, and Linebarger filed

its answer on November 20, 2020. Dkt. Nos. 1, 17. The parties held a discovery

conference and submitted a proposed scheduling order and discovery plan on

November 30, 2020. Dkt. No. 19. Initial disclosures were exchanged on December

18, 2020. Marshall Decl. ¶ 13.

Plaintiffs served discovery on Linebarger on May 18, 2021. *Id*. ¶ 14. In a

joint motion filed on June 16, 2021, the parties requested a mediated settlement

conference. Dkt. No. 26. The conference was set for July 7, 2021. Dkt. No. 30.

Linebarger served its discovery responses on July 2, 2021, but little

information was provided. Marshall Decl. ¶ 14. Plaintiffs' counsel began to put

together a good-faith dispute as they prepared for the settlement conference. *Id*.

But before that became necessary, the parties agreed to ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

Despite the basic settlement reached at the conclusion of the mediated conference, the parties continued to negotiate about the actual language of the agreement for over two months, necessitating three status conferences. Marshall Decl. ¶ 17. Ultimately, a formal Settlement Agreement and Release was signed by Plaintiffs Brooke Champagne and Marico Thomas on September 21, 2021 and September 23, 2021, respectively. Marshall Decl., Ex. A.

On August 2, 2021, Plaintiffs' counsel sent detailed records to Linebarger's attorneys showing the work performed on this matter. Marshall Decl. ¶ 18. Plaintiffs prepared to discuss a ████████████████████████████████ ████████ but despite outreach efforts, Linebarger never engaged with them. *Id*.

### III.    AUTHORITY AND ARGUMENT

Linebarger has agreed ██████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ Marshall Decl., Ex. A ¶¶ 1, 9. Accordingly, ████████████████████████ is not in dispute. The only question before the Court is the reasonable amount to be awarded.

In determining a reasonable amount to award for attorneys' fees, courts look to the fee-shifting statutes relevant to the underlying action for guidance. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)

(assessing fee awards in settled case and noting law that "governed the claim ...

also governs the award of fees"); *Queen Anne's Conservation Ass'n v. U.S. Dep't of*

*State*, 800 F. Supp. 2d 195, 197–98 (D.D.C. 2011) (where "stipulation [for dismissal

of plaintiff's claim] included the provision that 'Defendants agree that Plaintiff is

entitled to an award of reasonable attorney's fees and costs,'" fees were assessed

"pursuant to" the law governing settled claim). Here, the FDCPA, the IDCPA, and

Section 1983 govern the underlying claims and provide the relevant legal

frameworks for determining reasonable fees and costs. *See* 15 U.S.C.

§ 1692k(a)(3); Iowa Code § 537.5201(8); 42 U.S.C. § 1988(b).

**A.      The consumer protection and civil rights statutes underlying Plaintiffs'
          claims support the requested award of fees.**

Congress enacted the FDCPA "to eliminate abusive debt collection practices

by debt collectors[.]" 15 U.S.C. § 1692(e). That was the aim of this case. Indeed,

Plaintiffs alleged that Linebarger violated the FDCPA in at least five different ways,

including attempting to collect amounts from Plaintiffs that were not "expressly …

permitted by law." 15 U.S.C. § 1692f(1).

Congress intended that lawsuits by victims of abusive collection practices

would be the primary method of enforcing the FDCPA. *See* S. Rep. No. 95-382, at

5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696; *see also Jerman v. Carlisle,*

*McNellie, Rini, Kramer & Ulrich L.P.A.*, 559 U.S. 573, 603 (2010) (recognizing

FDCPA's "calibrated scheme of statutory incentives to encourage self-enforcement"). Specifically, Congress chose to "encourage[] private enforcement by permitting aggrieved individuals to bring suit as private attorneys general." *Gonzales v. Arrow Fin. Services, L.L.C.*, 660 F.3d 1055, 1062 (9th Cir. 2011). The mandatory fee-shifting provision of the FDCPA "fulfill[s] Congress' intent that the Act should be enforced by debtors acting" in that capacity. *Armstrong v. Rose Law Firm, P.A.*, 2002 WL 31050583, at *1 (D. Minn. Sept. 5, 2002) (quoting *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991)). Thus, reasonable awards of attorneys' fees are critical in deterring the illegal conduct that the Act targets. *See In re Humes*, 505 B.R. 851, 856 (Bankr. E.D. Ark. 2013) ("Debt collectors are not incentivized to change their practices and comply with the FDCPA unless the Court . . . awards opposing counsel their fees.").

Like the FDCPA, the IDCPA has an "underlying purpose[] and polic[y] of . . . [p]rotect[ing] consumers against unfair practices by some . . . collectors of consumer credit." Iowa Code § 537.1102(2)(d). The text of the IDCPA explicitly emphasizes the important role of attorneys' fees for ensuring plaintiffs can secure competent counsel to bring meritorious claims, regardless of how small those claims are: "[r]easonable attorney's fees shall be determined by the value of the

6

time reasonably expended by the attorney and not by the amount of the recovery on behalf of the consumer." Iowa Code § 537.5201(8).

Finally, Congress enacted fee-shifting for Section 1983 claims "to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citing legislative history of 42 U.S.C. § 1988); *see also Pickett v. Milam*, 579 F.2d 1118, 1121 (8th Cir. 1978) ("The purpose of section 1988 is to encourage enforcement of the Civil Rights Acts by compensating those persons who bring meritorious actions."). Like those in FDCPA cases, meritorious plaintiffs in Section 1983 cases are "thought to be advancing the public interest." *Pickett*, 579 F.2d at 1121; *see also Harstad v. I.C. Sys.*, 2013 WL 1136579, at *2 (D. Minn. Jan. 29, 2013) (rejecting defendants' assertion that "[n]o public purpose" was served by plaintiffs' victory in FDCPA"). Section 1983 would fail to achieve its long-recognized public purpose of "enforc[ing] the [p]rovisions of the Fourteenth Amendment," *Monroe v. Pape*, 365 U.S. 167, 171 (1961) (quoting Civil Rights Act of April 20, 1871, § 1, 17 Stat. 13), *overruled on other grounds by Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), unless counsel can recover a fee "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

**B.** **The requested attorneys' fees are reasonable.**

Under the FDCPA, the IDCPA, and Section 1988, the "starting point in determining [an award of] attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 433); *see also Armstrong*, 2002 WL 31050583, at *2 n.1 (applying lodestar method in FDCPA action). The goal of the lodestar method is to "roughly approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551.

The Eighth Circuit has adopted the guidelines for attorneys' fees outlined by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974). *See League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937, 941 (8th Cir. 2021). These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 941 n.3 (quoting *Hensley*, 461 U.S. at 430 n.3). Ultimately, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id*. at 940 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

### 1.    The hourly rates billed by Plaintiffs' counsel are reasonable.

Under the lodestar method, an hourly rate is reasonable when it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir.1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984)). While several of the attorneys representing Plaintiffs work for nonprofit law firms that generally do not charge their clients, the firms are still entitled to a full recovery of attorneys' fees. As with private counsel, fees for the work of legal aid attorneys should be calculated at rates comparable to those charged by attorneys in the community with comparable experience. *M.B. by Eggemeyer v. Tidball*, 18 F.4th 565, 569 (8th Cir. 2021) (citing *Blum*, 465 U.S. at 894-95).

For this case, Plaintiffs' counsel have billed at rates that are below those that attorneys and staff of comparable experience and skill typically charge in this district. Marshall Decl. ¶¶ 22-27; Bailey Decl. ¶¶ 26-28; Kornya Decl. ¶¶ 21-23; Newkirk Decl. ¶¶ 6-13.

**2.      Counsel spent a reasonable amount of time on pre-filing efforts given the novelty and complexity of the claims and issues raised.**

The reasonableness of the hours spent litigating a case is directly tied to the novelty and complexity of issues raised. As the Fifth Circuit explained in *Johnson*:

> Cases of first impression generally require more time and effort on the attorney's part. Although this greater expenditure of time in research and preparation is an investment by counsel in obtaining knowledge which can be used in similar later cases, he should not be penalized for undertaking a case which may "make new law." Instead, he should be appropriately compensated for accepting the challenge.

488 F.2d at 718.

Because increased time translates directly into increased attorneys' fees under the lodestar method, federal courts recognize that the novelty and complexity of a case can make a large number of hours, and a corresponding large attorneys' fees award, entirely reasonable. *See In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872-73 (8th Cir. 2014) (approving fees at "high end of the range . . . approved in similar cases" because, among other things, case "raised novel and complex issues of law"); *Jones v. Corbis Corp.*, 489 F. App'x 155, 157 (9th Cir. 2012) (unpublished) (noting "novel issues . . . justified the time spent"); *Williams v. McKeithen*, 495 F. Supp. 707 (M.D. La. 1980) (finding 996 hours reasonable where case "involved novel and difficult questions"); *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 706–07 (6th Cir. 2016) (750 hours

reasonable where the case involved novel and complex issues); *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 368 (S.D.N.Y. 2001) (rejecting arguments of "unnecessary" and "excessive billing" where hours "were reasonably expended given the novel and complex matters implicated").

This case raised novel and complex issues. Linebarger is one of the nation's largest collectors of debt owed to governmental entities. Dkt. No. 1 at 2. In 2015, the firm was the subject of an award-winning investigative series by CNN Money, which provided an overview of Linebarger's nationwide practices and the legal strategies the firm has implemented to escape liability under federal law for actions that would unquestionably violate the FDCPA if engaged in by law firms collecting private sector debt. Blake Ellis & Melanie Hicken, *The Secret World of Government Debt Collection*, CNN MONEY (Feb. 17, 2015).[1] For example, Linebarger lawyers "have argued that consumer laws don't apply [to the firm] or that it has 'immunity'" while allegedly "operat[ing] as an agent of its government clients." *Id*. Attorneys at Iowa Legal Aid saw this firsthand. Kornya Decl. ¶ 15. Given Linebarger's tactics, Plaintiffs' counsel performed a significant amount of work to develop facts specific to Linebarger's collection efforts in Iowa and legal

---

[1] Available at https://money.cnn.com/interactive/pf/debt-collector/government-agencies/index.html.

theories that would provide for liability under the statutes at issue. *Id*.; *see also* Bailey Decl. ¶¶ 16-20; Marshall Decl. ¶ 11.

The following six questions of law are implicated in this case: (1) To what extent do court fines and fees constitute "debt" under 15 U.S.C. § 1692a(5)? (2) Is Linebarger a "debt collector" for the purposes of 15 U.S.C. § 1692a(6)? (3) Do court fines and fees constitute "debt" under Iowa Code § 537.7103? (4) Is Linebarger a "debt collector" for the purposes of Iowa Code § 537.7103?[2] (5) Is the extrajudicial assessment and collection of court debt a violation of the Due Process Clause of the United States Constitution? and (6) Was Linebarger a private state actor operating "under color of state law" for the purposes of 42 U.S.C. § 1983? Each of these questions presents an issue of first impression within this Circuit and, perhaps, in any other court in the nation. *See* Bailey Decl. ¶ 17.

The lodestar figure properly includes time Plaintiffs' counsel spent performing factual and legal inquiries before filing the complaint, including research into the issues set forth above. "The fact that some of the claimed fees accrued before the complaint was filed is inconsequential." *Ray Haluch Gravel Co.*

---

[2] The meaning of "debt" and "debt collector" are distinct questions under the FDCPA and the IDCPA. *See Lynch v. Custom Welding & Repair, Inc.*, 142 F. Supp. 3d 814, 823 (N.D. Iowa 2015) (noting IDCPA's narrower definition of "debt" and broader definition of "debt collector" vis-à-vis FDCPA); *accord Wells v. LF Noll, Inc.*, 2019 WL 5596409, at *13 (N.D. Iowa Oct. 30, 2019).

*v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*,

571 U.S. 177, 189 (2014) ( "the drafting of the initial pleadings and the work

associated with the development of the theory of the case" are the "most obvious

examples" of "services performed before a lawsuit is formally commenced"); *see*

*also McDonald*, 860 F.2d at 1462 ("Section 1988 does not limit fee awards to work

performed after the complaint is filed, but allows recovery of fees for time spent

beforehand investigating facts and researching the viability of potential claims.").

Nevertheless, in seeking a fee award, an attorney must exercise billing

judgment to reduce "excessive, redundant or otherwise unnecessary" hours from

the amount claimed. *Hensley*, 461 U.S. at 434. Plaintiffs' counsel have done that

here, eliminating time that was arguably inefficient or administrative in nature.

Marshall Decl. ¶ 26. The result is a 26-percent decrease in the lodestar requested,

a substantial reduction in the time actually spent on this litigation. *Id*.

The adjusted lodestar of Plaintiffs is admittedly large, but federal courts

routinely recognize that a high number of attorney hours are reasonable in "first

of their kind" cases such as this one. *See, e.g.*, *Ass'n for Retarded Citizens of N.*

*Dakota v. Olson*, 561 F. Supp. 495, 499-500 (D.N.D. 1982), *aff'd as modified*, 713

F.2d 1384 (8th Cir. 1983) (finding thousands of hours for pretrial work reasonable

where the case "was the first of its kind in North Dakota"); *Lightfoot v. Walker*,

13

619 F. Supp. 1481, 1487–88 (S.D. Ill. 1985), *aff'd*, 826 F.2d 516 (7th Cir. 1987)

(finding thousands of hours reasonable where "[t]he case was one of the first of

its kind in the country"). While based on a solid theoretical and factual

background, this was a first-of-its-kind case in many respects. *See* Bailey Decl.

¶¶ 17-20. Any expense beyond that in a more commonplace FDCPA case was

driven solely by the choices of Linebarger to engage in a business model that

flouts the law in new and unique ways. Competently building that solid

theoretical and factual background required sufficient time and hard work, for

which Plaintiffs' counsel should be compensated.

### 3.   Linebarger's track record of vigorously defending its purported legal immunity warranted the time spent working up this case.

"As the Eighth Circuit has noted, a party cannot litigate tenaciously and

then complain about the time necessary to overcome a vigorous defense." *Eagle

Fuels, LLC v. Perrin*, 2014 WL 12606146, at *3 (W.D. Mo. Sept. 25, 2014) (citing

*Weitz Co. v. MH Washington*, 631 F.3d 510, 530 (8th Cir. 2011)). Accordingly,

courts regularly consider the vigor of the defense when determining the number

of hours that were reasonable for plaintiffs to spend litigating. *See, e.g.*,

*Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 2014 WL 793544, at *3 (D. Neb.

Feb. 26, 2014) ("The defendants' vigorous defense of the suit made it necessary

for the plaintiffs to expend numerous hours in response."); *Humes*, 505 B.R. at

856 (same); *Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 958 (D. Minn. 2011) (same).

Plaintiffs' counsel had personal experience with Linebarger's conduct in Iowa that led them to believe it was very likely the firm would claim to be immune from liability under the FDCPA, the IDCPA, and Section 1983 based on a purported quasi-governmental status. *See* Kornya Decl. ¶ 15. In at least one past case with Iowa Legal Aid involving conduct similar to that at issue here, Linebarger argued the collection of court fines and fees was not covered by the FDCPA on the ground that fines and fees do not fall under the statutory definition of "debt" in 15 U.S.C. § 1692a(6). *Id*. Given these interactions, counsel expected Linebarger would take the same position in this lawsuit. *Id*. ¶ 16.

Linebarger has engaged in a "concede nothing, litigate everything attitude" in other cases involving issues comparable to those presented here. In *Guerra v. Linebarger Goggan Blair & Sampson, LLP*, No. 17-CV-20114-KMM (S.D. Fla.), for example, Linebarger faced suit under federal and state law relating to its government debt collection activities in Florida. Like here, the plaintiff alleged that Linebarger had violated her due process rights and was additionally liable for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). *Id.* at 5. Even though *Guerra* was not an FDCPA case and thus did not specifically

reference the same definitional thresholds for coverage under the Act, Linebarger argued that it was shielded by quasi-judicial immunity, that it was not a state actor for the purposes of the Section 1983 claim, and that its debt collection activities did not make it liable under the FDUTPA. *See* Kornya Decl., Ex. A at 8-11, 14-15, 18 (motion to dismiss). The case was ultimately dismissed on Linebarger's motion, although the decision turned on the substance of the underlying claims and not Linebarger's alleged immunity. *Id*., Ex. B (order issued).

The answer Linebarger filed in this case justified concerns that the firm would employ a similar attitude of untouchability here. Among other things, Linebarger categorically denied it was collecting "debt" within the meaning of the FDCPA or IDCPA. Dkt. No. 17 ¶¶ 119, 171. Linebarger similarly denied it was "acting under color of [state] law" for the purposes of liability under Section 1983. *See id.* ¶¶ 12, 21, 107. In other words, Plaintiffs' counsel were correct to expect that the novel claims in this lawsuit would be met with equally novel defenses. Accordingly, the substantial research, investigation, and drafting that went into Plaintiffs' complaint proved necessary.

### 4.    Plaintiffs' success justifies the requested fees.

"The most critical factor in assessing fees is the degree of success obtained." *Fish*, 295 F.3d at 852 (citing *Hensley*, 461 U.S. at 436). Where a case

has settled, the question becomes whether "the settlement agreement . . .

reflect[s] complete success on all claims." *Id.* 

*See, e.g.*, *Davis v. Fid. Info. Corp.*, 2018 WL 6171438, at

*2-3 (E.D. Mo., Nov. 26, 2018) (awarding $5,000 in actual damages and $500 in

statutory damages); *Aronson v. Alt. Collections LLC*, 2014 WL 4449695, at *3-4 (D.

Minn. Sept. 10, 2014) ($2,000 actual, $1,000 statutory); *Hull v. N.E. Leg. Group,

LLC*, 2013 WL 2403327, at *1 (D. Neb. May 31, 2013) ($500 actual, $1,000

statutory); *see also, e.g.*, *Magi v. United Merchant Asset Recovery of WNY, LLC*,

2021 WL 2269478, at *1 (W.D.N.Y. June, 2, 2021) ($3,106.64 actual, $1,000

statutory); *Jackson v. TeleRecovery*, 2021 WL 633212, at *1 (N.D. Ala. Feb. 18,

2021) ($1,000 actual, $0 statutory).

### 5.     Proportionality is not appropriate in assessing the reasonableness of fees.

Attorneys' fees "need not be proportionate to the amount of damages

recovered when Congress sets up [] statutory scheme[s], such as [these], that

provide[] for statutory damages and fee shifting." *Phenow*, 766 F. Supp. 2d at 959

(citing *Loggins v. Delo*, 999 F.2d 364, 368 (8th Cir. 1993) ("proportionality

between the amount of damages and fee awards was not required")). Indeed, the

U.S. Supreme Court has categorically "reject[ed] the proposition that fee awards

under § 1988 should necessarily be proportionate to the amount of damages a

civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574

(1986). Thus, in civil rights and consumer protection litigation alike, courts

correctly understand that proportionality should not figure into an assessment of

reasonable attorneys' fees. *See, e.g.*, *Cent. Pension Fund of the Int'l Union of*

*Operating Engineers & Participating Emps. v. Ray Haluch Gravel Co.*, 745 F.3d 1, 6

(1st Cir. 2014) ("[A] rigid proportionality rule would allow defendants to 'inflict[]

with impunity small losses on the people whom they wrong.'"); *Evon v. Law*

*Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ("requiring direct

proportionality for attorney's fees would discourage vigorous enforcement of the

consumer protection statutes"); *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489

(11th Cir. 1994) ("[proportionality] tends to diminish the public benefit"); *Garcia*

*v. Midland Credit Mgmt., Inc.*, 2015 WL 4911544, at *3 n.6 (D. Colo. Aug. 18,

2015) ("I do not believe [plaintiff's] limited monetary recovery undercuts her

success in vindicating the rights protected by the FDCPA."); *Riter v. Moss &*

*Bloomberg, Ltd.*, 2000 WL 1433867, at *2 (N.D. Ill. Sept. 26, 2000) ("The …

attorneys' fees requested need not be proportionate to the settlement … as that

would defeat the public benefit advanced by the litigation." (citing *Dunning v.*

*Simmons Airlines, Inc.*, 62 F.3d 863, 873, n. 13 (7th Cir.1995))).

Moreover, the IDCPA expressly states that a claimant's recovery is not to be

considered when determining the amount of attorneys' fees to award. *See* Iowa

Code § 537.5201(8).

Even if proportionality were germane to this Court's assessment of the

reasonableness of the requested attorneys' fees, the ratio between the fees

requested and ████████████████ is well within the normal range for awards

in FDCPA cases within this Circuit. For example, in *Schultz v. Sw. Credit Sys., LP*,

2018 WL 3398139, at *2 (N.D. Iowa July 12, 2018), the court considered

reasonable attorneys' fees in a combined FDCPA and IDCPA case and upheld a

reduced award of attorneys' fees that was 66.8 times greater than the damages

award. Here, ██████████████████████████████████████████

████████████████████████████ Of the four comparable cases discussed in

*Schultz* as points of comparison, ████████████████████ 2018 WL 3398139, at

*2 (noting fee-to-damages ratios of 40, 18.8, 17.3, and 5.3).

### 6. Plaintiffs' requested costs are reasonable.

Plaintiffs seek an award of $1,978.42 for costs incurred in the prosecution

of this matter. Those costs comprise (1) pro hac vice admission fees, (2) computer

research expenses, and (3) conference call expenses. Marshall Decl. ¶ 28; Bailey

Decl. ¶ 29. Each category is recoverable. *See Craftsmen Limousine, Inc. v. Ford*

*Motor Co.*, 579 F.3d 894, 898 (8th Cir. 2009); *In re UnitedHealth Grp. Inc. S'holder*

*Derivative Litig.*, 631 F.3d 913, 918-19 (8th Cir. 2011); *Erickson v. Credit Bureau*

*Servs., Inc.*, 2013 WL 672281 (D. Neb. Feb. 22, 2013). Accordingly, the Court

should grant Plaintiffs' request in full.

## IV.   CONCLUSION



Plaintiffs ████████ pursued novel claims against Linebarger, a company

that is not only one of the nation's largest collectors of government debt but also

among the most sophisticated and well-defended. ████████████████

████████████████ is due to the significant time and effort expended by their

counsel, work undertaken on a contingent basis. ████████████████████

████████████████████████████ the public interest

embodied in the FDCPA, the IDCPA, and Section 1983. Their good work is worthy

of compensation requested. Accordingly, Plaintiffs respectfully request an award

of $232,112.45 in attorneys' fees and $1,978.42 in costs.

RESPECTFULLY SUBMITTED AND DATED this 20th day of December, 2021.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Toby J. Marshall, *Admitted Pro Hac Vice*
Toby J. Marshall, *Admitted Pro Hac Vice*
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: tmarshall@terrellmarshall.com

Alexander Vincent Kornya, AT#0009810
IOWA LEGAL AID
1111 9th Street, Suite 230
Des Moines, Iowa 50310
Telephone: (515) 243-1193
Facsimile: (515) 244-4618
Email: akornya@iowalaw.org

Ericka Petersen, AT#0012347
IOWA LEGAL AID
1700 South 1st Avenue
Iowa City, Iowa 52240
Telephone: (319) 351-6570
Facsimile: (515) 244-4618
Email: epetersen@iowalaw.org

Leslie A. Bailey, *Admitted Pro Hac Vice*
John He, *Admitted Pro Hac Vice*
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, California 94612
Telephone: (510) 622-8203
Email: lbailey@publicjustice.net
Email: jhe@publicjustice.net

*Attorneys for Plaintiffs*

21

<u>CERTIFICATE OF SERVICE</u>

I, Toby J. Marshall, hereby certify that on December 20, 2021, I

electronically filed the foregoing with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to the following:

> Matthew D. Jacobson
> WHITFIELD & EDDY, PLC
> 699 Walnut Avenue, Suite 2000
> Des Moines, Iowa 50309
> Telephone: (515) 246-5531
> Facsimile: (515) 246-1474
> Email: jacobson@whitfieldlaw.com
>
> Nabil G. Foster, *Admitted Pro Hac Vice*
> BARRON & NEWBURGER PC
> 701 Main Street, Suite 6396
> Evanston Illinois 60204
> Telephone: (312) 767-5750
> Email: nfoster@bn-lawyers.com
>
> *Attorneys for Defendant*

DATED this 20th day of December, 2021.

> TERRELL MARSHALL LAW GROUP PLLC
>
> By:   /s/ Toby J. Marshall, *Admitted Pro Hac Vice*
>       Toby J. Marshall, *Admitted Pro Hac Vice*
>       936 North 34th Street, Suite 300
>       Seattle, Washington 98103
>       Telephone: (206) 816-6603
>       Facsimile: (206) 319-5450
>       Email: tmarshall@terrellmarshall.com
>
> *Attorneys for Plaintiffs*

22