UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| BROOKE CHAMPAGNE and MARICO THOMAS,<br><br>              Plaintiffs,<br><br>     v.<br><br>LINEBARGER GOGGAN BLAIR & SAMPSON, LLP,<br><br>              Defendant. | Case No. 4:20-cv-00275-SMR-SBJ<br><br><br>**DECLARATION OF ALEX KORNYA IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

I, Alexander Vincent Kornya, submit the following information under penalty of perjury in support of Plaintiffs' motion for attorneys' fees and costs:

1.      I am the Litigation Director and General Counsel at Iowa Legal Aid. I respectfully submit this declaration in support of Plaintiffs' request for an award of attorneys' fees and costs. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration.

2.      I received a B.A., from Indiana University, Bloomington in 2002. I received a J.D. in 2008 from the Indiana University School of Law, Bloomington, where I was awarded the Terry & Judy Albright Excellence in Pro Bono Award in May 2008. Since August 2008, I have been a member in good standing of the bar of the state of Iowa.

3.      Founded in 1977, Iowa Legal Aid is a statewide not-for-profit law firm providing free civil legal services to all 99 counties of Iowa. Since January 1, 2015, Iowa legal Aid has closed 105,812 cases at various levels of service, from advice to full representation and appellate advocacy. 12,171 of these cases primarily involved consumer protection and debt collection, and over 2,500 of these cases involved either court debt or other collateral consequences of criminal justice involvement.

4.      I have been employed at Iowa Legal Aid for the entirety of my legal career, which is just over thirteen years. I began in August 2008 as a staff attorney in the Northeast Regional Office of Iowa Legal Aid, centered in Dubuque. In July 2013, I transferred to the Central Iowa Regional Office in Des Moines and was promoted to Senior Staff Attorney with a primary focus on consumer protection and, in particular, advocating for people who owe court debt. During my time as a staff attorney, I closed approximately 2,500 cases. In September 2014, I became Assistant Litigation Director, sharing statewide responsibility with my supervisor Christine Luzzie for litigation support, supervision of attorneys, and leading the program's major cases and appellate work. In April 2019, I was promoted to Litigation Director and General Counsel. My current duties are numerous but at their core, they involve supervising and supporting the legal work of roughly 65 to

70 attorneys across Iowa and either directly litigating or supervising all major cases and appellate advocacy conducted by Iowa Legal Aid.

5.     I and the other attorneys in my firm practice throughout the state of Iowa and have appeared in all 99 counties of the state as well as federal district courts for both the Northern District and Southern District of Iowa, many federal and state administrative agencies, and United States Tax Court.

6.     I have briefed and argued cases before the Iowa Supreme Court, the Iowa Court of Appeals, and the Eighth Circuit Court of Appeals. In my career, I have either supervised or been lead counsel for thirty such appeals. In coordination with the UCLA Supreme Court Clinic, I was also involved in a certiorari petition submitted to the United States Supreme Court in *State v. Doe*, a 2019 case that centered on whether denial of expungement to people who owed indigent defense reimbursement to the state violated the Equal Protection Clause of the United States Constitution.

7.     My history advocating for people who owe court debt began in 2009, when I filed several challenges to administrative garnishment procedures used by the Iowa Department of Revenue to collect unpaid court debt. We were successful not only in reversing garnishments against our clients but also achieving meaningful and systemic changes in the procedure of those hearings as

well as achieving recognition that debtor's exemptions apply at least to some degree in garnishments for court debt.

8.    Over the past twelve years, I have worked in many other respects on issues related to court debt and the intersection of court debt and consumer protection advocacy. For example, I founded the Iowa Legal Aid Race Equity Project in 2017, which has since served over 2,000 Iowans with issues related to expungement, court debt, and licensure issues. I also designed technology and systems to maximize the accuracy and volume of this practice, including a semi-automated process that takes information directly from Iowa court records and builds profiles for individual clients that allow our staff and volunteer attorneys to assess avenues for relief for court debt and record clearance.

9.    From 2018 to 2020, I served as a consultant to the Iowa Judicial Branch court debt rule committee alongside Sharon Brett of the Harvard Criminal Justice Policy Program. I later testified in legislative hearings in 2019 about the challenges faced by Iowans who owe court debt. In 2020 and 2021, I contributed to the drafting new court rules to carry out criminal records expungements. I have participated in rulemakings with both Iowa administrative agencies and the Iowa Judicial Branch related to court debt and in doing so, I regularly provide analysis of systemic issues inherent in the way Iowa both assesses and collects this debt.

10.     I also litigate cases in the area of consumer protection not involving

court debt. For example, I was lead counsel in a recent case, *LAB Investments Inc.*

*v. Red Barron Holdings, LLC* (2018 – 2020), where Iowa Legal Aid secured

approximately $170,000 on behalf of two homeowners who were the victim of an

equity stripping foreclosure reconveyance scheme. Over this same period, I

closely supervised approximately twenty other consumer protection cases

prosecuted by other Iowa Legal Aid staff.

11.     I am the primary author of multiple publications that directly deal

with the issues in this case—that is, the intersection of court debt collection and

consumer protection and application of federal and state debt collection

regulation to private companies that collect court debt. The two most relevant

publications include:

a.  *Confronting Criminal Justice Debt: A Guide for Litigation* (September
    2016), a treatise for litigating court debt issues and a joint publication
    of the National Consumer Law Center and the Harvard Criminal
    Justice Policy Program.

b.  *Crimsumerism: Combatting Consumer Abuses in the Criminal Legal
    System* (2019), Harvard Civil Rights Civil Liberties Law Review.

12.     I have made formal presentations at conferences on issues related to

collection of court debt on many occasions, including events held by the Des

Moines Human Rights Commission, Shriver Center, Iowa State Bar Association,

Iowa Judicial Branch, National Legal Aid and Defender Association, League of Women Voters, Committee on Regional Training, and the National Consumer Law Center.

13.     I am active in several professional organizations, including the Iowa State Bar Association, the Iowa Association for Justice, and the National Association of Consumer Advocates. I am currently on the bail reform committee of the ISBA, and I received the Rolland Grefe Award for Pro Bono Service from the ISBA in July 2021.

14.     My colleague, Ericka Petersen, is our Assistant Litigation Director, a position that she has held since May 2020. Ericka received her J.D. from University of California, Berkeley, in 2013. Prior to becoming Assistant Litigation Director, Ericka was a teaching fellow at Georgetown University for two years, working primarily on issues related to housing and public health. Prior to that time, she was a staff attorney in Iowa Legal Aid's Cedar Rapids regional office, litigating a wide variety of cases in a general civil legal aid docket. Ericka's current duties include sharing staffing of major cases and appeals as well as providing support and supervision to the legal work of Iowa Legal Aid attorneys across the state.

15.     This was not the first time Iowa Legal Aid has handled a case involving the Defendant, Linebarger Goggan Blair & Sampson LLP. Over the years,

the extensive work we have done for Iowans who owe court debt brought us into

varying degrees of contact with Linebarger and led us to be familiar with its

practices and positions. On at least one occasion, when we alleged very similar

conduct on behalf of a different client, Linebarger responded by telling us that

they were not covered by the FDCPA because court debt did not meet the

statutory definition of "debt" under that Act.

16.     Attached to this declaration as Exhibit A is a motion to dismiss that

Linebarger filed in *Guerra v. Linebarger Goggan Blair & Sampson, LLP*, Case No.

1:17-cv-20114-KMM (S.D. Fla. 2017). Attached to this declaration as Exhibit B is

the order the court entered in *Guerra* on Linebarger's motion to dismiss. I

obtained these documents through PACER.

17.     The claims at issue in this case were novel, and we expected

Linebarger would seek dismissal under Rule 12(b)(6). Accordingly, we laid out the

underlying facts and legal positions in detail. The resulting document was 63

pages in length and included 30 exhibits. *See* Dkt. Nos. 1 through 1-31. The robust

nature of Plaintiff's complaint likely forestalled a dispositive motion from

Linebarger.

18.     As the case progressed, we worked on initial disclosures and

discovery requests to Linebarger; continued our investigation and factual

background development; kept our clients abreast of developments; and

prepared for and participated in mediation and several subsequent settlement

conferences.

19.     The FDCPA and IDCPA provide for minimum statutory damages of

$100 to $1,000. However, the nature of this case justified, at least in my opinion,

significant actual damages in the form of emotional damages and mental anguish.

The threats of incarceration and license revocation, in particular, had a profound

impact on both of our clients. This was especially true given the relationship that

Linebarger appeared to have with the State itself. Also, given that both Plaintiffs

had spent a good deal of time and invested a lot of energy trying to build

themselves back up from the situations they had been in when they were

involved with the criminal justice system, the idea that somehow that hard-won

progress would be undone was frankly devastating to both of them.

20.     My colleagues and I have reviewed the billing records and reduced or

eliminated time where necessary. For example, we have eliminated time that was

arguably administrative in nature and made reductions to time that arguably

could have been spent more efficiently. The remaining time was reasonably and

necessarily expended to secure the rights of Plaintiffs.

21.     Iowa Legal Aid is a private non-profit law firm and is largely funded at taxpayer expense. Ever since 2010, we have been allowed under the federal LSC Act and associated regulations to collect attorneys' fees in fee-shifting cases. As stewards of public funds, we believe it would be unfair to the taxpayer if we failed to recover reasonable fees for the services we provide, especially for work done to benefit low-income people who rely on civil legal aid for representation. All attorneys' fees earned by Iowa Legal Aid attorneys are conveyed in their entirety to the organization and do not go to the individual advocates involved. All fees ultimately go to fund the legal services we provide every day to vulnerable Iowans.

22.     The lodestar calculations of Plaintiffs' counsel are based on reasonable hourly rates. Iowa Legal Aid sets the rates for attorneys and staff based on a variety of factors, including among others: the experience, skill and sophistication required for the types of legal services typically performed; the rates customarily charged in the markets where legal services are typically performed; the novelty of the claim involved; and the experience, reputation and ability of the attorneys and staff. The rates sought in this case are below the market for comparable legal work in Iowa.

23.     The following table identifies the attorneys from Iowa Legal Aid who worked on this case and for whom the recovery of fees is sought. For each of the timekeepers, I have stated the hourly rate billed to the case, the number of hours worked through December 14, 2021 (after reductions or eliminations), and the total amount of fees.

| Professional | Role | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Alex Kornya | Litigation Director | $300 | 94.3 | $28,290.00 |
| Ericka Petersen | Assistant Litigation Director | $225 | 5.4 | $1,215.00 |
| **TOTALS** | | | **99.7** | **$29,505.00** |

24.     Iowa Legal Aid did not incur any costs in relation to this matter for which it is seeking recovery.

I declare under penalty of perjury under the laws of Iowa and the United States of America that the foregoing is true and correct.

EXECUTED this 20th day of December, 2021 at Des Moines, Iowa.

By:  /s/ Alex Kornya
     Alex Kornya

CERTIFICATE OF SERVICE

I, Toby J. Marshall, hereby certify that on December 20, 2021, I

electronically filed the foregoing with the Clerk of the Court using the CM/ECF

system which will send notification of such filing to the following:

> Matthew D. Jacobson
> Peter J. Chalik
> WHITFIELD & EDDY, PLC
> 699 Walnut Avenue, Suite 2000
> Des Moines, Iowa 50309
> Telephone: (515) 246-5531
> Facsimile: (515) 246-1474
> Email: jacobson@whitfieldlaw.com
> Email: chalik@whitfieldlaw.com
>
> Nabil G. Foster, *Admitted Pro Hac Vice*
> BARRON & NEWBURGER PC
> 701 Main Street, Suite 6396
> Evanston Illinois 60204
> Telephone: (312) 767-5750
> Email: nfoster@bn-lawyers.com
>
> *Attorneys for Defendant*

DATED this 20th day of December, 2021.

By: _   /s/ Toby J. Marshall, *Admitted Pro Hac Vice*_
Toby J. Marshall, *Admitted Pro Hac Vice*

- Exhibit A -

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:17-cv-20114-KMM

NATACHA GUERRA, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP, a Texas limited
liability partnership, and HARVEY
RUVIN, in his capacity as Clerk of the
Courts of Miami-Dade County, Florida

      Defendants.

_____/

### DEFENDANT, LINEBARGER GOGGAN BLAIR & SAMPSON, LLP'S MOTION TO DISMISS CLASS ACTION COMPLAINT WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Defendant, Linebarger Goggan Blair & Sampson, LLP ("Linebarger), through the undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, including Rules 8(a) and 12(b)(6), files this motion seeking to dismiss the Class Action Complaint (the "Complaint") (ECF No. 1), filed by Plaintiff Natacha Guerra ("Plaintiff"), individually and purportedly on behalf of all others similarly situated, and states as follows:

### EXECUTIVE SUMMARY

On November 13, 2015, a Miami-Dade county police officer ticketed Plaintiff for driving 90 miles per hour in a 55 mile per hour zone. At the time Plaintiff was given the ticket for driving at such dangerous speeds, the officer provided Plaintiff a traffic citation pamphlet which stated, in pertinent portion, "**WARNING NOTICE. Pursuant to F.S. 28.646(6), any fine and costs that remains unpaid in excess of 90 days may be referred to a collection agency, and**

1110160v.1

**an additional 40% charge will be added to the amount owed**" (emphasis added).  A copy of the ticket issued to Plaintiff and the pamphlet are attached hereto as Composite Exhibit "A."  The actual ticket indicates, in the officer's own handwriting, that Plaintiff received the pamphlet.  Because of the speeds Plaintiff was traveling, she was not permitted to pay the ticket and be done with it; rather, she was required to appear for a hearing on the violation.

On December 21, 2015, Attorney Brett Luskin, *who is also one of Plaintiff's many attorneys in the instant matter*, represented Plaintiff at her traffic hearing.  Hearing Officer Norman Powell found Plaintiff guilty of violating a state speed zone and imposed a fine totaling $392.00 against her.  Mr. Luskin requested a stay until January 20, 2016 for Plaintiff to pay the fine, which was granted.

Despite the additional time provided to her, Plaintiff still failed to timely pay the fine, resulting in the suspension of her privilege to drive and she was assessed an additional $16.00 penalty, for a total fine of $408.00.  On April 19, 2017, when Plaintiff's obligation. to Miami-Dade County, FL was 90 days old, Plaintiff was assessed the additional collection charge of $163.20 as set out in Fla. Stat. § 28.246 and collection of the fine Plaintiff repeatedly failed to pay was referred to collections.  Thereafter, on the afternoon of April 19, 2016 and after this matter had already been referred to collections, Plaintiff paid the $571.20 she ultimately owed due to her decisions to drive at dangerous speeds and then to not timely pay the fines imposed upon her for her actions.

After driving 35 miles over the posted speed limit, receipt of information from a police officer explaining the imposition of an additional 40% charge if she failed to pay her fine 90 days after it came due, adjudication of her guilt for the traffic offense, her attorney obtaining her an additional 30 days to pay her original fine and her decision to not pay the fees and charges she

has been assessed until 90 days after the extension her counsel obtained for her ran, Plaintiff seeks to challenge the $163.20 collection fee she was assessed pursuant to § 28.246(6) as well as Linebarger's and Co-Defendant Harvey Ruvin's (the "Clerk's") right to collect this fee from her pursuant to statute.

Plaintiff's claims are untenable and should be rejected by the Court, dismissing Plaintiff's Complaint with prejudice.

## BACKGROUND

The Florida Legislature enacted Fla. Stat. § 28.246 to regulate, amongst other things, how Florida's Clerks of Court collect penalties, fees, charges and costs. Paragraph 6 of said statute directs the local clerks to "pursue the collection of any fees, service charges, fines[ and]court costs . . . which remain unpaid after 90 days by referring the account to a private attorney who is a member in good standing of The Florida Bar or collection agent who is registered and in good standing pursuant to chapter 559." It further provides, "The collection fee, including any reasonable attorney's fee, paid to any attorney or collection agent retained by the clerk may be added to the balance owed in an amount not to exceed 40 percent of the amount owed at the time the account is referred to the attorney or agent for collection." *Id.* Courts in the Eleventh Circuit and this District consistently emphasize the importance of looking to a statute's plain language for its meaning. *See Young v. W. Pub. Corp.*, 724 F. Supp. 2d 1268, 1278 (S.D. Fla. 2010) (stating that a court must first look to the language of the statute to give effect to the unambiguously expressed intent). As such, the Court should not look beyond the plan language of Fla. Stat. § 28.246 or at Plaintiff's self-serving misinterpretation of the statute. Additionally, "[s]tatutes are presumed to be valid and not unconstitutional. Courts are required to concede every presumption in favor of the validity of a statute. One who challenges the constitutionality

3

of a statute has the burden of demonstrating its invalidity." *Natural Parents of J.B. v. Fla. Dep't of Children & Family Servs.*, 780 So. 2d 6, 8, 2001 Fla. LEXIS 333, *5, 26 Fla. L. Weekly S 86 (Fla. 2001). "Federalism suggests that federal court intervention in state judicial processes be appropriately confined." *Lemon v. Kurtzman*, 411 U.S. 192, 208, 93 S. Ct. 1463, 1473, 36 L. Ed. 2d 151, 166, 1973 U.S. LEXIS 85, *27 (U.S. Apr. 2, 1973).

Linebarger is a law firm that focuses its practice on the collection of receivables owed to local governments. Co-Defendant Harvey Ruvin is the Clerk of Courts for Miami-Dade County, Florida; in his capacity as the Clerk, he entered into an agreement with Linebarger, on behalf of Miami-Dade County, under which Linebarger provides collection services for the Clerk, pursuant to Fla. Stat. § 28.246(6). The Clerk is required to utilize an outside vendor, like Linebarger, to perform these services and, by statute may not perform these services, itself. Fla. Stat. § 28.246.

Plaintiff filed her eight count[1] Complaint against Defendants and purportedly on behalf of others similarly situated. *See* Complaint (ECF 1), ¶ 1. Plaintiff alleges that Defendants, *though acting entirely consistent with Fla. Stat. § 28.246*, "have unjustly collected millions of dollars . . . in the form of unearned 'collections fees.'" *Id.* It appears Plaintiff is woefully uninformed as to the nature of the work performed by Linebarger, on behalf of the Clerk, when she makes patently incorrect statements that the fees incurred by people, such as Plaintiff, who are ticketed for various driving infractions and then fail to timely pay their fine(s), are somehow "unearned" by Linebarger. *Id.* Plaintiff's fiction that Linebarger must perform some undefined degree of work, in addition to meeting the statutory requirements necessary to seek such a contract, make all necessary preparations to undertake the obligations of such a contract with the Clerk, and then

---

[1] Plaintiff's eighth count, Unlawful Exaction, appears to be directed only at the Clerk, not Linebarger.

4

actually timely perform under the contract, in order to collect the statutorily authorized collection fee is unsupported by Fla. Stat. § 28.246 and the agreement between these defendants, which she attached to her Complaint. Plaintiff points to no authority in support of her contention that the contract between these Defendants supersedes or alters the plain language of Fla. Stat. § 28.246, likely because no such authority exists.

Ultimately, the claims asserted in Plaintiff's suit are inconsistent with controlling law and, therefore, must be dismissed.

## MEMORANDUM OF LAW

### I. Applicable Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To warrant dismissal of a complaint under Rule 12(b)(6), the movant must demonstrate to the Court that it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege sufficient facts "'to raise a right to relief above the speculative level.'" *Wood v. Briarwinds Condo. Assoc. Bd. Of Directors,* 2010 U.S. App. LEXIS 4450, *2 (11th Cir. March 3, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The pleading must contain enough factual matter to suggest the required element. *Kamel v. Kenco/The Oaks at Boca Raton LP*, 321

Fed. Appx. 807 (11th Cir. 2008) (quoting *Bell Atl. Corp.*). Plaintiffs must plead more than "labels and conclusions" and "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Zoher v. Chase Home Fin.*, 2010 WL 4064798, at *1 (S.D. Fla. Oct. 15, 2010) ("[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal.").

"Regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law." *Supreme Fuels Trading FZE v. Sargeant*, 2009 U.S. Dist. LEXIS 118142, *8 (S.D. Fla. Dec. 18, 2009) (citing *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)); *see also Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1205 (M.D. Fla. 2002). This is the case presently before the Court. When it appears, beyond any doubt that the plaintiff, cannot prove facts in support of his claim which would entitle him to relief, the complaint should be dismissed for failing to state a claim upon which relief can be granted. *M/V Sea Lion v. v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994).

Here, Plaintiff's suit fails, as a matter of law, because her allegations, as pled against Defendants, fail to state claims upon which the Court may grant any relief. Specifically, Plaintiff cannot maintain the instant action against Defendants as the doctrine of quasi-judicial immunity shields the Clerk from both liability and from suit. Linebarger, by virtue of its relationship to the Clerk, should be equally afforded the same immunity as serving as the Clerk's collections arm pursuant to Fla. Stat. § 28.246. Individually, each of the causes of the action found in Plaintiff's Complaint fails, as a matter of law, regardless of the immunity arguments, and should be dismissed with prejudice.

6

## II. Argument

### A. The Clerk is shielded by quasi-judicial immunity.[2]

"[J]udicial immunity 'insures that judges are immune from liability for damages for acts committed within their judicial jurisdiction [and] is essential to the preservation of an independent judiciary.'" *Fong v. Forman*, 105 So. 3d 650, 652 (Fla. 4th DCA 2013) (quoting *Berry v. State*, 400 So. 2d 80, 82-83 (Fla. 4th DCA 1981)). "This doctrine has been extended to quasi-judicial officials, such as a clerk of court, performing judicial acts." *Id.* (citations omitted). "Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process." *Jenkins v. Clerk of Court, U.S. Dist. Court, Southern Dist. of Fla.*, 150 Fed.App'x 988, 990 (11th Cir. 2005). According to the Florida Supreme Court "**clerks of the circuit courts**, when acting under the authority of their article V [of the Florida Constitution] powers concerning judicial records and other matters relating to the administrative operation of the courts, **are an arm of the judicial branch** . . ." *Times Publishing Co. v. Ake,* 660 So. 2d 255, 257 (Fla. 1995) (emphasis added) *aff'g* 660 So. 2d 255 (Fla. 2d DCA 1995); *see also Nation v. Nation*, 404 So. 2d 394, 395 (Fla. 5th DCA 1981) ("In all matters in which the court clerk acts as such clerk, he acts on behalf of the court . . ."). Thus, a judicial officer in Florida, such as the Clerk, is immune from civil liability so long as he acts within the scope of his jurisdiction, even though his decisions may be wholly erroneous. *See Times Publishing Co. v. Ake,* 660 So. 2d at 257; *McDaniel v. Harrell*, 81 Fla. 66, 87 So. 631 (1921); *Mueller*, 390 So. 2d at 451; *Waters v. Ray*, 167 So. 2d 326 (Fla. 1st DCA 1964). "Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process." *Id.*; *see also Scott v. Dixon*, 720 F.2d 1542, 1545 (11th Cir. 1983) (clerk of court has absolute immunity when performing discretionary functions).

---

[2] Linebarger adopts the arguments asserted by the Clerk in support of his motion seeking to be dismissed from the instant action pursuant to the doctrine of quasi-judicial immunity, as well as any other grounds asserted by the Clerk that are equally applicable to Linebarger.

Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process, such as fines and fees imposed by the county courts. *Id.*

There is no legitimate challenge to the Clerk being immune from this suit by virtue of the doctrine of quasi-judicial immunity. Contrary to Plaintiff's erroneous and self-serving arguments, the applicable test is whether the ruling in question is a "judicial act" and whether the clerk has jurisdiction to issue the ruling. *Compare Complaint* (ECF 1), ¶ 14 *with Zoba v. City of Coral Springs*, 189 So.3d 888 (Fla. Dist. Ct. App. 4th Dist., 2016); *see also McDaniel v. Harrell*, 81 Fla. 66, 87 So.631 (19321). Here, both are answered in the affirmative. "Nonjudicial officials have absolute immunity for their duties that are integrally related to the judicial process. Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process." *Jenkins v. Clerk of Court, U.S. Dist. Court, S. Dist. of Fla.*, 150 F. App'x 988, 990 (11th Cir. 2005) (*citing Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994)).

The Clerk's actions at issue, here, namely the collection of the fine Plaintiff owed and assessing the statutorily mandated charge following her late, were all carried out in his capacity as a judicial officer. As such, Plaintiff has no true challenge to the Clerk's entitlement to quasi-judicial immunity.

**B. Linebarger, acting on behalf of the Clerk, is similarly shielded by the quasi-judicial immunity afforded to the Clerk.**

Absolute quasi-judicial immunity for non-judicial officials is determined by a functional analysis of their actions in relation to the judicial process." *Jenkins v. Clerk of Court, U.S. Dist. Court, S. Dist. of Fla.,* 150 Fed.App'x 988, 990 (11th Cir.2005) (citing *Roland v. Phillips,* 19 F.3d 552, 555 (11th Cir.1994)); *Zoba v. City of Coral Springs*, 189 So. 3d 888, 891 (Fla. 4th

8

DCA 2016). Immunity "is justified and defined by the *functions* it protects and serves, <u>not by</u> <u>the person to whom it attaches</u>" (emphasis added). *Andrews v. Florida Parole Com'n,* 768 So. 2d 1257, 1263 (Fla. 1st DCA 2000) *citing Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (superseded by statute). Thus, the immunity that is afforded to a judge extends to a person who acts as an arm of the court by performing a task that is essential to the judicial process. *Id.* The collections services provided by Linebarger, on behalf of the Clerk, are absolutely integral to the judicial process.

Accordingly, just as the Clerk is protected from the instant litigation by virtue of quasi-judicial immunity, Linebarger, acting as the Clerk's debt collector consistent with Fla. Stat. § 28.246, should be similarly protected by the same immunity. Plaintiff even acknowledges this relationship in paragraph 66 of the Complaint when she alleges, "Pursuant to statute, . . . Defendants are operating under the authority of Miami-Dade County when they collect [the] 40% collection fee or penalty." Linebarger's contract with the Clerk to provide collection services, pursuant to Fla. Stat. § 28.246(6), places it in the role that would otherwise be filled by Miami-Dade County employees, if the Clerk was permitted to use its own employees for its collections efforts. *Id.* ("A clerk of court shall pursue the collection of any fees, service charges, fines, court costs, and liens . . . which remain unpaid after 90 days by referring the account to a private attorney who is a member in good standing of The Florida Bar or collection agent who is registered and in good standing pursuant to chapter 559."). The Clerk, though, is not permitted to handle such matters internally and is, instead, required to utilize the services of an outside vendor, such as Linebarger. But for this statutory requirement that makes the Clerk utilize the services of an outside vendor, there would be no question that a Miami-Dade County employee

9

carrying out the Clerk's collection duties pursuant to Fla. Stat. § 28.246 would be entitled to quasi-judicial immunity.

The distinction of who issues the paychecks of the people carrying out the collection efforts on behalf of the Clerk should be viewed as a distinction without a difference for claiming the same immunity. The weight of authority, both in Florida and across the rest of the county, supports this extension of immunity to a vendor, such as Linebarger, when acting on behalf of a quasi-judicial entity, like the Clerk.

For example, the Florida Bar is not a government entity but, rather, a voluntary organization serving the judiciary; its agents have been afforded immunity from liability for defamation or malicious prosecution by virtue of an absolute privilege. *Mueller v. Fla. Bar*, 390 So. 2d 449, 1980 Fla. App. LEXIS 17623 (Fla. Dist. Ct. App. 4th Dist. 1980). There, Florida's Fourth District Court of Appeals held that, "The rule of prosecutorial immunity insulates The Florida Bar [even though not truly prosecutors] and its agents from liability for malicious prosecution in an action brought against them by a member of the bar against whom a grievance has been filed, regardless of the motive for that filing and without regard to whether or not there was probable cause for such filing." *Id.* at 452-53.

Furthermore, Courts have routinely granted immunity to private citizens who act within the scope of their duties to perform a task essential to the judicial process. *Montejo v. Martin Mem'l Med Ctr., Inc., 935 So.2d 1266* (Fla. 4th DCA 2006) (immunity was denied to the defendant hospital because it was not executing an order of the court but instead was carrying out a purely private right, as opposed to the instant case in which Linebarger's right to engage in collections actions on behalf of the Clerk is completely contingent upon the contract with the Court pursuant to Fla. Stat. § 28.246); *Boczar v. Glendening,* 555 So.2d 1286 (Fla. 2d DCA

10

1990) (noting that a physician enjoyed judicial immunity from a claim of medical negligence in examining a child victim because the examination was made in the course of a judicial proceeding); *Zock v. Miller,* 505 So.2d 18 (Fla. 3d DCA 1987) (holding that a court-appointed psychiatrist enjoys quasi-judicial immunity); *see also Filarsky v. Delia*, 566 U.S. 377, 393–94 (2012) (finding that a private individual retained by the government to carry out its work is entitled to seek qualified immunity from suit under 42 U.S.C. 1983) *and Coverdell v. Dep't of Social & Health Servs., Wash.,* 834 F.2d 758, 765 (9th Cir.1987) (finding child protective services worker who took custody of child pursuant to court order, but without requisite notice to parent or her attorney, was immune from suit). Linebarger should therefore be afforded immunity from suit and from damages.

### C. If the Court does not dismiss Plaintiff's Complaint, in its entirety, certain causes of action advanced by Plaintiff should still be dismissed.[3]

The overwhelming authority supports the dismissal of Plaintiff's Complaint, with prejudice, as Defendants are both entitled to quasi-judicial immunity and no amendment by Plaintiff will result in an action Plaintiff can maintain against them. If the Court is not inclined to extend this immunity to Linebarger at this time, though, Plaintiff's Complaint should still be dismissed as each cause of action, therein, is inconsistent with controlling law.

### i. Plaintiff's unjust enrichment and monies had and received counts fail, on their merits.

Count I of Plaintiff's Complaint seeks to recover from Defendants under a common law theory of unjust enrichment while Count II alleges a cause of action for monies had and received, another common law claim. Both counts stem from Plaintiff's mistaken belief that Defendants are not allowed to receive a collection fee pursuant to Fla. Stat. § 28.246. These two counts have

---

[3] Linebarger adopts the Clerk's arguments, found in its motion seeking to dismiss Plaintiff's Complaint, to the extent said argument are applicable to Lineebarger, too.

no true difference and, more importantly, Plaintiff's basis for seeking the same is legally insufficient, necessitating the dismissal of both. *Hucke v. Kubra Data Transfer, Ltd.*, 160 F.Supp.3d 1320, 1329 n.1 (S.D. Fla. 2015) ("unjust enrichment and money had and received are different names for the same theory of restitution-based equitable relief.").

It order to properly plead these common law claims, a plaintiff must allege that there was a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1242 n. 4 (Fla. 2004) (internal quotations omitted)); *see also State Farm Fire & Casualty Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013) (action for unjust enrichment is appropriate when an entity "accepts and retains benefits that it is not legally entitled to receive in the first place"); *Moore Handley, Inc. v. Major Realty Corp*., 340 So.2d 1238 (Fla. 4th DCA 1976) (explaining that an action for money had and received is appropriate "whenever one has money in his hands belonging to another, which in equity and good conscience, he ought to pay over to that other").

Plaintiff seems to argue Defendants Fla. Stat. § 28.246 is unconstitutional because Defendants received the collection fee without Linebarger undertaking what Plaintiff and her counsel consider to be sufficient collections efforts, therefore entitling her to restitution under the common law actions enumerated in Counts I and II of her Complaint. Plaintiff's theory of liability is flawed because common law claims are not viable when the law permits an entity to retain statutorily authorized fees or fines. *Standifer v. Metropolitan Dade County*, 519 So. 2d 53 (Fla. 3d DCA 1988) (finding plaintiff had no unjust enrichment claim against defendant for fees and expenses authorized by statute). Defendants retained the collection fee specifically

authorized by Fla. Stat. § 28.246 and, on this basis alone, Ms. Guerra's common law claims fail as a matter of law.  *See also Natural Parents of J.B.*, 780 So. 2d at 8, 2001 Fla. LEXIS 333, *5, 26 Fla. L. Weekly S 86 (Fla. 2001).

Plaintiff's common law causes of action further fail because, "[i]n Florida, common law claims cannot be based on violations of a statute where that statute itself does not create a private right of action." *Fuller v. Mortgage Electronic Registration Sys, Inc.*, 888 F.Supp.2d 1257 (M.D. Fla. 2012); *Hucke v. Kubra Data Transfer, Ltd.*, 160 F.Supp.3d 1320, 1324 (S.D. Fla. 2015). The entirety of Plaintiff's action is contingent on Defendants' conduct pursuant to Fla. Stat. § 28.246, which Defendants were entitled to rely upon *Natural Parents of J.B.*, 780 So. 2d at 8, 2001 Fla. LEXIS 333, *5, 26 Fla. L. Weekly S 86 (Fla. 2001).  The Florida Supreme Court has explained that "[w]hether a violation of a statute can serve as the basis for a private cause of action is a question of legislative intent" and courts "must determine legislative intent from the plain meaning of the statute." *Aramark Unif. & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 23 (Fla. 2004).  There is no language within Fla. Stat. § 28.246 that suggests any legislative intent to provide individuals with a cause of action for alleged violations of the statute.  In fact, the purpose of the statute is merely to provide authority to the Clerk to accept and distribute fees, service charges, and fines, and then to retain an outside vendor, like Linebarger, to collect debts that remain unpaid after 90 days.  Again, Plaintiff cannot maintain Counts I and II of her Complaint against either Defendant, as a matter of law, necessitating the dismissal of both, with prejudice.

ii.     Plaintiff's 1983 Claims fail as a matter of law.

Plaintiff alleges multiple violations of 42 U.S.C. § 1983; specifically Count III claims Defendants violated her 8th Amendment rights under the United States Constitution and Article I,

13

Section 17 of the Florida Constitution, Count IV purports that Defendants violated her Procedural Due Process rights under the United States Constitution and Article I, Section 9 of the Florida Constitution and Count V argues that Defendants violated her Substantive Due Process rights. Collectively, these three counts may be referred to as Plaintiff's "1983 Claims." "To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law." *Alston v. Pepper*, 2013 U.S. Dist. LEXIS 159353, 989 F. Supp. 2d 372, 2013 WL 5956226 (D. Del. 2013). "A party may be a state actor because he is a state official, he acted together with or has obtained significant aid from state officials, or his conduct is otherwise chargeable to the state." *Barnard v. Young*, 720 F.2d 1188, 1189, 1983 U.S. App. LEXIS 15282, *4 (10th Cir. Okla. 1983) (citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S. Ct. at 2754 (1982)). "To be liable under § 1983, however, a private defendant must invoke a state procedure that is itself unconstitutional, with significant aid from state officials." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 792 F. Supp. 393, 395, 1992 U.S. Dist. LEXIS 6548, *6 (E.D. Pa. 1992).

Plaintiff's allegations, though filled with faux gravitas, are ultimately hollow, at odds with controlling law and should be dismissed. Should the Court not accept Linebarger's argument that it is shielded from both this suit and damages by the doctrine of quasi-judicial immunity, then Linebarger should be treated like any other law firm representing a client, in this case the Clerk, in a debt collection matter. "Private attorneys . . . are generally not considered state actors for § 1983 purposes when acting in their capacities as attorneys." *Catanzaro v. Collins*, 2010 U.S. Dist. LEXIS 41284, *24, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010). "[T]he Courts of Appeals are agreed that a lawyer representing a client is not, by virtue of being

14

an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318, 102 S. Ct. 445, 450, 70 L. Ed. 2d 509, 516, 1981 U.S. LEXIS 136, *12 (U.S. 1981).

Plaintiff's Complaint is devoid of any accusation that Defendants had any role in enacting or implementing Fla. Stat. § 28.246; furthermore, the 40% charge allowed under the statute attaches at the time Linebarger is referred the matter by the Clerk, removing any ability Linebarger and the Clerk would theoretically have to "conspire to comply" with the statute. Plaintiff's 1983 Claims fail to allege any way by which Linebarger, with significant aid from state officials, invoked an unconstitutional statute. To the contrary, Plaintiff's Complaint suggests that her grievance is not with the statute but, rather, simply with Defendants' compliance with the statute in carrying out collections efforts it specifically authorizes, a fatally flawed position. The United States Supreme Court has previously held, "[S]tate officials and those with whom they deal [such as Linebarger] are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." *Lemon v. Kurtzman*, 411 U.S. 192, 209, 93 S. Ct. 1463, 1473, 36 L. Ed. 2d 151, 166, 1973 U.S. LEXIS 85, *27 (U.S. Apr. 2, 1973).

Count III of the Complaint is uniquely flawed in its claim that Defendants violated Plaintiff's Eighth Amendment rights. "A payment is remedial, not punitive, if it compensates the government for a loss and therefore is not subject to the Excessive Fines Clause." *State v. Jones*, 180 So. 3d 1085, 1088 (Fla. 4th DCA 2015) (discussing *United States v. Bajakajian*, 524 U.S. 321 (1998)). The plain language of Fla. Stat. § 28.246(6) spells out that the charge is to compensate the attorneys or debt collection, not to punish. Here, there is no support to Plaintiff's claim that the collections fee assessed by the Clerk before referral to Linebarger served as a

15

punishment. This is likely because Plaintiff has no colorable argument that the charge can be considered a punishment, especially given the plan language of the agreement between these defendants which clearly demonstrates the charge is to compensate Linebarger for the collections services it provides to the Clerk *i.e. the nature of Linebarger's business. See Lemon,* 411 U.S. at 209, 93 S. Ct. at 1473, 36 L. Ed. 2d at 166, 1973 U.S. LEXIS 85, *27.

If Plaintiff could, *arguendo*, maintain an action pursuant to 42 U.S.C. § 1983 against Linebarger, Count IV would still fail, as a matter of law. "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994). Plaintiff has been aware of the 40% assessment since before she drove away from the officer who ticketed her for driving at dangerous speeds. She was advised of the risks she faced for failing to timely pay the fine assessed to her when she was adjudicated guilty of this driving infraction. Yet, against all logic, Plaintiff maintains her position that she was denied procedural due process. If Plaintiff feels her due process rights were truly violated, she should address these concerns with her lawyer in the instant federal litigation about his handling of the county court traffic hearing at the heart of this dispute.

Additionally, Count V of the Complaint, which alleges a substantive due process violation, must also be dismissed for reasons separate and apart from the other 1983 Claims. "To support a claim of a substantive due process violation, a plaintiff must show irrational government action or government action that is motivated by bias, some improper purpose, or bad faith." *Ersek v. Township of Springfield*, 102 F.3d 79, 83, 1996 U.S. App. LEXIS 33381, *8, 12 I.E.R. Cas. (BNA) 632 (3d Cir. Pa. 1996). The Complaint is devoid of any support that the government action, i.e. the statute at issue, is somehow irrational or that the motivation for

enacting it was "motivated by bias, some improper purpose, or bad faith." *Id.* Rather, Plaintiff's Complaint just reiterates her dislike of Fla. Stat. § 28.246 without actually identifying the underlying requirements which would support Plaintiff's claimed relief. *See Lemon,* 411 U.S. at 209, 93 S. Ct. at 1473, 36 L. Ed. 2d at 166, 1973 U.S. LEXIS 85, *27. This count is further barred as being duplicative of the claim found in Count III, in which Plaintiff alleges violations of her 8th Amendment rights under the U.S. Constitution as well as her rights under Article I, Section 17 of the Florida Constitution. "[I]t is improper in a § 1983 action to rely on a substantive due process claim when a specific constitutional standard governs plaintiff's claimed right." *Lee v. Sikes,* 870 F. Supp. 1096, 1101, 1994 U.S. Dist. LEXIS 17906, *14 (S.D. Ga. 1994). Plaintiff simply cannot maintain Count V along with Count III, further requiring dismissal of this count.

Each of Plaintiff's 1983 Claims fail to state a cause of action for which this Court may grant relief and should each be dismissed. Since amendment would be futile, the dismissal of these three counts should be with prejudice.

iii.    Plaintiff's FDUTPA count is patently incorrect.

Fla. Stat. § 501.204(1) states, "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. § 501.203(8) defines "Trade or commerce," in the context of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." In order to state a FDUTPA claim, a plaintiff must show "(1) an act or practice that is deceptive or unfair, (2) causation, and (3) actual damages." *See State Farm*

17

*Mut. Auto. Inc. Co. v. Medical Serve Center of Fla., Inc.*, 103 F. Supp. 3d 1343 (S.D. Fla. 2015). "A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Furmanite Am., Inc. v. T.D. Williamson, Inc.,* 506 F.Supp.2d 1134, 1145 (M.D.Fla.2007). Plaintiff inexplicably wants this Court to believe that Defendants' compliance with Fla. Stat. § 28.246 meets this standard, even though there is no allegation in the Complaint that the 40% charge permitted by the statute is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," of which Plaintiff, herself, is not one. *Id*.

Nothing contained in Plaintiff's Complaint, other than her conclusory statements, suggests Defendants engaged in any unlawful activity in violation of FDUTPA as defined by Fla. Stat. § 501.204(1) and Fla. Stat. § 501.203(8). Conduct in pursuit of legal remedies, which is the case, here, is not "trade or commerce" under FDUTPA. *See generally Kelly v. Palmer, Reifler & Assocs., P.A.,* 681 F. Supp. 2d 1356, 1376, 2009 U.S. Dist. LEXIS 127108, *44, 22 Fla. L. Weekly Fed. D 599 (S.D. Fla. 2009). Instead, Plaintiff seeks to create a new means of liability under FDUTPA, arguing, "Defendants' conduct amounts to unfair practice of commerce since it violates a contract in order to profit from consumers who cannot reasonably avoid the inflated fees." Complaint ¶ 80. FDUTPA simply is not the "catch all" Plaintiff wishes it was in her efforts to establish Defendants' liability to her. Plaintiff's basis for seeking relief against Defendants, including Linebarger, is an affront to the clear reading of the statute and should not be accepted by the Court. Rather, this particular cause of action should be dismissed and fees and costs awarded to Linebarger consistent with Fla. Stat. § 501.205, as Linebarger should be considered the prevailing party under Plaintiff's FDUTPA claim.

iv.    Counts I-VI undermine Plaintiff's claim she is entitled to declaratory relief from the Court as sought in Count VII.

Questionably, Plaintiff seeks declaratory relief under Fla. Stat. § 86.021. Federal courts have concluded that determinations of declaratory judgment claims are procedural rather than substantive, so the federal Declaratory Judgment Act, not Fla. Stat. § 86.021, governs this Court's jurisdiction over the claim. *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978); *Fischer & Porter Co. v. Moorco Int'l Inc*., 869 F.Supp. 323, 326 (E.D. Pa. 1994). On this issue, alone, Count VII of Plaintiff's Complaint should be dismissed. Turning to the merits of said count, *as pled by Plaintiff*, in Florida,

> The test recognized . . . of whether or not a complaint will give rise to a proceeding under the Declaratory Judgment Act inquires whether or not the party seeking a declaration shows that he is in doubt or is uncertain as to existence or non-existence of some right, status, immunity, power or privilege and has an actual, practical and present need for a declaration. There must be a bona fide controversy, justiciable in the sense that it flows out of some definite and concrete assertion of right, and there should be involved the legal or equitable relations of parties having adverse interests with respect to which the declaration is sought. *Lutz v. Protective Life Ins.*, Co., 951 So.2d 884, 889 (Fla. 4th DCA 2007).

Regardless of the statutory vehicle used to obtain declaratory relief, this count still fails. Although paragraph 88 of Plaintiff's Complaint feigns a bona fide dispute as to the application of Fla. Stat. § 28.246(6), the totality of Plaintiff's actions against Defendants betrays this false position. Plaintiff is absolutely certain in her position that Defendants should not be permitted to act consistent with Fla. Stat. § 28.246(6) and the contract between them premised on the same. Plaintiff holds no ambiguity and uncertainty, and is actually seeking injunctive relief without taking the necessary steps for the same. Therefore, this Court should not reasonably conclude that Plaintiff is in doubt as to some right or status, or that she is entitled to have such doubt removed. The allegations, as pleaded, are speculative and conclusory, and do not demonstrate a

19

real threat of immediate injury, unless Plaintiff is again contemplating being ticketed for driving at dangerous speeds then failing to timely pay her fine after receiving an extension to do so.

Accordingly, there is no present practical need for a declaratory judgment, and this Court should dismiss this count of Plaintiff's Complaint. Florida law mandates dismissal of the all declaratory relief requested in this matter, with prejudice. *Cruz v. Union Gen. Ins.*, 586 So.2d 91, 92 (Fla. 3d DCA 1991) (where the plaintiff's right to be compensated for benefits that have already accrued, the Complaint should be for a breach of contract, not a declaratory action); *Shenandoah Chiropractic, P.A. v. National Specialty Ins. Co.*, S.D.Fla.2007, 526 F.Supp.2d 1283 (although statute required PIP carriers to pay "reasonable" expenses for necessary medical services, it was for fact-finder to determine whether insurer's evaluation of medical bills fit definition of "reasonable" on case-by-case basis, therefore issue could not be determined on declaratory judgment as to whether insurer breached its insurance contract with insureds for personal injury protection).

**III. Conclusion**

It is clear Plaintiff fails to state a single, cognizable claim upon which relief can be granted as Defendants are both immune to this lawsuit and from resulting damages pursuant to the doctrine of quasi-judicial immunity. Even without an extension of quasi-judicial immunity to Linebarger, Plaintiff's individual causes of action fail as a matter of law, amendment would be futile and the Complaint should be dismissed with prejudice.

**WHEREFORE**, Defendant Linebarger Goggan Blair & Sampson, LLP, respectfully requests that this honorable Court grant the relief requested herein, and for such other relief deemed just.

Respectfully Submitted,

By: */s/ Gavin N.L. White*
     Gavin N.L. White, Esquire (FBN 537853)
     WILSON, ELSER, MOSKOWITZ,
     EDELMAN & DICKER LLP
     3800 Miami Tower
     100 Southeast Second Street
     Miami, Florida 33131
     Telephone: (305) 374-4400
     Facsimile:  (305) 579-0261
     gavin.white@wilsonelser.com

     ***Attorneys for Defendant,Linebarger Goggan***
     ***Blair & Sampson, LLP***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the __11th__ day of May 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties as identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Noticed Electronic Filing.

By: */s/ Gavin N.L. White*
     GAVIN N.L. WHITE
     Florida Bar No. 537853

1110160v.1

**SERVICE LIST**

**Counsel for Defendant Harvey Ruvin**

**Scott N. Wagner, Esquire**
Bilzin Sumberg Baena Price & Axelrod, LLP
1450 Brickell Avenue, Suite 2300
Miami, FL 33131
Email:  swagner@bilzin.com

**Counsel for Defendant Harvey Ruvin**

**Luis G. Montaldo, Esquire**
P.O. Box 13267
Miami, Florida  33101
Email:  cocgencounsel@miamidade.gov

**Counsel for Plaintiff Natacha Guerra**

**Janet Robards Varnell, Esquire**
Varnell and Warwick, P.A.
P.O. Box 1870
Lady Lake, FL 32158
Email:  jvarnell@varnellandwarwick.com

**Bret Leon Lusskin, Jr., Esquire**
Bret Lusskin, P.A.
20803 Biscayne Blvd., Suite 302
Aventura, FL 33180
Email:  blusskin@lusskinlaw.com

**Scott David Owens, Esquire**
**Sean Martin Holas, Esquire**
Scott D. Owens, P.A.
3800 South Ocean Drive, Suite 235
Hollywood, FL 33019
Email:  scott@scottdowens.com
            sean@scottdowens.com

22

- Exhibit B -

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-20114-KMM

Natacha Guerra, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

Harvey Ruvin, in his capacity as Clerk
of the Courts of Miami-Dade County, Florida;
and Linebarger Goggan Blair & Sampson, LLP

     Defendants.

_____/

## <u>ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS COMPLAINT</u>

THIS CAUSE came before the Court upon Defendant Harvey Ruvin's Motion to Dismiss (ECF No. 33) (hereinafter, "Ruvin's Motion") and Defendant Linebarger Goggan Blair & Sampson, LLP's Motion to Dismiss (ECF No. 32) (hereinafter "Linebarger's Motion"). Both motions are fully briefed and now ripe for review. For the reasons that follow, both motions to dismiss are GRANTED.

## I.    BACKGROUND[1]

This is a putative class action challenging the assessment and collection of a fee. Plaintiff sues Defendants Linebarger Goggan Blair & Sampson, LLP ("Linebarger" or the "Firm") and Harvey Ruvin, in his capacity as Clerk of the Circuit and County Courts of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("Ruvin" or the "Clerk").[2]

---

[1] The following background facts are taken from Plaintiff's Complaint (ECF No. 1) ("Compl.") and are accepted as true for purposes of ruling on a Motion to Dismiss. *See SEC v. ESM Group. Inc.*, 835 F.2d 270, 272 (11th Cir. 1988), *cert. denied sub nom. Peat Marwick Main & Co. Tew*, 486 U.S 1055 (1988).

[2] This "action is brought against Harvey Ruvin in his official capacity only and not in his personal capacity." Compl. ¶ 9.

A. The Clerk and the Firm's Arrangement

Ruvin is the duly elected Clerk of the Courts for Miami-Dade County pursuant to Article V, Section 16 of the Florida Constitution and is a County officer pursuant to Article VIII, Section 1(d) of the Florida Constitution. Compl. ¶ 9. Since on or around July 1, 2004, Ruvin, as the Clerk of the Courts for Miami-Dade County, has charged and collected a "Collection Fee" from persons paying certain fines late under the authority of Florida Statute Section 28.246(6). *Id.* ¶ 24. The Collection Fee amounts to 40% of the sum owed prior to the imposition of the fee. *Id.*

In 2011, Ruvin—as the Miami-Dade County Clerk of Courts, "a political subdivision of the State of Florida"—executed a contract with Linebarger, a private law firm based in Texas. *Id.* ¶¶ 1, 8, 18; Ex. A to Compl. (ECF No. 1-4) (hereinafter, the "Contract") at 1. The Contract explains that the "Clerk is responsible for the collection of fines, charges and costs assessed, from an individual or entity . . . that owes the Clerk monies that are considered past due." *See* Contract at 24. Pursuant to the Contract, the Clerk selected Linebarger to pursue debt collection on delinquent accounts that remain unpaid for 90 days or more. *See id.*

Under the Contact, Linebarger receives "a 40% Collection Fee" that the Firm is "allowed to add to the debt owed, as set forth in Florida Statute[] 28.246 . . . ." *See id.* at 5. "The Collection Fee of 40% that is added to the debt owed shall remain firm and fixed for the term of the Contract . . . unless changed by Florida Statute." *Id.*; *see also* Compl. ¶¶ 20–21. The Contract outlines the following process for payment:

> The Contractor shall forward all monies collected which are due to the Clerk, on a daily basis. After the Clerk receives full payment for the debt owed on a Client account, the Contractor may retain the additional collected 40% Collection Fee placed on top of the debt owed to the Clerk. . . . In the case where a Client makes a payment to a referring Clerk Division at its local office, in response to collection efforts taken by the Contractor, the payment shall be subject to the 40% Collection Fee. The Clerk will remit the 40% Collection Fee to the Contractor when the Clerk accepts payment by a Client.

2

*See* Contract at 5.[3]

In practice, the Collection Fee is automatically imposed by "robo-calculation" immediately upon assignment to Defendant Linebarger and prior to any actual legal services or collection activity. Compl. ¶ 1. In fact, Linebarger "does not actively seek to collect any debts owed to the Miami-Dade County Clerk of Courts." *Id.* ¶ 43. Additionally, the Clerk allegedly retains a part of the 40% fee and puts it into a fund for the use of the Clerk's office. *Id.* ¶ 35.

### B. Plaintiff's Traffic Citation & Fee

On November 3, 2015, Plaintiff Natasha Guerra, a Miami-Dade resident, was issued a traffic citation for speeding. *See* Compl. ¶¶ 7, 25; *see also* Ex. A to Ruvin's Motion (hereinafter, the "Citation") (ECF No. 33-1).[4] A pamphlet attached to the Citation contained a "Warning Notice," which explained as follows: "Pursuant to F.S. 28.246(6), any fine and cost that remain unpaid in excess of 90 days may be referred to a collection agency, and an additional 40% charge will be added to the amount owed." *See* Pamphlet (ECF No. 33-3) at 4.

---

[3] The Contract defines the word "Client" to mean an individual or entity that owes Miami-Dade County Clerk of the Courts monies that are past due, and "Contractor" to mean Defendant Linebarger. *See* Contract at 2.

[4] The Court takes judicial notice of the Citation, along with the following documents: Ex. B. to Ruvin's Motion (ECF No. 33-2) (the "Traffic Court Judgment"); Ex. C to Ruvin's Motion (ECF No. 33-3) (the "Pamphlet"); and Ex. D. to Ruvin's Motion (ECF No. 33-4) (the "Traffic Court Docket"). A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment when records are "not subject to reasonable dispute" and are "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (citing Fed. R. Evid. 201(b)); *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider [at the motion to dismiss stage]."); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Boyd v. Georgia*, 512 F. App'x 915, 917 (11th Cir. 2013) ("[T]he district court did not abuse its discretion in taking judicial notice of Boyd's ongoing state proceeding.").

On December 21, 2015, Plaintiff appeared in traffic court for the Citation and was found guilty of a speeding offense (with a withheld adjudication). *See* Compl. ¶ 26; *see also* Traffic Court Judgment (ECF No. 33-2). The hearing officer imposed a $392.00 fine, gave Plaintiff 30 days to pay it, and warned that "[f]ailure to pay the balance on or before the agreed date may result in contempt of court, the suspension of driver license, issuance of a bench warrant, or being required to reappear before the court, in addition to the payment of penalty fees." *See* Traffic Court Judgement at 2.

On January 20, 2016, a late fee of $16.00 was added to the amount due because Plaintiff did not timely pay her fine, which raised the total sum to $408.00.[5] Compl. ¶ 27. On January 30, 2017, Plaintiff's license was suspended for her failure to pay. *See* Traffic Court Docket at 2.

On April 19, 2016—three months after the court-ordered deadline for Plaintiff to pay her speeding fine—the Clerk assigned Plaintiff's delinquent fine to Linebarger and added a fee in the amount of $163.20, which represented 40% of the amount due at the time of the assignment (hereinafter, the "Collection Fee"). Compl. ¶ 28. As a result, Plaintiff's total payment obligation was raised to $571.20. *Id.* On the same day—before the Firm performed any legal or collections work— Plaintiff paid the Clerk the full $571.20 at the Miami-Dade County Clerk Office. *Id.* ¶¶ 29, 34; *see also id.* ¶ 1.

The Clerk, in his capacity as Miami-Dade County Clerk of the Courts, remitted part of the Collection Fee to the Firm and kept a portion for the use of the Clerk's office. *Id.* ¶ 30. None of the communications sent to Plaintiff indicated that she had the right to dispute the imposition of the Collection Fee. *Id.* ¶ 32.

---

[5] This late fee is separate from, and in addition to, the Collection Fee that is the subject matter of the Complaint. *See* Compl. ¶ 27.

C. <u>This Action</u>

Against this backdrop, Plaintiff seeks to establish a class action against the Clerk (in his official capacity) and Linebarger. In broad strokes, the suit is premised on the "premature" and automatic "robo-imposition" of the Collection Fee, in combination with Defendants' "policy," in "virtually all cases," to "do nothing" but "simply wait for the debtor to pay." *Id.* at ¶¶ 1, 9, 43, 44, 72.[6] As a result of this policy, Defendants have allegedly "unjustly collected" millions of dollars. *Id.* ¶ 1. Plaintiff argues that, because Linebarger does not engage in any collections activity, the Collection Fee is not only unearned, but also unlawful under Florida Statute Section 28.246(6), which is the Florida Statute purportedly authorizing the fee. *Id.* ¶ 2. Plaintiff also contends that the collection and retention of the unearned fees violates the Eighth and Fourteenth Amendments to the Constitution, the Florida State Constitution, the Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and Florida Statute Section § 57.051(1). *Id.*

Accordingly, on behalf of the putative class, Plaintiff lodges the following claims against Defendants: Unjust Enrichment (Count I); Money Had and Received (Count II); Violation of the Eighth Amendment and Article I, Section 17 of the Florida State Constitution (Count III); Violation of the Procedural Due Process of the United States Constitution and Article I, Section 9 of the Florida Constitution (Count IV); Violation of Substantive Due Process (Count V); Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 (Count VI); Declaratory Relief Pursuant to Florida Statute Section 86.021 (Count VII); and Unlawful Exaction pursuant to

---

[6] Plaintiff defines the putative class as "(i) all persons (ii) who owed money to the Miami-Dade County Clerk of Court (iii) in connection with a parking, traffic, criminal, or civil penalty (iv) where such obligation was referred to Linebarger Goggan Blair & Sampson, LLP for collection (v) and was inflated by 40% by the Miami-Dade County Clerk of Court (vi) and where said person paid this obligation directly to the Miami-Dade County Clerk of Court (vii) when Linebarger Goggan Blair & Sampson, LLP had performed no collections work on the account (viii) during the four year period prior to the filing of the complaint in this action through the date of certification." *See* Compl. ¶ 45.

Florida Statute Section 57.051 (Count VIII). Plaintiff seeks to recover all monies that were allegedly collected unlawfully by Defendants, along with actual damages, injunctive relief, declaratory relief, attorney fees, and interest. *Id.* ¶ 2.

The Defendants each moved to dismiss Plaintiff's Complaint, arguing that the Clerk is entitled to quasi-judicial immunity and that Plaintiff has failed to state a claim. *See generally* Linebarger's Motion; Ruvin's Motion.[7] Additionally, Linebarger argues that the Firm is entitled to quasi-judicial immunity. *See* Linebarger's Motion at 9–11. Plaintiff has filed a Response in Opposition to Linebarger's Motion (ECF No. 40) ("Linebarger Opp."), and a Response in Opposition to Ruvin's Motion (ECF No. 41) ("Ruvin Opp."). Defendants have each filed replies. *See* Linebarger's Reply in Further Support (ECF No. 45) ("Linebarger's Reply"); Ruvin's Reply in Further Support (ECF No. 46) ("Ruvin's Reply").

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group. Inc.*, 835 F.2d at 272.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain enough facts to indicate the presence of the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions

---

[7] Ruvin files his Motion to Dismiss (the "Clerk's Motion") in his capacity as the Clerk of the Circuit and County Courts of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("Clerk"). *See* Ruvin's Motion at 1.

masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt. Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III.  DISCUSSION

The questions before this Court are: (A) whether the Clerk and Linebarger are entitled to quasi-judicial immunity for the subject matter of this suit; and (B) whether Plaintiff has stated a plausible cause of action for each of her claims. The Court considers each issue in turn.

### A.  Quasi-Judicial Immunity

Defendants argue that Harvey Ruvin is entitled to quasi-judicial immunity because his actions forming the basis of this suit were performed in his capacity as Clerk of Court for Miami-Dade County. Ruvin Motion at 6–12; Linebarger Motion at 7–8. Linebarger also argues that the Clerk's immunity should extend to the Firm because Linebarger was appointed by Ruvin to carry out functions for the Miami-Dade County Court. Linebarger Motion at 8–11. Plaintiff responds that quasi-judicial immunity does not apply because this case does not involve a judicial act. *See, e.g.*, Ruvin Opp. at 7. After careful review, the Court finds that neither Defendant is entitled to quasi-judicial immunity.

Non-judicial officials, including clerks of court, are entitled to absolute immunity for "duties that are integrally related to the judicial process." *Jenkins v. Clerk of Court*, 150 F. App'x 988, 990 (11th Cir. 2005); *see also Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994) (citation and internal quotation marks omitted). However, "[t]he proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).

"Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process." *Jenkins*, 150 Fed. Appx. at 990. In other words, a non-judicial official, like a clerk of court, is entitled to quasi-judicial immunity from suits predicated on actions that are "integrally related to the judicial process." *Id.*; *see, e.g.*, *Finfrock v. Flint*,

7

No. 206CV-230FTM-29DNF, 2006 WL 2884953, at *2 (M.D. Fla. Oct. 10, 2006) (finding clerk was entitled to absolute quasi-judicial immunity where suit was premised on decisions regarding when to issue service of process or whether to enter default judgment because those actions are "judicial actions").

However, as several courts have explained, quasi-judicial immunity is a defense to *individual capacity* suits—but not official capacity suits. *See, e.g.*, *VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) (holding that commissioners for the Nebraska State Racing Commission could not receive quasi-judicial immunity in their official capacities); *Alkire v. Irving*, 330 F.3d 802, 810–11 (6th Cir. 2003) (explaining that a sheriff and county judge could not claim quasi-judicial or qualified immunity for official-capacity § 1983 claims); *Dotzel v. Ashbridge*, 438 F.3d 320, 327 n.5 (3d Cir. 2006) (explaining that official capacity claims against members of a township's board of supervisors are not subject to quasi-judicial immunity, even though the board members were entitled to quasi-judicial immunity in their individual capacities). As the Eleventh Circuit explained, "personal defenses are generally unavailable in official capacity suits because such suits are treated as suits against the underlying entity." *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005). As a result, the "only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

Here, Plaintiff sues Ruvin only in his official capacity as Clerk of Court. *See* Compl. ¶ 9 ("This action is brought against Harvey Ruvin in his official capacity only and not in his personal capacity."). Because Plaintiff is not suing Ruvin in his individual capacity, Ruvin is not entitled to quasi-judicial immunity. *See Alkire*, 330 F.3d at 810–11 (finding, in an official-capacity suit, sherriff and judge "cannot claim any personal immunities, such as quasi-judicial or qualified immunity, to which they

8

might be entitled if sued in their individual or personal capacities.").[8] Thus, the Clerk is not entitled to quasi-judicial immunity in this action.[9]

Linebarger is not entitled to quasi-judicial immunity for similar reasons. When a private corporate entity contracts with a public entity to offer functions "traditionally within the exclusive prerogative of the state[,] . . . it becomes the functional equivalent of [a] municipality." *See Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997). Here, Plaintiff's claims against Linebarger stem from the fact that the Firm is "engaged by Miami-Dade County to collect on unpaid civil penalties, fines, and court cost orders," Compl. ¶ 1. In relevant part, Florida law tasks clerks of court, like Ruvin, with collecting fines, *see* Fla. Stat. § 28.246(3), and permits clerks to delegate the collection of any fines that are unpaid after 90 days to a private attorney, *see id.* § 28.246(6). The Parties agree that the suit stems from Linebarger's contracting to perform a public function on behalf of a public official. *See* Linebarger Opp. at 2, 5 (Linebarger was "standing in the shoes of the Clerk"); Linebarger Motion at 9 (Linebarger's contract with the Clerk to provide collection services "places it in a role that would otherwise be filled by Miami-Dade County employees."). Because this suit arises from Linebarger's

---

[8] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). Because Ruvin has responded to the Complaint "as Clerk of the Circuit and County Courts of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida," *see* Ruvin's Motion at 1, the Court finds that any judgment resulting from this official capacity suit may properly impose liability on the entity that Ruvin represents, barring any applicable immunities. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond.").

[9] The Defendants have not attempted to invoke sovereign immunity under the Eleventh Amendment, and the Court declines to consider the issue *sua sponte*. *See Bouchard Transp. Co. v. Florida Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996) ("[T]he Supreme Court has held that the Eleventh Amendment is not jurisdictional in the sense that courts must address the issue *sua sponte* . . . ." (citing *Patsy v. Board of Regents*, 457 U.S. 496, 515 n.19 (1982))).

contracting to perform a public function, "a suit against such a corporate entity is an official capacity suit." *Carden v. Town of Harpersville*, No. 2:15-CV-01381-RDP, 2017 WL 4180858, at *21 (N.D. Ala. Sept. 21, 2017).[10] Because it appears that the suit against Linebarger is an official capacity suit, Linebarger likewise cannot invoke quasi-judicial immunity. *See, e.g.*, *id.* at *21 (holding suit against private corporation appointed to carry out functions for a municipal court was an official capacity suit, and thus the corporation was not entitled to quasi-judicial immunity); *Ray v. Judicial Correction Servs., Inc.*, No. 2:12-CV-02819-RDP, 2017 WL 4012933, at *18 (N.D. Ala. Sept. 12, 2017) (same).

Moreover, even if Linebarger were being sued in its individual capacity, Linebarger's quasi-judicial immunity argument would fail because Linebarger has not satisfied its burden of showing that it is entitled to such immunity. *See Antoine*, 508 U.S. at 432 ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity."). Linebarger essentially argues that its collection services on behalf of the Clerk were "absolutely integral to the judicial process" because those services placed Linebarger "in a role that would otherwise be filled by Miami-Dade County employees." Linebarger Motion at 9. However, that a defendant's actions would be performed by public officials is plainly not the test for quasi-judicial immunity. Rather, defendants' entitlement to such immunity is "determined by a functional analysis of their actions in relation to the *judicial process*." *Jenkins*, 150 Fed. Appx. at 990 (emphasis added).

---

[10] Additionally, Plaintiff alleges that "Defendant Linebarger is acting under color of state law and with authority delegated by the state . . . ." Compl. ¶ 76; *see also id.* ¶ 77 ("The Defendants are acting under color of state law and with authority delegated by the state . . . ."). "In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (because plaintiff's complaint did not include an "express statement" that she was suing defendants in their individual capacity, her suit will be considered one against the defendants in their official capacity).

Officials are entitled to absolute quasi-judicial immunity when those officials perform discretionary functions analogous to judges, or when carrying out a judge's explicit instructions—but not when performing routine ministerial duties. *See Scott v. Dixon*, 720 F.2d 1542, 1545 (11th Cir. 1983) (clerk of court "enjoyed absolute immunity in exercising a discretionary judicial function," such as deciding whether to issue criminal warrants); *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980)[11] (clerk has absolute immunity when carrying out judge's "explicit instructions" or court decrees, but only qualified immunity for "routine duties"); *see also Roland*, 19 F.3d at 556 n.4 ("Our previous recognition of absolute quasi-judicial immunity has been in contexts where the official in question acted in an analogous judicial capacity rather than pursuant to a judicial order," however, "[w]hen an official acts pursuant to a direct judicial order, absolute quasi-judicial immunity is obvious.").

Here, the Complaint contains no allegations that Linebarger acted pursuant to a court order or exercised any judicial discretion. Rather, Linebarger operated pursuant to an agreement with the Clerk (the Contract), who, in turn, was purportedly operating pursuant to a state statute (Fla. Stat. § 28.246). Moreover, Linebarger has presented no meritorious argument for the proposition that its role in this matter—which is essentially debt collection—is otherwise an integrally judicial function.[12] Accordingly, the Court finds that Linebarger is not entitled to quasi-judicial immunity.

---

[11] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[12] The cases cited by Linebarger are inapposite because they concern: (a) conduct that is completely different from Linebarger's debt collection activities; (b) conduct of individuals carrying out court orders or administrative orders that were deemed judicial acts; and/or (c) doctrinally-distinct forms of immunity. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377, 393–94 (2012) (attorney retained by Government to conduct internal affairs investigation was entitled to seek the protection of qualified immunity); *Coverdell v. Dep't of Social & Health Servs., Wash.*, 834 F.2d 758, 765 (9th Cir. 1987) (finding child protective services worker who took custody of child pursuant to court order was immune from suit); *Montejo v. Martin Mem'l Med Ctr., Inc.*, 935 So.2d 1266 (Fla. 4th DCA 2006) (private hospital was not entitled to quasi-judicial immunity because it was not executing court order that is integral to the judicial process); *Boczar v. Glendening*, 555 So. 2d 1286, 1287 (Fla. 2d DCA 1990) (finding statutory

### B. Plaintiff's Claims

Because Defendants have not asserted any meritorious arguments concerning immunity, the Court next considers Defendants' arguments that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). At bottom, Plaintiff's eight claims are focused on whether the Clerk's automatic imposition of the 40% Collection Fee—when no collection activity is performed—is unlawful under Florida law, unconstitutional under the federal and state constitutions, or is otherwise inequitable or unfair. The Court begins with the statutory question.

### 1) Unlawful Exaction Pursuant to Fla. Stat § 57.051 (Count VIII)

Florida law provides that "[n]o fee shall be charged for any official service performed or claimed to be performed by any officer unless the fee is specifically authorized and its amount is specified by law." Fla. Stat. § 57.051(a). Plaintiff contends that the Collection Fee is not authorized by law, and that Defendant Ruvin is an "officer," who, in retaining Linebarger to collect overdue fines, is performing (or claiming to perform) an official service within the meaning of Section 57.051(a). Ruvin argues that this claim fails because Ruvin's assessment of the Collection Fee is explicitly authorized by Florida law in Fla. Stat. § 28.246(6) (the "Statute").

---

immunity for physician stemming from his examination of a child and reporting potential child abuse); *Zock v. Miller*, 505 So.2d 18 (Fla. 3d DCA 1987) (psychiatrist appointed by court to examine criminally accused enjoyed quasi-judicial immunity from liability); *Mueller v. Fla. Bar*, 390 So. 2d 449, (Fla. 4th DCA 1980) (prosecutorial immunity extends to the Florida Bar for its involvement in grievance matters).

At first blush, the decision in *Zoba v. City of Coral Springs*, appears to extend to the facts of this case because the *Zoba* court held that a clerk of court collecting a traffic fine was protected by quasi-judicial immunity. 189 So.3d 888, (Fla. Dist. Ct. App. 2016). However, the *Zoba* court applied Florida law, which similarly requires that quasi-judicial immunity must arise from a judicial act, and found that the clerk's duty to collect payments for citations "stemmed" from an administrative order, which was a "judicial act." *Id.* at 893. This is not the case here, where Defendants have failed to articulate any judicial act.

The analysis of a statute begins with an examination of its text. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003). In relevant part, the Statute provides as follows:

 "A clerk of court shall pursue the collection of . . . fines . . . which remain unpaid after 90 days by referring the account to a private attorney . . . or collection agent . . . . In pursuing the collection of such unpaid financial obligations through a private attorney or collection agent, the clerk of the court must have attempted to collect the unpaid amount through a collection court, collections docket, or other collections process, if any, established by the court, find this to be cost-effective and follow any applicable procurement practices. The collection fee, including any reasonable attorney's fee, paid to any attorney or collection agent retained by the clerk may be added to the balance owed in an amount not to exceed 40 percent of the amount owed at the time the account is referred to the attorney or agent for collection. . . .

Fla. Stat. § 28.246(6). Ruvin and Plaintiff agree that the first sentence of the Statute requires the Clerk to refer fines that are unpaid after 90 days (like Plaintiff's) to a private attorney or collection agent (like the Firm). *See* Ruvin Motion. at 13; Ruvin Opp. at 5–6. Ruvin and Plaintiff also agree that the Statute authorizes a collection fee up to 40% of the amount owed on any fines that remain unpaid after 90 days (like Plaintiff's). *See* Compl. ¶ 2.

However, Plaintiff argues that the Statute does not support Ruvin's imposition of the Collection Fee immediately upon referral when Linebarger had not performed any collection work because the Statute requires the collection agent to have performed work prior to assessing any collection fee. In support of her interpretation, Plaintiff points to the language and legislative history of the statute.[13]

First, Plaintiff points to the following language of the Statute: "In pursuing the collection of such unpaid financial obligations through a private attorney or collection agent, the clerk of the court must have attempted to collect the unpaid amount through a collection court, collections docket, or

---

[13] Plaintiff also suggests that the Contract may somehow elucidate the meaning of the Statute. *See, e.g.*, Ruvin Opp. at 6 ("This statutory requirement is reiterated and amplified by the Contract itself.") Although the Court may consider the Contract to determine whether the arrangement therein complies with the Statute, it is plainly not evidence of whether the Collection Fee is authorized by law.

other collections process, if any, established by the court, find this to be cost-effective and follow any applicable procurement practices." Ruvin Opp. at 5–6 (quoting Fla. Stat. § 28.246(6)). Plaintiff argues that, because the Statute requires the Clerk to pursue the unpaid fine through a private attorney or collection agent, this sentence actually imposes an obligation on Linebarger, as the collection agent, to attempt to collect the unpaid amount through a collections process established by the Court. *Id.*

The Court disagrees. First, the plain language of the statute renders "the clerk of court" the subject of the sentence. Second, the phrase "must have attempted" merely requires that clerks participate in whatever collections process that the court has established—if the court has established one at all. To the extent there is ambiguity, the Court looks to the purpose of the statute, which is to "pursue the collection of . . . fines . . . which remain unpaid after 90 days" in a "cost-effective" manner. *See* Fla. Stat. § 28.246(6). To construe this phrase to impose an obligation on a clerk of court (or its collection agent) to pursue debt collection only via "a collection court" or a "collections docket" in the absence of a court-established collections process would contravene this purpose. Instead the sentence is more appropriately construed to reflect the legislature's deferral to the court's authority to establish its own methods of collection activity (if the court choses to do so). Notably, Plaintiff has not pointed to (or alleged) any collection procedures established by the Eleventh Judicial Circuit Court that the Clerk has failed to comply with.[14] Finally, even construing the plain language of the statute in Plaintiff's favor, the statute does not speak about the timing of the imposition of the collection fee.[15]

---

[14] Indeed, Defendant has argued that the Eleventh Judicial Circuit has not established any such process and Plaintiff has not contested this point. "When a party fails to address a specific claim, or fails to respond to an argument made by the opposing party, the Court deems such claim or argument abandoned." *Ramsey v. Bd. of Regents of Univ. Sys. of Georgia*, No. 1:11-CV-3862-JOF-JSA, 2013 WL 1222492, at *29 (N.D. Ga. Jan. 30, 2013), *aff'd*, 543 F. App'x 966 (11th Cir. 2013).

[15] The Parties dispute what the clause "at the time the account is referred to the attorney or agent for collection" modifies. Ruvin suggests it modifies the time at which the collection fee may be added to the balance. *See* Ruvin's Motion at 14. Plaintiff suggests it merely clarifies that the amount added as a collection fee may not exceed 40% of whatever is owed at the time the account is referred to the

Rather it vests the clerk of court with discretion to assess a collection fee of up to 40% of the amount otherwise owed per each unpaid fine. That is precisely what the Clerk did in this instance. *See, e.g.*, Compl. ¶ 28; Contract at 5 (providing that Linebarger is to receive "a 40% Collection Fee" added to the debt owed).

The legislative history cited by Plaintiff does not persuade the Court to alter its interpretation of the statute. Plaintiff contends that the legislative history—namely, the addition of the "attempted to collect" phrase in 2004—proves that the bill was designed to allow collection agencies to recover costs of collection only "if they fulfilled the statutory requirement of 'attempting to collect' via court-established process." Ruvin Opp. at 6. But the legislative history, if anything shows the opposite. The Senate Staff Analysis and Economic Impact statement explains that "[s]everal sections of this bill *restore* the authority for collection agencies to recover the cost of collection" and that "the effect is to *allow current cost recoveries now being received* by private entities *to continu*e . . . ." *See* Ex. B. to Ruvin Opp. (ECF No. 41-2) at 17. In other words, the addition of the "attempted to collect" phrase did nothing other than to restore the status quo as to private collection agencies' ability to recover costs.[16]

---

collection agent. *See* Ruvin Opp. at 7. The first construction is fatal to Plaintiff's claim because it explicitly authorizes the Clerk's automatic assessment of the 40% at the time of referral. However, Plaintiff's alternative construction does not buoy Plaintiff's claim because such a reading would merely render the statute silent as to when the fee may be added.

[16] Plaintiff focuses on the phrase "recover the cost of collection" in the Staff Analysis, and suggests that it means a collection agent may only recover the cost of collecting each unpaid account. *See* Ruvin Opp. 41. However, this reading defies common sense. *See generally Wedemeyer v. Pneudraulics, Inc.*, 510 F. App'x 875, 877 (11th Cir. 2013) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). Such a reading would almost certainly result in collections firms operating at a loss (and thus rationally declining to work for the clerks of court) because the nature of collections work is such that some accounts may never be paid. As a result, Plaintiff's reading contravenes the purpose of the statute—which is to allow the clerk to delegate collections duties to a third-party collection agent.

The Court finds that the Collection Fee charged by the Clerk is authorized by law. Accordingly, Plaintiff's unlawful exaction claim (Count VIII) is hereby DISMISSED.

2)    Unjust Enrichment (Count I) & Money Had and Received (Count II)

Plaintiff lodges claims for unjust enrichment and for money had and received. *See* Compl. ¶¶ 55–64. In both claims, Plaintiff alleges that Defendants' receipt of the Collection Fee is unlawful and unjust, and that it would be unfair and inequitable for Defendants to retain the funds collected from the Collection Fee. *Id.* Accordingly, Plaintiff contends, such funds should be disgorged to the putative class. *Id.*

At the outset, the Court notes that these claims are the same. *See Hucke v. Kubra Data Transfer, Ltd.*, 160 F.Supp.3d 1320, 1329 n.1 (S.D. Fla. 2015) ("unjust enrichment and money had and received are different names for the same theory of restitution-based equitable relief."). Accordingly, "the elements of both causes of action are the same." *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1384 (S.D. Fla. 2010). To state a cause of action for unjust enrichment, a complaint must allege that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citation omitted).

Defendants argue that Plaintiff's unjust enrichment claims fail because, *inter alia*,[17] the Collection Fee is statutorily authorized, and thus it would not be "inequitable" for defendants to retain the sums collected via the imposition of the Collection Fee. The Court agrees.

---

[17] Defendants also argue that these claims fail because they are premised on the violation of a statute, which does not provide for a private right of action. Additionally, Linebarger argues that Plaintiff's claims against it fail because the Complaint never alleges that Plaintiff conferred any benefits directly

Under Florida law, an action for unjust enrichment is appropriate when an entity "accepts and retains benefits that it is not legally entitled to receive in the first place . . . ." *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013). Conversely, when a defendant is legally entitled to a benefit that is the subject of an unjust enrichment claim, the unjust enrichment claim fails because it would not be "inequitable" for that Defendant to retain that benefit. *See, e.g.*, *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1289 (11th Cir. 2015) (affirming the dismissal of City of Miami's unjust enrichment claim against bank because, *inter alia*, the defendant bank was legally entitled to the municipal benefits the city conferred upon it), *vacated on other grounds sub nom. Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017); *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1366 (S.D. Fla. 2011) (dismissing unjust enrichment claim and finding Plaintiffs failed to plead that the retention of benefits by the Defendants would be unjust where Defendants were legally entitled to benefits they received); *In re US Capital Holdings, LLC, No.* 12-14517-JKO, 2013 WL 5297352, at *7 (Bankr. S.D. Fla. Aug. 5, 2013) (dismissing unjust enrichment claim on the grounds that the Complaint "fails to meet the fourth element necessary for an unjust enrichment claim because [the defendant] received nothing which it was not legally entitled to receive.").

As discussed in Section III.B.1, *supra*, the Collection Fee is authorized by Florida law. Thus, Defendants are legally entitled to the Collection Fee, and it would not be unjust for Defendants to retain the proceeds of the Collection Fee.[18] Accordingly, Plaintiff's Unjust Enrichment and Money Had and Received Claims (Counts I and II) are DISMISSED.

---

to Linebarger, but rather paid the Collection Fee to the Clerk. As set forth below, the Court concludes that Counts I and II fail for an independently sufficient reason, and thus declines to address these arguments.

[18] The Court rejects Plaintiff's arguments premised on Linebarger's alleged lack of collection efforts for two reasons. First, as discussed in Section III.B.1., the Collection Fee may be imposed under the Statute without the collection agent's engagement in particular collection efforts. Second, Plaintiff, as a non-party to the Contract, cannot enforce the terms of the Contract against either of the Defendants.

3)     <u>Florida Deceptive and Unfair Trade Practices Act (Count VI)</u>

Plaintiff lodges a claim against Defendants under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. Defendants argue that the FDUTPA claim fails for three reasons. First, Defendants argue that the FDUTPA claims lack a statutory predicate. Second, Defendants argues that Defendants' alleged breach of contract cannot serve as the predicate for Plaintiff's FDUTPA claim. Third, Defendants argue that FDUTPA does not apply to the conduct at issue because such conduct does not constitute "trade or commerce."

*a) Whether FDUTPA Claims Fail Because They Lack a Statutory Predicate*

Defendants argue that the FDUTPA claim fails because the statute that the Defendants are alleged to have violated—Fla. Stat. § 28.246—cannot serve as a statutory predicate for a FDUTPA claim because the Statute does not proscribe an unfair or deceptive act. *See* Linebarger Reply at 9–10; Ruvin Reply at 8–9. Defendants' argument is predicated on a misunderstanding of the FDUTPA statute.

A FDUTPA claim does not necessarily require the violation of a predicate statute. In order to state a FDUTPA claim, a plaintiff "must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). The first element may be satisfied in one of two ways: a per se violation or a

---

*See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011) (Generally "one who is not a party to an agreement cannot enforce its terms against one who is a party" because the "right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves.").

The Court also rejects Plaintiff's arguments premised on the allegation that the Clerk has retained a portion of the Collection Fee instead of rendering it to Linebarger because Plaintiff has no standing to lodge such a claim. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (holding "plaintiff must have suffered an 'injury in fact'" in order to have standing); *see also id.* at 560 n.1 (clarifying "the injury must affect the plaintiff in a personal and individual way."). Here, Plaintiff has not explained how the Clerk's retention of a portion of the Collection Fee instead of rendering it entirely to Linebarger has injured Plaintiff.

traditional violation. *See, e.g., Parr v. Maesbury Homes, Inc.*, No. 609CV-1268-ORL-19GJK, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009). Defendants' argument focuses on the first way: the *per se* FDUTPA violation, which requires a violation of a predicate statute. *See* Fla. Stat. § 501.203(3)(c) (a violation of any "law, statute, rule, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices" may serve as a predicate for a FDUTPA claim). However, a FDUTPA plaintiff may also satisfy the first element by showing a traditional violation, alleging defendants engaged in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *See* Fla. Stat. § 501.204(1); *see also Herazo v. Whole Foods Mkt., Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at *4 (S.D. Fla. July 24, 2015) ("An act, however, does not need to violate a specific rule or regulation to be considered deceptive." (citation omitted)).

As the Complaint makes clear, Plaintiff alleges only a traditional violation. *See* Compl. at 18 (describing Count VI as a "Violation of Fla[.] Stat. § 501.204," which is the portion of the FDUTPA that outlines a traditional violation). In fact, Plaintiff articulates the exact premise of its FDUTPA claim: "Defendants' conduct amounts to unfair practice of commerce since it violates a contract in order to profit from consumers who cannot reasonably avoid the inflated fees." *See id.* ¶ 80. Accordingly, the Court rejects Defendants' argument for dismissal on this basis.

### b) *Whether Plaintiff Has Pled a Traditional FDUTPA Violation*

Defendants' remaining arguments are focused on whether Plaintiff has sufficiently alleged a traditional FDUTPA violation. As noted above, the Complaint explicitly alleges the premise of its FDUTPA claim: "Defendants' conduct amounts to unfair practice of commerce since it violates a contract in order to profit from consumers who cannot reasonably avoid the inflated fees." *See id.* ¶ 80. Defendants argue that this allegation represents an impermissible attempt to base a FDUTPA claim exclusively on a breach of contract.

19

Defendants are correct as a legal matter that a FDUTPA violation cannot be premised exclusively on an allegation that an action violated a contractual obligation. *See Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1279 (M.D. Fla. 2008) (dismissing FDUTPA claim which "challenge[d] the act of breaching the Agreement as unfair or deceptive rather than the act giving rise to the breach" because a "breach of contract claim . . . cannot be converted to a claim under FDUTPA"); *cf. id.* at 1276 ("[N]on-parties who receive merely an incidental or consequential benefit from a contract have no right to its enforcement."). However, this principle does not prohibit Plaintiff from pursuing a FDUTPA claim related to Defendants' alleged breach of the Contract as long as "the act giving rise to the breach also constitutes an alleged unfair or deceptive trade practice." *Id.* at 1279; *see also PNR, Inc. v. Beacon Prop. Mgmt.*, 842 So.2d 773, 777 n. 2 (Fla. 2003) ("To the extent an action giving rise to a breach of contract or breach of lease may also constitute an unfair or deceptive act, such a claim is and has always been cognizable under the FDUTPA.").

Here, the FDUTPA-specific allegation rests on the mere allegation of breach, and is thus insufficient to sustain a FDUTPA claim. Indeed, Plaintiff acknowledges this principle, but argues that "[e]ven absent the Contract, Plaintiff's FDUTPA claim would stand." *See* Ruvin Opp. at 16. Specifically, Plaintiff argues that Defendants' assessing the Collection Fee despite Linebarger's alleged failure to perform any collections work is "patently unfair . . . . immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers." *Id.* at 15–16.[19]

---

[19] Ruvin contends that Plaintiff is impermissibly attempting to amend her Complaint via her Opposition briefs. *See* Ruvin's Reply at 9 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")). However, the Court notes that the FDUTPA claim explicitly incorporates the other non-claim-specific allegations in the Complaint. *See Compl.* ¶ 78 ("Plaintiff incorporates paragraphs 1 through 54 above as if fully restated herein."). Because Plaintiff's argument rests on other allegations in the Complaint, the Court considers the argument.

However, as this Court has already found, the Statute permits the assessment of the Collection Fee without requiring a collection agent to perform any collections work prior to its assessment. *See* Section III.B.1, *supra*. As a result, to the extent that Plaintiff bases her FDUTPA claim on the imposition of the Collection Fee in the absence of Linebarger's collection activity, the FDUTPA claim is foreclosed by the FDUTPA safe harbor provision. This safe harbor provision provides that a FDUTPA claim cannot be premised on "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1); *see, e.g.*, *Montero v. Duval Cty. Sch. Bd.*, 153 So. 3d 407, 412 (Fla. 1st DCA 2014) (holding that a FDUTPA claim against a school board failed because the board's action was required or specifically permitted by state law); *Prohias v. AstraZeneca Pharmaceuticals, L.P.*, 958 So.2d 1054, 1056 (Fla. 3d DCA 2007) (finding that a plaintiff failed to state a FDUTPA claim where the defendant's drug labeling complied with FDA requirements). Notably, the safe harbor provision does not contain an "exception for unwise or even incompetently enforced federal or state laws." *Pye v. Fifth Generation, Inc.*, No. 4:14CV493-RH/CAS, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015).[20] Because Plaintiff has failed to allege facts to support a FDUPTA claim, Count VI is DISMISSED.[21]

4) <u>Section 1983 Claims (Counts III, IV, and V)</u>

Plaintiff lodges several claims against Defendants under 42 U.S.C. § 1983, alleging violations of the federal Constitution and the Florida Constitution. Specifically, in Count III, Plaintiff alleges a

---

[20] To the extent Plaintiff bases the FDUTPA claim on the Clerk's alleged retention of a portion of the Collection Fee, instead of rendering it in its entirety to Linebarger, the claim would fail to properly allege that this act caused her damages. *See Kais v. Mansiana Ocean Residences, LLC*, No. 08-21492-CIV-MORENO, 2009 WL 825763, at *2 (S.D. Fla. Mar. 26, 2009) (dismissing FDUTPA claim because "Plaintiff has failed to state how any of the alleged deceptive or unfair practices caused damage to Plaintiff.").

[21] Because the FDUTPA claim fails, the Court declines to reach Defendants' remaining argument concerning whether Defendants participated in "trade or commerce" within the meaning of FDUTPA.

violation of the Eighth Amendment of the United States Constitution and Violation of Article I, Section 17 of the Florida State Constitution. In Count IV, Plaintiff alleges that her procedural due process rights under both constitutions have been violated. In Count V, Plaintiff alleges a violation of her substantive due process rights.

Defendants argue that each of these counts fails to state a claim.[22] For the reasons set forth below, the Court agrees. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "(1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010) (citations omitted). In addition, a plaintiff must allege and establish an "affirmative causal connection between the defendant's conduct and the constitutional deprivation." *Soto v. City of N. Miami*, No. CV 17-22090-CIV, 2017 WL 4685301, at *5 (S.D. Fla. Oct. 17, 2017) (citing *Troupe v. Sarasota Cty.*, 419 F.3d 1160, 1165 (11th Cir. 2005)).

### a) Eighth Amendment (Count III)

Plaintiff asserts that the Collection Fee is an excessive fine that violates the Eighth Amendment of the United States Constitution and Article I, Section 17 of the Florida State Constitution. Defendants argue that the excessive fine clauses of both constitutions do not prohibit the assessment of the Collection Fee because, *inter alia*, the fee is designed to compensate the collection agency and is thus beyond the scope of both clauses.[23] The Court agrees.

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const.

---

[22] Linebarger also argues that all of these claims fail against it because it is not a state actor for the purposes of a § 1983. *See* Linebarger's Motion at 13–15. Because the Court finds that these claims fail as a matter of law, it need not address Linebarger's remaining argument.

[23] Defendants also argue that the fee is not excessive. The Court does not address this argument because it finds that the claim otherwise fails.

amend. VIII. The Florida Constitution "similarly forbids excessive fines." *State v. Cotton*, 198 So. 3d 737, 741 (Fla. 2d DCA 2016), *review denied*, No. SC16-544, 2016 WL 3272991 (Fla. June 15, 2016); *see* Art. I, § 17, Fla. Const. ("Excessive fines, cruel and unusual punishment, attainder, forfeiture of estate, indefinite imprisonment, and unreasonable detention of witnesses are forbidden."). Florida Courts apply the same analysis for both clauses. *See, e.g, State v. Jones*, 180 So. 3d 1085, 1088 (Fla. 4th DCA 2015).

The Eighth Amendment's Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (emphasis omitted) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)). While civil fines may, in limited circumstances, fall within the ambit of the Eighth Amendment's prohibition, only fines that are so excessive that they "can only be explained as serving in part to punish" are subject to Eighth Amendment review. *Id.* at 610. Similarly, under the Florida analogue, "[a] payment is remedial, and not punitive, if it compensates the government for a loss and therefore is not subject to the Excessive Fines Clause." *Jones*, 180 So. 3d at 1088.

Here, Plaintiff fails to proffer any meritorious argument that the Collection Fee is punitive as opposed to remedial. In fact, Plaintiff does not allege that Collection Fee has a punitive purpose. *See, e.g.*, Compl. ¶ 68 ("The automatic imposition, collection, and retention of a 40% collection fee prior to any collection activity or service is done to maximize Defendant Linebarger's profits and to increase the special fund established by Defendant Ruvin.").[24] Moreover, the plain text and legislative history

---

[24] Plaintiff appears to concede that "the true purpose of the statute is to compensate for the actual costs of collection . . . ." *See* Ruvin Opp. at 14. Plaintiff then argues that "the purpose for which the Clerk is employing [the Statute] (collecting a 40% windfall payment for doing absolutely nothing) is wholly improper." *Id.* However, Plaintiff provides no support for the proposition that a statute, which has a

of Section 28.246(6) reveal that the purpose of the Statute is not punitive, but remedial. The Statute indicates that the Collection Fee is added to the existing fine in order to compensate collection agents or attorneys for their services in collecting unpaid fines. *See* Fla. Stat. § 28.246(6) ("[t]he collection fee, including any reasonable attorney's fee, paid to any attorney or collection agent retained by the clerk may be added to the balance owed . . . "). The legislative history supports this conclusion. The Senate Staff Analysis and Economic Impact statement explains that "[s]everal sections of this bill restore the authority for collection agencies to recover the cost of collection" and that "the effect is to allow current cost recoveries now being received by private entities to continue . . . ." *See* Ex. B. to Ruvin Opp. (ECF No. 41-2) at 17.

Because the Court finds that the purpose of Collection Fee is remedial instead of punitive, the Collection Fee does not fall within the scope of the excessive fines clauses of the Constitution or the Florida Constitution. *See Austin*, 509 U.S. at 622 n.14 ("[A] fine that serves purely remedial purposes cannot be considered 'excessive' in any event."); *Busbee v. State, Div. of Ret.*, 685 So. 2d 914, 915 (Fla. 1st DCA 1996) (rejecting arguments premised on excessive fines clauses of the Constitution and the Florida Constitution because forfeiture was "not a punishment"). Accordingly, Count III is DISMISSED.

### b) *Procedural Due Process (Count IV)*

Plaintiff alleges that the enforcement of the Collection Fee violates the Due Process Clause of the United States' Constitution and Section 9 of the Florida Constitution for essentially three reasons. *See* Compl. ¶ 72. First, the Collection fee is automatically imposed on class members who "do not know and could not reasonably know" that "Defendants are required to conduct collection services before they can impose the fee." *See id.* Second, Defendants did not provide adequate notice before the

_____

remedial purpose, violates the excessive fines clauses of the Constitution or the Florida Constitution because it allegedly results in a "windfall" to certain entities.

24

fees were assessed. *See id.* Third, class members do not have an adequate opportunity to be heard on the amount of the Collection Fee and could not have reasonably known they have any method to dispute the imposition of the fee. *See id*. Defendants argue that the procedural due process claim fails because Plaintiff and class members had adequate notice and an opportunity to be heard. The Court agrees.

"A Section 1983 procedural due process claim requires a plaintiff to prove three elements: (1) deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (internal quotation marks omitted). Procedural due process requires that interested persons be given "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196–97 (11th Cir. 2005) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). To "determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Moreover, "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).

The Court rejects Plaintiff's argument that class members were denied procedural due process on the grounds they did not know (or could not have reasonably known) that "Defendants are required to conduct collection services before they can impose the fee," Compl. ¶ 72. As the Court already found, Defendants are not required to conduct collection services before imposing the fee. *See* Section III.B.1, *supra*. Thus, the allegation that class members were not aware (or could not have been aware) of this incorrect legal conclusion cannot form the basis of procedural due process claim.

25

The Court also rejects Plaintiff's arguments that the Collection Fee was imposed without adequate notice. As set forth in the Background section, *supra*, the Citation attached a pamphlet containing a "Warning Notice," which explained as follows: "Pursuant to F.S. 28.246(6), any fine and cost that remain unpaid in excess of 90 days may be referred to a collection agency, and an additional 40% charge will be added to the amount owed." *See* Pamphlet (ECF No. 33-3) at 4.[25] Plaintiff, therefore, cannot plausibly allege that there was inadequate notice of the Collection Fee before its imposition. *See Horn v. City of Chicago*, 860 F. 2d 700, 705 (7th Cir. 1988) (delinquency notice advising defendant of future actions city might take was sufficient to satisfy procedural due process).

Plaintiff's argument that there was insufficient opportunity to be heard similarly fails. Courts determine the adequacy of the process the government provides for a hearing by weighing the balance of three factors: (1) "the private interest that will be affected by the official action"; (2) the risk of erroneous deprivation of that interest through the procedure currently provided; and (3) the government's interest in pursuing this official action, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In *Wemhoff v. City of Baltimore,* a case cited by Plaintiff, the court weighed a plaintiff's property interests implicated by late fees against the government's interest in encouraging punctual payment. 591 F. Supp. 2d 804, 810 (D. Md. 2008). The *Wemhoff* court found that late fees furthered the government's interests in ensuring full compliance with the law, which were fundamental to the effective function of the city and were not outweighed by the plaintiff's property interests. The Court reaches the same conclusion here: the Collection Fee enables the Clerk to ensure compliance with the law while protecting the public fisc from expenses incurred in collecting unpaid fees. Moreover,

---

[25] The Court rejects Plaintiff's argument that the Court may not consider these documents at the motion to dismiss stage for the reasons set forth in footnote 3, *supra*.

Plaintiff has not proffered any meritorious argument that Plaintiff was erroneously deprived of a property interest.[26] Additionally, Plaintiff does not cite any authority for the proposition that the imposition of a collection fee on a properly noticed speeding ticket requires a separate notice and opportunity to be heard. *Cf. Rector v. City and Cty of Denver*, 348 F.3d 935, 948 (10th Cir. 2003) (finding that there was no due process violation despite the lack of a hearing when citation notice clearly indicated late fee will be imposed if ticket is not paid in twenty days).

Finally, there is no allegation that Plaintiff contested the imposition of the collection fee at the Traffic Court hearing or at any point prior to payment. *See Stubbs v. City of Ctr. Point, Ala.*, 988 F. Supp. 2d 1270, 1278 (N.D. Ala. 2013) (dismissing procedural due process claim and noting: "Ms. Stubbs may have adequately alleged a deprivation—the payment of her fine—but does not allege that the City failed to provide due process because she admits that she never sought to challenge the traffic citation."). Accordingly, Plaintiff has not shown that the State has "refuse[d] to provide a process sufficient to remedy the procedural deprivation" and thus cannot show a "constitutional violation actionable under section 1983." *See McKinney*, 20 F.3d at 1557. For all of the above reasons, Count IV is DISMISSED.

### c) *Substantive Due Process (Count V)*

Plaintiff alleges that Defendants violated her (and the putative class members') substantive due process rights in two ways. First, Defendants have "acted unreasonably, arbitrarily and irrationally in collecting and retaining a portion of this unearned and unlawful 40% collection fee which is unrelated" to collection activity. *Id.* ¶ 76. Second, "Defendants have acted unreasonably, arbitrarily and

---

[26] Additionally, Plaintiff does not cite any authority for the proposition the imposition of a collection fee on a properly noticed speeding ticket requires a separate notice and opportunity to be heard. In fact, the opposite is true. *See Rector v. City and Cty of Denver*, 348 F.3d 935, 948 (10th Cir. 2003) (finding that there was no due process violation despite lack of hearing when citation notice clearly indicated late fee will be imposed if ticket is not paid in twenty days).

irrationally in seeking excessive penalties." *See* Compl. ¶ 77. Defendants argue that the Complaint fails to state a substantive due process claim. The Court agrees.

"The substantive component of the Due Process clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney*, 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).[27] In other words, interests other than "fundamental rights created by the Constitution" do not "enjoy substantive due process protection." *Shi v. Montgomery*, 679 F. App'x 828, 834 (11th Cir.), *cert. denied sub nom. Xingzhong Shi v. Montgomery*, 138 S. Ct. 121 (2017); *see also Regents of Univ. of Mich. v. Ewing*, 106 U.S. 214, 229 (1985) (J. Powell, concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." (citations omitted)). Fundamental rights typically involve "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

Here, Plaintiff's property interest in the monies she forwent in paying the Collection Fee does not implicate a fundamental Constitutional right.[28] *See Abele v. Hernando Cnty.*, 161 Fed. App'x 809,

---

[27] *See also Hallett v. Ohio*, No. 16-14969, 2017 WL 4511358, at *2 (11th Cir. Oct. 10, 2017) ("A violation of procedural due process occurs where the state fails to provide due process in the deprivation of a protected liberty interest. . . . On the other hand, a violation of substantive due process occurs where an individual's fundamental rights, those implicit in the concept of ordered liberty, are infringed—no matter the fairness of the procedure." (citations and internal quotation marks omitted)).

[28] Plaintiff challenges the actions of the Defendants rather than the constitutionality of the Statute. *See* Ruvin Opp. at 19 ("Plaintiff is not making a facial challenge to the validity or constitutionality of the statute."). Accordingly, the legislative act exception does not apply. *Compare Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1264 (11th Cir. 2003) (dismissing landowner's substantive due process claim when a city revoked his land disturbance permit because the claim did not implicate a fundamental right) *with Kentner*, 750 F.3d at 1280 ("Because plaintiffs are challenging the Ordinance on its face rather than contesting a specific zoning or permit decision made under the auspices of the Ordinance, we conclude that they are challenging a legislative act . . . [and we] must go beyond the fundamental rights inquiry . . . ."). However, even if the Complaint could be construed to challenge the Statute, Plaintiff's claim would still fail. *See Latonik v. Florida Dep't of Highway Safety & Motor*

815 (11th Cir. 2005) ("Property rights are state common law rights and are not equivalent to fundamental rights."). As a result, "a substantive due process claim does not exist in this case" because "no interest protected by a fundamental right is being deprived." *Greenbriar Vill., L.L.C.*, 345 F.3d at 1264.[29] Accordingly, Count V is DISMISSED.

> 5) Declaratory Relief (Count VII)

Plaintiff seeks declaratory relief under Florida Statute Section 86.021 and other provisions of Chapter 26. Specifically, Plaintiff seeks a declaration that Defendants' assessing the Collection Fee where no collection activity has occurred is unauthorized and unlawful. *See* Compl. ¶¶ 84–90. Based on this premise, Plaintiff seeks a refund of all monies rendered in payment of the Collection Fee and an injunction prohibiting Defendants from perpetuating this allegedly "unlawful act." *Id.* ¶¶ 86, 90.

Because the Court has found that Defendants' actions are authorized by law (Fla. Stat. § 28.246), *see* Section III.B.1, *supra*, Plaintiff's claim for declaratory relief fails.[30] Accordingly, Count VII is DISMISSED.

---

*Vehicles*, No. 6:14-CV-1793-ORL, 2014 WL 7010737, at *4 (M.D. Fla. Dec. 11, 2014) (considering a facial challenge to Florida Statute Section § 28.246, and dismissing substantive due process claim because the Statute bears a "rational relationship" to the legitimate state purpose of recouping the costs associated with crimes and their prosecution).

[29] Plaintiff's substantive due process allegation concerning "excessive penalties" fails for the additional reason that it attempts to rest a substantive due process claim upon an alleged Eighth Amendment excessive fines violation. *See, e.g., Lee v. Sikes*, 870 F. Supp. 1096, 1101 (S.D. Ga. 1994) ("[I]t is improper in a §1983 action to rely on a substantive due process claim when a specific constitutional standard governs plaintiff's claimed right."); see also *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 471 (1993) (Scalia, J., concurring) (Recognizing a "substantive right not to be subjected to excessive fines . . . would make the Excessive Fines Clause of the Eighth Amendment superfluous in light of the Due Process Clause of the Fifth Amendment.").

[30] The Court notes that Plaintiff has invoked the improper statute for declaratory relief. *See, e.g., Wilshire Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-23806-CIV, 2013 WL 12092532, at *3 (S.D. Fla. Apr. 10, 2013) ("[A]s this is a diversity action in federal court, we cannot apply that statute to determine whether or not a declaratory action can lie."). However, regardless of whether the Court applies the Florida declaratory relief statute, or its federal analogue (28 U.S.C. § 2201), the analysis is not "materially different." *Id.*

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that

 (1) Defendant Linebarger Goggan Blair & Sampson, LLP's Motion to Dismiss (ECF No. 32)

is GRANTED;

(2) Defendant Harvey Ruvin's Motion to Dismiss (ECF No. 33) is GRANTED;

(3) The Complaint is DISMISSED WITHOUT PREJUDICE;

(5) The Clerk of Court is instructed to CLOSE this case;

(6) All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 2nd   day of January, 2018.

Kevin Michael Moore
Digitally signed by Kevin Michael Moore
DN: o=Administrative Office of the US Courts,
email=k_michael_moore@flsd.uscourts.gov, cn=Kevin Michael Moore
Date: 2018.01.02 12:21:50 -05'00'

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc: All counsel of record

30